IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC.; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.;
COAL RIVER MOUNTAIN WATCH, INC.;
and SIERRA CLUB,

        Plaintiffs,

v.                              CIVIL ACTION NO. 3:11-cv-00115

PATRIOT COAL CORPORATION;
APOGEE COAL COMPANY, LLC;
CATENARY COAL COMPANY, LLC;
and HOBET MINING, LLC,

        Defendants.

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

     In support of their Motion to Dismiss Plaintiffs' First Amended Complaint the

Defendants, Patriot Coal Corporation, ("Patriot"), and its subsidiaries Apogee Coal Company,

("Apogee") Catenary Coal Company ("Catenary") and Hobet Mining ("Hobet"), (collectively

the "Patriot subsidiaries") submit the following memorandum of law.

## I.  INTRODUCTION

     Once again, Plaintiffs have returned to this Court under the guise of a citizens'

suit to enforce effluent limits for selenium.  Once again, Plaintiffs seek to pursue claims that

have already been resolved by previous decisions of this Court.[1]  The only distinction between

those suits and the instant action is that Patriot Coal Corporation, the parent company of the

---

[1]    *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Company, LLC* and *Hobet Mining, LLC* ("*Apogee*") (3:07-cv-0413) (*Apogee*) 555 F. Supp. 2d 640 (S.D. W.V. 2008); 744 F. Supp. 2d; *OVEC v. Hobet*, 2008 WL5377799 (S.D. W.V. 2008) (Hobet I).  *Ohio Valley Environmental Coalition v. Hobet Mining, LLC*, 723 F. Supp. 2d 886 (S.D. WV 2010) (*Hobet II*).

previous defendants, is named as a defendant.  Once again, Plaintiffs ask this Court to ignore enforcement brought by the State of West Virginia, and instead ask this Court to place enforcement authority into the hands of private organizations that are neither elected to represent the interests of the people of West Virginia, nor required to consider or account for the implications of their actions.  They are dedicated, however, to eliminating coal mining.  Indeed, this action represents the fifth time Hobet has been sued on the five permits it holds that are identified by the First Amended Complaint.

By means of this action, Plaintiffs seek nothing less than to wholly usurp enforcement authority of the CWA from the State of West Virginia.  If authorized by this Court, their attack would destroy the careful balance established under the CWA between the preferred vehicle of the government enforcement action, and citizen suits which are allowed in certain, but exceptional, instances.  *See Piney Run Preservation Assoc. v. County Comm'rs of Carroll County*, 523 F.3d 453, 459-60 (4th Cir. 2008) ("citizen suits are meant to supplement rather than to supplant government action") (internal quotation omitted); *Gwaltney of Smithfield v. Chesapeake Bay Found*, 484 U.S. 49, 60 (1987) ("Respondents' interpretation of the scope of the citizen suit would change the nature of the citizens' role from interstitial to potentially intrusive. We cannot agree that Congress intended such a result.").  This careful balance struck by the CWA reflects more than mere congressional compromise.  Instead, it honors the longstanding Constitutional principle that primary enforcement power of the nation's laws should be vested in the Executive Branch, not private citizens.  *See* U.S. Const. Art. II, § 3 ("[the President] shall take Care that the Laws be faithfully executed").

The CWA makes government enforcement actions the preferred mechanism for practical and obvious reasons.  The power to enforce the law comes with the great responsibility to use it

to the benefit of the public welfare, and not private interests.  Government agencies are required to take into consideration the impact of enforcement actions they initiate upon both the object of their action and the regulated community as a whole; private attorneys have no such responsibility.[2]   As a result, enforcement authority in the United States is rarely granted to private parties, and when it is, Congress generally circumscribes that authority carefully, as it did with the CWA.

The CWA plainly narrows citizen enforcement authority by proscribing citizen-suits when the federal or state government "has commenced and is diligently prosecuting a civil or criminal action" with respect to the alleged violation in question.  33 U.S.C. § 1365(b)(1)(B); First Amended Compl. ¶ 42.  The scope of the citizen suit exception is narrow.  Indeed, as the Fourth Circuit has held, "a citizen-plaintiff cannot overcome the presumption of diligence merely by showing that the agency's prosecution strategy is less aggressive than he would like or that it did not produce a satisfactory result."  *Piney Run,* 523 F.3d at 459-60 (4th Cir. 2008).

With their First Amended Complaint, Plaintiffs wholly disregard their limited enforcement authority.  They attack ten permits that are presently subject to enforcement by WVDEP, including five that were previously before this Court and for which Plaintiffs' claims were dismissed.  These attacks are improper.  Plaintiffs' claims seek to circumvent several boundaries under which a CWA citizen suit may proceed, including the diligent prosecution bar, *res judicata* requirements and limits, and the requirement that a citizen action be directed to ongoing violations.  These boundaries are real statutory and jurisprudential limits on enforcement.  Because they have been exceeded, Plaintiffs' lawsuit must be dismissed.

---

[2]	Indeed, Plaintiffs' attempts to paint WVDEP as an ineffective enforcer of the Clean Water Act are belied by the fact that EPA, which has the authority to take over the State's program, has not done so.

## II.  STATEMENT OF FACTS

Plaintiffs seek civil penalties and injunctive relief from Defendants pursuant to the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1387) ("Clean Water Act" or "CWA") and seek injunctive relief pursuant to the federal Surface Mining Control and Reclamation Act ("SMCRA") (30 U.S.C. §§ 1201-1328).   They claim that Defendants are discharging selenium in concentrations that violate their NPDES and surface mining permits. Federal Amended Complaint, ¶¶ 2 and 3.   Plaintiffs' claims should be dismissed for the following reasons:

First, the claims against Apogee, Catenary and Hobet should be dismissed pursuant to Rule 12(b)(1) because:

      a.      WVDEP has undertaken diligent prosecution against Apogee and Catenary.

      b.      Plaintiffs' claims against Hobet are barred by reason of a diligent prosecution and are moot.

      c.      The claims against Hobet are barred by *res judicata* as they have previously been adjudicated.

      d.      Apogee and Catenary with respect to two permits are not "in violation" of any limits as a result of orders issued by the West Virginia Environmental Quality Board.

Second, the claims against all Defendants should be dismissed pursuant to the Rule 12(b)(1) because the federal SMCRA does not grant subject matter jurisdiction to adjudicate the claim that arises under state law.

Third, the claims against all Defendants should be dismissed pursuant to Rule 12(b)(1) for lack of standing.

Fourth, WVDEP is a required party in whose absence the case must be dismissed pursuant to Rule 12(b)(7).

### A.      Patriot Coal

Patriot Coal Corporation is incorporated in Delaware.  *See* First Amended Complaint, ¶ 8.  Although qualified to conduct business in West Virginia, its headquarters and principal place of business are located in Missouri.  It owns each of the other three Patriot subsidiary companies that are parties in this action.  *Id.,* ¶ 12.  Patriot itself does not operate coal mines, nor does it hold any permits that are alleged to be in violation.  *Id.*, ¶¶ 166-398 (alleging subsidiaries own and operate mines and hold NPDES permits).[3]

### B.      Hobet Permits

Hobet operates a large coal mining complex comprised of surface and underground mines as well as a preparation plant and rail load out in Boone and Lincoln Counties, along U.S. Route 119 near Madison, West Virginia.  *See,* First Amended Complaint, ¶¶ 19-23.  At issue in the present case are five NPDES permits issued to Hobet for the operation of its surface mines.[4]  Each of the five Hobet permits has been the subject of prior enforcement actions or citizens' suits over selenium discharges as summarized below.

### <u>Permit No. WV1017225</u>:

Plaintiffs originally sued Hobet over discharges of selenium associated with this permit in 2007.  *See Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Company, LLC and Hobet Mining, LLC* ("*Apogee*") (3:07-cv-0413) (First Amended Complaint attached as Exhibit 1).  Upon joint motion of Plaintiffs and Hobet, the Court dismissed their CWA claim "for lack of subject matter jurisdiction."  *Apogee*, Doc. No. 61 (attached as Exhibit 2) (dismissing

---

[3]      Patriot believes that claims asserted against it in the First Amended Complaint are meritless.  However, because the allegations regarding Patriot likely satisfy threshold pleading requirements, Patriot withholds argument at this time.

[4]      The five Hobet permits are Permit Nos. WV0099392, WV1016776, WV1020889, WV1021028, and WV1017225.

CWA claim).  A separate claim asserted under SMCRA (Count 4) was adjudicated on the merits and summary judgment granted to Hobet.  *Apogee,* Doc. 70, p. 19.  Memorandum Opinion and Order.  In two subsequent actions against Hobet, the Plaintiffs alleged no claims for any violations of WV 1017225.

### <u>WV0099392</u>, <u>WV1016776</u>, <u>WV1020889</u>, <u>WV1021028</u>:

Each of these four permits was initially the subject of an enforcement action by the West Virginia Department of Environmental Protection ("WVDEP") in the Circuit Court of Boone County.  Each was also subsequently the subject of a citizens' suit filed in *this* Court.  *See Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC,* 2008 WL 5377799 (S.D. W.Va.) (Civil Action No. 3:08-0088) ("*Hobet I*").  In that action, Hobet argued that the WVDEP-initiated enforcement action constituted pre-existing and "diligent prosecution" which deprived this Court of jurisdiction under 33 U.S.C. 1365(b)(1)(B) (providing that no citizens' suit may be commenced if a State has commenced and is diligently prosecuting a civil action).  Before this Court ruled on the motion, however, Hobet and WVDEP entered into a Settlement and Consent Order on September 5, 2008 in state court.  *See* Exhibit 3.

The state court Settlement and Consent Order provided for stipulated penalties for future violations, required Hobet to undertake supplemental environmental projects, and required compliance with final selenium limits by April 5, 2010.  The Consent Order cannot terminate, except by order of the court, until Hobet complies with all requirements of the Order and pays all civil penalties required under the Decree.  *See*, Exhibit 3, Consent Order of Sept. 5, 2008, § XV p. 16.  The Settlement and Consent Order was modified on December 10, 2009, to extend the time for compliance to July 2012.  *See* Exhibit 4, Modified Consent Order.  The Boone County Circuit Court has not terminated jurisdiction over the Consent Order.

This Court ruled in *Hobet I* that the enforcement action by WVDEP was not initially "diligent."  However, it ruled also that the subsequent state court Settlement and Consent Order was sufficiently diligent to moot all claims in the citizens' suit except for one claim related to civil penalties for a six-month period between the date the Consent Decree was negotiated and the date it was approved.  *OVEC v. Hobet*, 2008 WL 5377799, **8-10 (S.D. W.Va. 2008).  The narrow civil penalty claim was resolved by a consent decree between the parties.  *Hobet I*, Doc. 54.  The case was subsequently dismissed in its entirety with prejudice.  *Hobet I,* Doc. 103.

### C.    Catenary and Apogee Permits

Catenary holds NPDES Permits WV0093751, WV0096920, WV0096962 and WV1014684 for discharges from its surface mines in Boone and Kanawha Counties.  First Amended Complaint, ¶¶ 15-18.  Apogee holds NPDES Permit WV0099520 for its Ruffner Mine in Logan County.  *Id.*, ¶ 14.  On April 5 2007, WVDEP, as part of an industry-wide initiative, issued compliance schedules for these permits requiring Catenary and Apogee to meet final effluent limits for selenium by April 6, 2010.  *See,* Exhibit 5.  Because no surface coal mining operation had yet discovered a practicable treatment solution to consistently meet a final effluent limit of 4.7μ/gl, Catenary and Apogee sought to extend their schedules for achieving compliance.  They did so by submitting applications to WVDEP prior to the April 6, 2010 deadline and requested a July 1, 2012 deadline.

WVDEP issued a public notice of its intent to grant the modification requests of both companies, but failed to issue the modification when EPA objected.[5]  Catenary and Apogee thereafter appealed to the West Virginia Environmental Quality Board ("EQB") and sought a stay

---

[5]    Although West Virginia's NPDES program is approved by the EPA, the federal agency retains the opportunity to review proposed NPDES permits and to provide comments and objections.  33 U.S.C. § 1342(d)(1). WVDEP could not grant either company's modification request because EPA sent WVDEP letters objecting to the proposed modifications.  *See* 33 U.S.C. §1342(d)(2).  After EPA objected, Catenary and Apogee filed an appeal of WVDEP's failure to render a prompt final decision on its modification requests with the EQB in March 2010.

of the effect of the permit.  The EQB entered an order granting the stay.  *See* W.Va. Code § 22-11-21 (authorizing appeals of DEP orders).  *Catenary Coal Co. and Apogee Coal Co. v. WVDEP*, Appeal No. 10-14-EQB (March 31, 2010) (attached as Exhibit 6).  Those orders stayed the final effluent limits from taking effect until Catenary and Apogee had the opportunity to present their appeals to the EQB.  Catenary and Apogee also applied for and were granted stays of the final limits by the Kanawha County Circuit Court.  *See* Order Granting Appellant's Motion for Stay, *Catenary Coal Co. v. WVDEP*, Appeal No. 10-MISC-142 (April 2, 2010) (attached as Exhibit 7): In August 2010, DEP reversed itself and denied each company's request to extend their compliance schedules.

On April 23, 2010, WVDEP sued Catenary in the Circuit Court of Boone County for alleged violations related to discharges from two NPDES permits, WV0093751 and WV0096920, also at issue in this proceeding.  Civil Action No. 10-C-96; *See* Exhibit 8. However, on June 11, 2010—prior to Plaintiffs' initiation of this proceeding—WVDEP amended its complaint to include two additional NPDES Permits held by Catenary at issue in this case: Nos. WV0096962 and WV1014684.  *See* Exhibit 9.  On June 11, 2010, the WVDEP also filed a nearly identical enforcement action against Apogee in the Circuit Court of Logan County. Civil Action No. 10-C-144.  *See* Exhibit 10.

### III.  LEGAL ARGUMENT

**A.**     **Standard of Review for Motions to Dismiss**

**1.**     **FRCP 12(b)(1)**

The plaintiff bears the burden of proof with respect to subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).  When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider

evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*  The district court should grant the Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*  "Federal courts have an independent obligation to ensure they do not exceed the scope of their jurisdiction[.]"  *Henderson v. Shinseki*, 562 U.S. ___, 131 S.Ct. 1197, 1202 (2011).

## 2.    FRCP 12(b)(6)

When ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations omitted).  However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556).

## 3.    12(b)(7)

Courts may dismiss suits when a plaintiff fails to join a required party under Rule 19.  When considering a Rule 12(b)(7) motion, the burden is on the party raising the defense to show that the person who was not joined is needed for a just adjudication.  *See American Gen.*

*Life & Accident Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (affirming this Court's denial of a motion to dismiss for failure to join a required party). Further, "[i]n ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept as true the allegations of the Complaint." *Mercam, Inc. v. Portlyn, Inc.*, 2007 WL 1452104 (W.D.N.C. 2007). Moreover, "[t]he inquiry contemplated by Rule 19 . . . is addressed to the sound discretion of the trial court." *See Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1108 (4th Cir. 1980).

     **B.**    **WVDEP's Prosecution of Claims Against Catenary and Apogee Bar This Lawsuit**

In 2010, WVDEP filed a civil enforcement action against Catenary in Boone County Circuit Court for alleged violations related to four NPDES permits at issue in this case. *See* First Amended Complaint, Civil Action 10-C-96 (attached as Exhibit 9). A substantially similar action was brought against Apogee for another permit at issue in this case in Logan County Circuit Court on June 11, 2010. *See* First Amended Complaint, Civil Action 10-C-144 (attached as Exhibit 10).

The CWA expressly bars citizens from bringing private actions to enjoin violations of the CWA "if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a Court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). In *Gwaltney*, the Supreme Court stated "[s]ince the great volume of enforcement actions [are intended to] be brought by the State," citizen suits are proper only if "the Federal, State, and local agencies fail to exercise their enforcement responsibility." *Id*. at 60. There is no dispute that both state actions were commenced before Plaintiffs filed the instant action. Therefore, Plaintiffs must prove that WVDEP's prosecution is not diligent. *Community of Cambridge Environmental Health and*

*Community Development Group v. City of Cambridge*, 115 F. Supp. 2d 550, 554 (D. Md. 2000). Plaintiffs' burden of proof is a heavy one, because diligence on the part of the enforcement agency is presumed.  *See Friends of the Earth, v. Laidlaw Environmental Services, Inc.*, 890 F. Supp. 470 (D.S.C. 1995).

> "[I]n determining whether the state [is] 'diligently prosecuting' a prior pending action against the defendant," a federal court is not free to speculate about the legal efficacy of the state enforcement actions.  *Connecticut Fund for Environment v. Contract Plating Co., Inc.*, 631 F. Supp. 1291, 1293 (D. Conn. 1986).  Instead:

> > The court may rely primarily on objective evidence from the court files with respect to the status of the state's suit at the time that the citizens' suit was commenced and the prospects that the state suit would proceed expeditiously to a final resolution.  The court must presume the diligence of the state's prosecution of a defendant absent persuasive evidence that the state has engaged in a pattern of conduct in its prosecution of the defendant that could be considered dilatory, collusive or otherwise in bad faith."

*Id.*  Here, Plaintiffs may not be satisfied with the manner in which the State handles an enforcement action; however, that dissatisfaction does not entitle them to a "personalized" remedy.  *See Ellis v. Gallatin Steel Co.*, 390 F.3d. 461 (6th. Cir. 2004) (citizen's suit proper when EPA has failed to act, not when EPA has failed to act aggressively enough in citizen's view).  Plaintiffs' claim fails under this standard for four separate reasons, and thus must be dismissed.

First, Plaintiffs mistakenly claim that WVDEP has not been diligent in its prosecution because WVDEP's action does not require compliance.  First Amended Complaint at ¶ 72 (Apogee); ¶ 122 (Catenary).  However, this assertion is contrary to Paragraphs 2 and 9 in WVDEP's Complaints, which demand that each company "be enjoined from any and all future violations" of the WPCA and WVSCMRA, and also that each company be required to comply

with conditions of their NPDES Permits.  *See* Complaints, Exhibits 9 and 10, p. 9.  It is difficult to identify what additional compliance could be required of Catenary or Apogee.

Second, Plaintiffs assert that WVDEP's prosecution has not been diligent because WVDEP has sought to establish compliance schedules.  However, this is hardly evidence of a lack of diligent prosecution.  Plaintiffs themselves have previously sought compliance schedules from this Court.  Indeed, this Court has approved schedules of compliance and pilot projects as part of the adjudication in *Apogee, Hobet I* and *Hobet II*.  Even if they were entitled to it, Plaintiffs' own personalized remedy in this case would undoubtedly include a compliance schedule of some sort as evidenced by the path the final decrees entered by the Court in *Apogee* and *Hobet II*.  WVDEP's recognition that no remedial technology has yet been proven to achieve compliance is not an indictment of its prosecutorial strategy.  It is simply an acknowledgement of reality.  Indeed, Plaintiffs' criticism demonstrates that their dissatisfaction is not with WVDEP's civil action, but with their proposed compliance deadline.  The West Virginia Legislature has previously expressed its view by statute that the agency was authorized to extend the 2010 compliance dates originally quoted to Apogee and Catenary until July 2012.  W.Va. Code § 22-11-6 (Acts 2009, C. 98).

Third, WVDEP's complaint makes clear that the State is also seeking civil penalties as part of its enforcement action.  *See* Exhibit 9, First Amended Complaint, ¶ 5 (Catenary); Exhibit 10, First Amended Complaint, ¶ 4 (Apogee).  The fact that an agency seeks civil penalties is further evidence of a diligent prosecution that will moot a citizen's suit. *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008). Indeed, this relief is no different from what the Plaintiffs seek in this action before the Court.

In fact, in a case directly on point, the Fourth Circuit concluded that a state court action constituted diligent prosecution under facts similar to those in this case. *Piney Run,* 523 F.3d at 453.. In *Piney Run*, the Maryland Department of the Environment ("MDE") granted a modified NPDES permit to a county sewage plant in 2000. The plant contested the permit, and permit limits were suspended for four years. Once the permit took effect, MDE filed an enforcement action, which it subsequently agreed to stay while the County engaged in a process to seek alternative permit limits. MDE and the County then entered into a consent decree. The consent decree contained (a) language mandating compliance with permit limits; (b) civil penalties, and (c) a schedule for implementing certain activities. *Id.* at 457-58.

In examining the consent decree, the Fourth Circuit first noted that the CWA "does not require government prosecution to be far-reaching or zealous. It requires only diligence. Thus, a citizen-plaintiff cannot overcome the presumption of diligence merely by showing that the agency's prosecution strategy is less aggressive than he would like or that it did not produce a completely satisfactory result." *Id.* at 459 (citation omitted). The court went on to note that, when presented with a consent decree, review "must be particularly deferential to the agency's expertise, and [] 'should not interpret §1365 in a manner that would undermine the [government's] ability to reach voluntary settlements with defendants.' " *Id. (*quoting *Karr v. Hefner*, 475 F.3d 1192, 1197-98 (10th Cir. 2007)).

The Fourth Circuit then went on to note that the existence of the consent decree, which required compliance with the permit and which imposed penalties for a failure to comply, constituted diligent prosecution. *Id.* at 460. The Court also explicitly rejected the plaintiffs' arguments against diligent prosecution based on "an alleged request by the County for MDE to file the enforcement action, the fact that the daily fine established in the Consent Judgment [was]

lower than the fine imposed in the prior CWA litigation, and the fact that the Consent Judgment [did] not establish a final deadline for compliance" *Id.* As the Fourth Circuit concluded: "[i]n our view, these matters simply do not establish a lack of diligence on MDE's part." *Id.*

Similarly, a plain reading of WVDEP's First Amended Complaint makes clear that WVDEP's enforcement action is being diligently prosecuted. WVDEP's First Amended Complaint demands the same types of relief embodied in the Consent Judgment in *Piney Run*: a demand that Defendants be enjoined from further violations, a compliance schedule, and civil penalties. Plaintiffs have proffered no evidence that the State has colluded with Defendants, or that the State is otherwise acting in bad faith. On these facts alone, there are no grounds to conclude that the State has been anything other than diligent. As one distinguished jurist has observed, "The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all." *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985) (Posner, J.).

Ultimately, WVDEP's enforcement action seeks to enjoin future violations and requests civil penalties for any such future violations. At this early stage of that litigation, it is simply impossible for the enforcement action to have produced any conclusive results which would satisfy Plaintiffs. Moreover, if Plaintiffs do not believe WVDEP can effectively prosecute the enforcement action, or that in their absence the Boone and Logan County Circuit Courts are incapable of fashioning appropriate remedies, they are free to intervene in the state court actions pursuant to W.V. R. Civ. P. 24(a); *State ex rel. Ball v. Cummings*, 208 W. Va 393 (1999). Indeed, their failure to do so in this action should be considered further evidence that Plaintiffs' claims should be dismissed. *See Connecticut Fund*, 631 F. Supp. at 1294 ("[T]he 'diligent prosecution' rule does not preclude the plaintiffs from participating in suits to enforce NPDES

permits but merely prevents them from forcing defendants simultaneously to litigate such suits in two different courtrooms.").

### C.     The Plaintiffs' Claims Against Hobet are Barred by Diligent Prosecution

Once again, Plaintiffs seek to assert claims with respect to four permits (WV0099392, WV1016776, WV1020889, WV1021028) that this Court has already ruled to be barred as a result of WVDEP's diligent prosecution of the same claims.  Plaintiffs' assertions to the contrary, the citizen suit provision of the Clean Water Act does not authorize continuous and repeated challenges to final determinations regarding diligent prosecution until a defendant surrenders to stop the assault.   The diligent prosecution exception to the Clean Water Act permits no such result.  Instead, when claims are barred by a state's diligent prosecution of those claims, the diligent prosecution bar specifically protects that defendant from being forced to withstand multiple suits related to the same claims.  Thus, Plaintiffs' attempts to refile these same claims *ad nauseam* until they achieve a result they find satisfactory must be rejected. These claims must be dismissed.

WVDEP prosecuted an enforcement action with respect to four of the Hobet permits now before the Court in Boone County Circuit Court at 07-c-03.   Each was also subsequently the subject of a citizens' suit filed in this Court.  *See Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC*, No. 08-cv-0088, 2008 WL 5377799 (S.D. W.Va.) ("*Hobet I*").   Hobet initially argued in this Court that the WVDEP-initiated enforcement action constituted pre-existing diligent prosecution.  Before this Court ruled on the motion, however, Hobet and WVDEP entered into a Settlement and Consent Order on September 5, 2008 in State court.  *See* Exhibit 3.

The state Settlement and Consent Order provided for stipulated penalties for future violations, required Hobet to undertake supplemental environmental projects, and required compliance with final selenium limits by April 5, 2010.  The Consent Order cannot terminate, except by order of the court, until Hobet complies with all requirements of the Decree and pays all civil penalties required under the Decree.  Settlement and Consent Order of Sept. 5, 2008, § XV p. 16.  The Consent Order was modified on December 10, 2009 following the passage of an amendment to the West Virginia Water Pollution Control Act, W.Va. Code § 22-11-6 in July 2009.  The modified Settlement and Consent Order extended the time for compliance to July 2012.  The Boone County Circuit Court continues to exercise jurisdiction over the Settlement and Consent Order.

After entry of the state court Consent Order, this Court ruled that the enforcement action by WVDEP constituted diligent prosecution.  The Court also concluded that the state court Consent Order mooted all of Plaintiffs' claims in the prior citizens' suit except for one claim related to civil penalties for a six-month period between the date the Consent Order was negotiated and the date it was approved.  *OVEC v. Hobet*, 2008 WL 5377799, **8-10 (S.D. W.Va. 2008).  Plaintiffs and Hobet resolved the narrow civil penalty claim in the federal court litigation by consent decree.  *Hobet I*, Doc. 54.  The case was subsequently dismissed in its entirety with prejudice.  *Hobet I*, Doc. No. 103.  These previous rulings bar Plaintiffs' current claims with respect to the four Hobet permits.

This Court previously held that the Settlement and Consent Order between WVDEP and Hobet in the state court litigation evidenced diligent prosecution by the State.  Plaintiffs have not proffered any evidence as to why that is not still the case.  Certainly, the mere fact that WVDEP extended the compliance schedule under the Consent Decree until July 2012 to

correspond to compliance timetable adopted by the West Virginia State Legislature does not constitute evidence that WVDEP is being dilatory, colluding with Hobet, or acting in bad faith. Indeed, it is expected that any executive agency would seek to conform its actions to legislative mandates.

Plaintiffs acknowledge WVDEP's original enforcement action and the consent decree, but argue that it was not a "diligent prosecution" sufficient to preclude their suit because it does not seek to require compliance, and there remains a realistic prospect of future violations. First Amended Complaint, ¶¶ 150-155.  This Court, however, has already considered the issue of whether or not WVDEP's enforcement efforts, culminating in the entry of the September 2008 Consent Order, are capable of requiring compliance.  In analyzing the Consent Order's ability to moot Plaintiffs' claims in *Hobet I*, the Court found no realistic prospect that violations would continue, that WVDEP is "capable of requiring compliance," and that WVDEP is "on the right track."  *Id.,* *8-10.  In its July 12, 2010 decision in *Hobet II*, the Court reaffirmed that the 2008 consent decree from *Hobet I* eliminated the realistic prospect of continued violations on the four permits it covered.  *See Hobet II,* Case 3:09-cv-1167, Doc. 49, p. 31, n. 11 (July 12, 2010) ("unlike the 2008 consent order, the modified consent decree does not eliminate the realistic prospect of continued violations. . . .)" (emphasis added).

The Court has previously concluded that the WVDEP's enforcement was diligent. Nothing has changed to disturb that conclusion, and Plaintiffs' repeated and ongoing attempts to relitigate the issue of diligent prosecution must be denied.

### D.   Plaintiffs' Claims Against Hobet Are Barred by Claim Preclusion

"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be

considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525 (1931).

Under "*res judicata*" or "claim preclusion," a final judgment on the merits of an action precludes the parties or those so situated as to be aligned with them from relitigating issues that were or could have been raised in the prior action. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n. 6 (1982); *Pueschel v. United States,* 369 F.3d 345, 355-56 (4th Cir. 2004). To establish *res judicata* or claim preclusion, a party must establish: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *See OVEC v. Aracoma*, 556 F.3d 177, 210 (4th Cir. 2009) (citing *Aliff v. Joy Mfg. Co.,* 914 F.2d 39, 42 (4th Cir.1990)). "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring claims arising from the same transaction." *United States v. Tohono O'odham Nation,* 568 U.S.__ (2011), 2011 WL 1543329*6 quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461 (1982).

### 1.   Claim Preclusion Bars Re-litigation over Four Permits at Issue in Hobet I

In the present case, Plaintiffs bring CWA and SMCRA citizen claims against Hobet related to alleged violations of the terms of NPDES Permits WV0099392, WV1016776, WV1020889, and WV1021028, requesting both civil penalties and injunctive relief. These are the same claims and the same permits that were the subject of *Hobet I.* In *Hobet I,* Plaintiffs acknowledged the State's parallel enforcement action in Boone County, but argued that WVDEP's delays in prosecuting the action indicated that it was not calculated to lead to compliance and was, therefore, non-diligent. After Plaintiffs filed *Hobet I,* the permits in

question became the subject of a mandatory Settlement and Consent Order with WVDEP entered in the Boone County Circuit Court.

This Court concluded that the entry of the consent decree mooted Plaintiffs' action because there was no "realistic prospect that violations alleged in [plaintiffs'] complaint will continue notwithstanding the consent decree." *See Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC*, 2008 WL 5377799, *7 (S.D. W.Va. 2008). Accordingly, the Court found the State's enforcement efforts via the Consent Decree rendered moot Plaintiffs' claims for injunctive relief and for civil penalties through March 31, 2008. Plaintiffs' claims for civil penalties after March 31, 2008 were addressed as part of *Hobet I* through the consent decree that was subsequently entered by the Court. *See Hobet I* (Doc. 54). The Court dismissed the case in its entirety and terminated any jurisdiction over the prior consent decree on January 11, 2011 (Doc. 103).

Given this Court's prior finding and dismissal of Plaintiffs' claims in *Hobet I* with prejudice, Plaintiffs cannot relitigate the issue again between the same parties as part of identical claims. Accordingly, Plaintiffs current claims against Hobet are barred by claim preclusion and should be dismissed.

## 2. *Res Judicata* Bars Further Litigation Over Hobet Permit WV1017225

Although Hobet NPDES Permit WV1017225 is not subject to the WVDEP consent decree pending before the Circuit Court of Boone County, the claims asserted against Hobet by reason of the permit also are precluded from further litigation, albeit for different reasons.

Plaintiffs originally sued Hobet over NPDES Permit WV1017225 in the Apogee case. Apogee Doc. 1, See Exhibit 1. They asserted two claims with respect to the permit. Count

Three in the Apogee case identified a claim under the CWA, and Count Four under SMCRA. Count Three was disposed of by means of a joint motion submitted by the parties on March 6, 2008, which the Court accepted.  Apogee Doc. 61, See Exhibit 2.  The Court entered an order acknowledging dismissal for lack of subject matter jurisdiction on March 10, 2008 (Doc. 62).[6] No subsequent claim against WV1017225 was raised by the Plaintiffs in *Hobet I* or in *Hobet II*. The Court granted summary judgment to Hobet on the remaining SMCRA claim, Count Four of the Apogee amended complaint on May 27, 2008 (Doc. 70, pp. 17-20).  The disposition of both claims is a merits based decision.  *See*, *Dowd v. Society of St. Columbans*, 861 F.2d 761 (1st Cir. 1988); *Dicken v. Ashcroft*, 972 F.2d 231 (8th Cir. 1992).

As "[a] final judgment on the merits of an action precludes . . . relitigating issues that were or could have been raised in that action," further litigation of the claims concerning WV1017225 is barred.  *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Pueschel,* 369 F.3d at 355-356.  Therefore, claims as to the permit must be dismissed.

### E.    Plaintiffs Claims Against Apogee and Catenary Cannot Stand Because The Selenium Limits in those Permits Have Been Stayed.

Plaintiffs bringing a citizen suit under Section 505 of the CWA or Section 520 of SMCRA *must* demonstrate the existence of *ongoing violations*.  *See Gwaltney*, 484 U.S. 49.  In *Gwaltney*, the Supreme Court held that "the most natural reading" of Section 505 requires that "citizen-plaintiffs allege a state of either continuous or intermittent violation- that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Id.* at 57.   Plaintiffs' Complaint asserts that Apogee and Catenary are "in violation" of the final water quality-based effluent limits ("WQBELs") for selenium with respect to WV0099520 for Apogee and Permit

---

[6]    Although the Joint Motion recognized that the dismissal of Count Three did not have any preclusive effect on the *other* claims remaining (i.e. those "currently pending") in the *Hobet I* litigation, the dismissal with prejudice effectively resolved Count Three.  (Doc. 61, p. 2).

Nos. WV0096962 and WV1014684 for Catenary. First Amended Complaint, ¶¶ 65, 104 and 114. However, Catenary and Apogee can only be held to be "in violation" of these permits if the WQBELs are, indeed, final. Here, the West Virginia EQB and Kanawha County Circuit Court have both issued orders staying those parts of Apogee's and Catenary's permits and compliance schedules that would otherwise impose final selenium effluent limits beginning on April 5, 2010 until further order or final order of the WVEQB on Appeal No. 10-14-EQB. *See* Exhibits 6 & 7. As a result, because those permits are not yet final, neither Apogee nor Catenary can be in violation of those permits, and thus any alleged violations related thereto cannot form the basis of a citizen suit under either Section 505 of the CWA or Section 520 of SMCRA.

In their Opposition to this Motion, Plaintiffs are likely to rely on this Court's holding in *OVEC v. Coal-Mac, Inc.*, Civil Action No. 3:10-cv-0833, (Doc. 89, March 31, 2011), to assert that the EQB stays at issue are without legal effect. However, that decision should not control the facts of this case. Importantly, as the Court observed in that case, the legal effect of EQB issued stays on the permits' effluent limits for selenium is a "difficult question." *Id.* at p. 34. Indeed, as set forth below, West Virginia's state water permitting regulations — which were considered and approved by EPA — set forth specific appeals procedures prior to the rejection of a requested extension. Here, application of the Court's decision would function to short-circuit the appeals procedures approved by EPA, and effectively remove water permitting authority from the State. Such a result is contrary to the intentions of the CWA's state permitting regime, and thus the *Coal-Mac* decision should not be applied to this case.

First, the Stay Orders entered as to Apogee and Catenary are part of a federally approved *state program* which oversees the NPDES program in West Virginia. As part of the federally approved NPDES program, the State established an appeal process for NPDES permit

approvals and various orders.[7]  Appeals of permits are required to "be handled by the appropriate review boards so that federal conflict of interest requirements in review procedures would be respected."[8]  The appropriate review board for NPDES permit decisions by the WVDEP is the Environmental Quality Board ("WVEQB").  *See* W. Va. Code § 22-11-21.  The judicial review procedures under the West Virginia Water Pollution Control Act authorize the WVEQB to issue stays during review of permit decisions.  *See* W. Va. Code § 22B-1-7(d).[9]  Here, Catenary and Apogee have followed the appeals process set out therein, and until the EQB issues a final decision, no violation can exist under West Virginia law.

---

[7]     *See* 47 Fed. Reg. 22,363 (May 24, 1982) (approving West Virginia's NPDES program).  In addition, pursuant to a Memorandum of Agreement ("MOA") between the WVDEP and the EPA Regional Administrator, the West Virginia program has primary enforcement responsibility of the NPDES program.  *See* Memorandum of Agreement Between the Division of Water Resources of the Department of Natural Resources of the State of West Virginia and the Regional Administrator, Region III, U.S. Environmental Protection Agency, Regarding the Administration and Enforcement of the National Pollutant Discharge Elimination System (NPDES), July 2, 1981, p. 2.  According to the MOA, "[t]he Division of Water Resources shall become the sole permit issuing authority and the [EPA] Administrator shall suspend the issuance of permits upon approval of the State Program."  *Id.* at 8.  "[T]he WVDEP will have the primary responsibility for taking appropriate enforcement actions against persons in violation of NPDES requirements, detected by either the State or EPA."  *Id.* at 29.

[8]     *See* Letter to Dr. Peter Bibko, Regional Administrator of EPA Region III, from Karen Watson, West Virginia Assistant Attorney General on September 28, 1981, p. 1; *also see Chesapeake Bay Found., Inc. v. Virginia State Water Control Bd.*, 495 F. Supp. 1229, 1237 (E.D. Va. 1980) ("It thus appears that Congress reserved unto the states the reviewability of state agency permitting decisions."); *Potter v. Asarco Inc.*, 1999 WL 33537055, *5 (D. Neb. 1999) (stating that for the federal court to find jurisdiction to collaterally review the state permit would create a most improbable and awkward dichotomy of review concerning state-issued permits that would allow a federal court to second-guess the state's authority to issue NPDES permits, contrary to the provisions of the CWA.

[9]     Additionally, article five, chapter twenty-nine-A of the W. Va. Code applies to and governs the hearing on appeal and the administrative procedures in connection with and following such hearing.  *See* W.Va. Code § 22B-1-9(a).  Section four of article five reinforces the ability of the WVEQB to issue a stay pending an appeal:

(a)  Any party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter, but nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law.

(b)  Proceedings for review shall be instituted by filing a petition, at the election of the petitioner, in either the circuit court of Kanawha county, West Virginia, or with the judge thereof in vacation, or in the circuit court of the county in which the petitioner or any one of the petitioners resides or does business, . . . within thirty days after the date upon which such party received notice of the final order or decision of the agency.

(c)  The filing of the petition *shall not stay enforcement* of the agency order or decision or act as a supersedes thereto, but *the agency may stay such enforcement*, and the appellant, at any time after the filing of his petition, *may apply to such circuit court for a stay* of or supersedes to such final order or decision.  Pending the appeal, the court may grant a stay or supersedes upon such terms as it deems proper.

W. Va. Code, § 29A-5-4 (emphasis added).

In denying EQB stays in its *Coal-Mac* decision, the Court explained that the expansive interpretation of W. Va. Code § 22B-1-7(d) would be tantamount to the creation of an "alternative" appeal mechanism for NPDES permits. (Mem. Opin. and Order at 42.) However, as EPA has specifically approved the mechanisms set forth in the state permitting regime, this is not a basis to reject those appeal mechanisms at this time. Indeed, had EPA wanted to assert control over the permit, it could have followed the procedure described in *Champion Int'l Corp. v. EPA,* 850 F.2d 182 (4th Cir. 1988), and vetoed it. However, EPA has taken no such action at this time.

Second, there is no question about the legal effect of EPA's decision to interpose objections to DEP's initial decision as to the three permits. Because of the time authorized under the MOA, the state agency could take no action to give any finality to its decision on the permits. EPA's action on May 27 confirmed the dilemma in which both the companies and DEP found themselves. A stay simply holds, "a ruling in abeyance to allow an appellate court the time necessary to review it." *Nken v. Holder,* 129 S. Ct. 1749, 1754 (2009). Had Apogee and Catenary not sought a stay before the EQB, EPA's initial objection would have had the effect of allowing the compliance schedule to expire and the effluent limits to take effect, thus resulting in the very substantive outcome that the companies sought to avoid. Apogee and Catenary should not be prohibited from taking some defensive action to overcome what is effectively a "four corners offense" by EPA to impose the very substantive outcome that he companies were seeking to review.

Accordingly, neither Apogee nor Catenary are currently "in violation" of its permit limits for selenium. Because there is no ongoing violation, Plaintiffs have failed to meet

their burden of establishing the Court's subject matter jurisdiction under the CWA or SMCRA and the Plaintiffs' claims must be dismissed under Rule 12(b)(1).

### F. SMCRA Does Not Create Subject Matter Jurisdiction to Adjudicate Claims Arising Under State Law

As in the *Apogee* case, Plaintiffs allege subject matter jurisdiction arising under the citizens suit provision of the federal Surface Mining Control and Reclamation Act of 1977 (SMCRA) as to each of the Patriot subsidiaries. Specifically, in these claims for relief as to each identified permit, Plaintiffs invoke § 520(a)(1), 30 USC § 1270(a)(1) which authorizes suit against a "person who is alleged to be in violation of any rule, regulation, order or permit, issued pursuant to this subchapter." To support this claim, Plaintiffs identify three *state* regulations allegedly being violated. These include: West Virginia Code of State Regulations § 38-2-14.5 (prevention of material damage to hydrologic balance outside of permit area; First Amended Complaint, ¶ 50); CSR § 38-2-14.5.b (mining not to violate effluent limitations or water quality standards; First Amended Complaint, ¶ 51); and CSR § 38-2-3.33.c (compliance with all applicable performance standards; First Amended Complaint, ¶ 49). However, these regulations were promulgated pursuant to the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-1, not federal SMCRA. For two reasons, these claims must be dismissed.

### 1. No Claim for Enforcement of State Regulations Arises under SMCRA

In its initial memorandum and order in the *Apogee* case, the Court considered the Plaintiffs claims under SMCRA and decided the issue in their favor.

> The suit is brought under one of the provisions of the federal SMCRA recognized by both *Bragg* and *Molinary* as directly operable, even in a primary state. Although *Bragg* precludes Plaintiffs from bringing a claim based upon the violations of federal regulations – which are not directly operable in a primacy state –

> Plaintiffs must be allowed to pursue their claim based on violations
> of *state* regulations passed pursuant to SMCRA.

*Ohio Valley Envtl. Coalition, Inc. v. Apogee Coal Co.,* 531 F.Supp.2d 747, 76* (S.D. W.Va. 2008) (emphasis added).[10]   As these state regulations were not "issued pursuant to this subchapter [of SMCRA]," Plaintiffs' SMCRA-based claim must be dismissed.

Although the Court in *Apogee* and *Hobet II* adopted an expansive view of citizens suit jurisdiction arising out of federal SMCRA, it did not address the question of the legal source of the regulations that the Plaintiffs seek to enforce in the present case.   The Fourth Circuit in *Bragg v. West Virginia Coal Ass'n,* made clear that the source of the standards enforced by a state with primacy granted under SMCRA arise from state, not federal law.   248 F.3d 275 (4th Cir. 2001). "[A]ny violation of this standard involves State law, not federal law, even though the relevant language in the State law is identical to that in the federal law."   *Id.* at 296. "[R]ather than asking the States to enforce the federal law, Congress through SMCRA invited the States to create their own laws, which would be of 'exclusive' force in the regulation of surface mining within their borders." *Id.* at 297.   "Congress intended that the federal law establishing minimum national standards would 'drop out' as operative law and that the State laws would become the sole operative law.   *Cf. Nat'l Wildlife Fed'n v. Lujan,* 928 F.2d 453, 464 n. 1 (D.C. Cir. 1991) (Wald, J., concurring) (recognizing that the provisions of SMCRA do not "technically apply" in primacy States). *Cf. Haydo v. Amerikohl Mining, Inc.,* 830 F.2d 494, 498 (3d Cir. 1987) (noting that "SMCRA *itself* is not violated by an operator's violation of a permit condition" (emphasis supplied)). *Id.* at 295.

---

[10]        The Court re-adopted this conclusion in *Hobet II*, 2010 WL 1286652 at 9.

Against this view of how the operative law in a primacy state arises, it is clear that the pertinent language of § 520(a)(1)—a violation of any regulation issued pursuant to this subchapter—by which the Plaintiffs invoke the Court's jurisdiction does not exist.  The three regulations that the Patriot subsidiaries allegedly violate do not arise under the relevant subchapter of SMCRA.  They arise exclusively under state law.

## 2. *Molinary* Is Limited to Actions for Damages

In its analysis in *Apogee*, the Court also validated the citizens' suit by relying a decision that preceded *Bragg*, *Molinary v. Powell Mountain Coal Co.*, 125 F.3d 231 (4th Cir. 1997).  The Court concluded that *Bragg* and *Molinary* could be "reconciled" based on the fact that *Bragg* sought to name a state official as a party in a federal action (unlike *Molinary*) , as well as the observation that "30 USC § 1270 confers on federal courts subject matter jurisdiction over at least some sorts of claims." *Bragg*, 248 F.3d at 299.

Assuming, for the sake of argument that federal courts do retain subject matter jurisdiction of citizens' suits that identify solely state law claims, *Bragg* and *Molinary* may be reconciled by means of the relief sought in each case.  As the Court recognized in *Apogee*, jurisdiction in the precedent *Molinary* case was based on 30 USC § 1270(f) which authorizes suits seeking damages for injury to persons or property arising from violations of regulations arising under SMCRA.  In the present action, however, Plaintiffs seek declaratory and injunctive relief, as well as damages in the form of civil penalties.  Therefore, to the extent there remains any jurisdiction for a citizens' suit under 30 U.S.C. § 1270, it is exclusively for damages to persons or property.  There is no such claim in the present action.

A better interpretation to reconcile *Molinary* and *Bragg* recognizes that 30 USC § 1270(a) and (b) were designed to function fully during the early phase of SMCRA when the

"initial regulatory program" described in 30 USC § 1252 was in effect.  Although now little more than a historical curiosity, the initial regulatory program functioned during the interim between SMCRA's enactment in August 1977 and the time when states sought full and exclusive jurisdiction to enforce their programs.  In that period, both limited federal and state regulations existed side by side.  In that circumstance, having recourse to the federal courts was necessary to ensure that citizens' rights could be vindicated.  As the Fourth Circuit explained in *Bragg*, however, that need ended when the states earned the right to exercise full and singular authority within their jurisdictions. 30 U.S.C. § 1253.

Accordingly, if *Molinary* is not limited to its facts, it should be limited to actions for damages for injury to person or property.  As the present case seeks injunctive relief and civil penalties, it should be dismissed.

### G.   Plaintiffs First Amended Complaint Must Be Dismissed for Failure to Adequately Plead Standing

Once again in their First Amended Complaint, Plaintiffs seek to treat standing as mere formality, as some perfunctory check box on a civil cover sheet that requires only the barest assertions to satisfy.  However, as the Supreme Court has made clear, standing is not simply a pleading requirement; instead, it is "an indispensible part of a plaintiff's case, [and] each element must be supported in the same way as any other matter on which a plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Here, because this action has been brought by multiple plaintiffs asserting multiple causes of action, *each* " 'plaintiff must demonstrate standing for *each* claim he seeks to press' and for '*each* form of relief that is sought.' "  *Davis v. Federal Election Com'n*, 554 U.S. 724, 734 (2008) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added)).  As set forth below, even after amending the First Amended Complaint in an attempt to cure defects with respect to

standing, the First Amended Complaint continues to lack even a single allegation to support the fundamental requirement that each Plaintiff demonstrate standing with respect to each of the alleged claims. Because Plaintiffs have failed to satisfy this "indispensable" requirement, and have made clear that further amendment cannot cure the defect, Plaintiffs' claims must be dismissed with prejudice. *See, e.g., Parkridge 6 LLC v. U.S. Dep't of Transp.*, 2010 WL 1404421, * 5 (E.D. Va. Apr. 6, 2010) ("Neither of the plaintiffs have alleged a valid basis for standing as to any of the [defendants], therefore, the First Amended Complaint must be dismissed with prejudice as to those defendants.").

As the parties seeking to invoke federal jurisdiction, Plaintiffs bear the burden of establishing each of the three distinct elements of Article III standing. *Lujan*, 504 U.S. at 561. Pursuant to the Supreme Court's holdings in *Twombly* and *Iqbal*, this requires that a complaint do more than simply assert that each element of Article III standing has been met; instead, the complaint must set forth a sufficient factual basis to support each element. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 557) ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations omitted).

Here, to establish standing as environmental organizations, each of the three plaintiff organizations *independently* must demonstrate that "one of its members would have standing to sue in his or her own right." *Friends of the Earth v. Gaston Copper Recycling Corporation*, 629 F.3d 387, 397 (4th Cir. 2011). Pursuant to the standards set forth in *Lujan*, this requires that *each* organization plead and prove that one of its members meet each of the three separate

elements of Article III standing with respect to *each* asserted claim: (1) he or she has suffered an "injury in fact," (2) the injury is traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision.  *Friends of the Earth*, 629 F.3d at 396 (citing *Lujan*, 504 U.S. 555).  As set forth below, the Plaintiffs fail to properly plead each of these three required elements.

First, to satisfy the "injury in fact" requirement, a plaintiff must demonstrate that he or she suffered "an invasion of a legally protected interest" which is both "concrete and particularized," and "actual or imminent."  *Id*.  In an environmental case, "the question is whether the plaintiff has suffered an injury, as opposed to whether the environment has actually been harmed."  *Piney Run*, 268 F.3d at 263 (4th Cir. 2001).  The Fourth Circuit has held that an organization cannot simply plead facts relating to environmental harm in an attempt to demonstrate injury in fact; instead, each organization must plead and prove that its member used the affected area, and that the member is a person "for whom the aesthetic and recreational values of the area are lessened by the Defendant's activity."  *Id*. (internal quotation omitted).

In response to Defendants' Motion to Dismiss, Plaintiffs amended their complaint to include two additional paragraphs allegedly intended to cure standing defects.  (*See* First Amended Complaint ¶¶ 30-31.)  However, the First Amended Complaint still fails to assert any factual basis whatsoever to demonstrate that *each* plaintiff organization satisfies standing with respect to *each* of the twenty-one claims alleged.  Indeed, the First Amended Complaint does no more than vaguely describe several members — without even stating which organizations they are members of — who allegedly have standing with respect to certain permitted outfalls in West Virginia.  For example, Plaintiffs seek to establish standing with respect to claims related to Apogee Permit WV0099520 by stating the following:

> One member grew up playing in Buffalo Creek and still visits frequently.  She now avoids contact with the water because of fears from pollution and worries about seleniums' affect [sic] on aquatic life.  Other members regularly visit Rum Creek and enjoy watching and photographing wildlife.  The pollution from Rum Creek disturbs her and makes it hard for her to enjoy her visits.

(First Amended Complaint ¶ 31.)  As alleged, it is not only impossible to determine which plaintiff organization this person is a member of, and thus which organization might have standing with respect to claims relating to WV0099520, but the pleading appears to indicate that other plaintiff organizations would not have affected members with respect to that permit.  These same fundamental deficiencies apply to each of the other standing descriptions set forth in the First Amended Complaint.

These general and fact bare pleadings are precisely the sort of bald allegations the Supreme Court sought to prevent in *Iqbal* and *Twombly*.  As set forth above, Plaintiffs are required to independently establish standing for *each* plaintiff organization with respect to *each* claim asserted.  *Davis*, 554 U.S. 724 at 734.  In their amended complaint, Plaintiffs do not even attempt to satisfy this requirement.  Instead, Plaintiffs appear to believe that standing somehow can be satisfied cumulatively by any number of organizations that Plaintiffs desire to add to the caption.  However, as the Supreme Court has made clear, "standing is not dispensed in gross," *Davis*, 554 U.S. 724, 734 (2008), Plaintiffs must independently establish standing with respect to each of the claims alleged.  Regardless of this fundamental rule, Plaintiffs fail to assert or even otherwise suggest that *each* Plaintiff has standing with respect to *each* claim.  As a result, without further factual support, such allegations do not meet the fact based pleading requirements set forth by the Supreme Court, and thus the First Amended Complaint must be dismissed.

In addition, for the same reasons the First Amended Complaint fails to establish injury in fact, it fails to demonstrate both that the alleged injuries are traceable to Defendants' activity,

and that Plaintiffs' injury would be redressed by a favorable decision.  In the First Amended Complaint, Plaintiffs do not provide any factual support for their assertions with respect to these two required elements; instead, they simply state that these unnamed members of unnamed organizations have been injured by Defendants' activities, and that those injuries could be "redressed" by their requested relief.  (First Amended Compl. ¶ 31.)  However, as with their allegations relating to injury in fact, these assertions do not present any allegations with respect to whether each organization actually has a member that can satisfy these requirements with respect to each of the 21 separate claims asserted by Plaintiffs.

As set forth above, Plaintiffs' allegations with respect to Article III standing are nothing more than formulaic recitations of the elements of standings set forth in *Lujan* and *Piney Run*. These naked assertions do not satisfy the fact based pleading requirements set forth in *Iqbal* or *Twombly*, and as a result, must be dismissed.  Furthermore, because Plaintiffs have twice attempted and twice failed to establish the required standing to assert the claims contained in the First Amended Complaint, further amendment would be futile and the First Amended Complaint should be dismissed with prejudice.

**H.  The Action Must be Dismissed Under Rule 12(b)(7) Because the WVDEP is a Required Party.**

As discussed above, the permits challenged by Plaintiffs are the subject of two proceedings brought by the circuit courts of Boone and WVDEP in Logan Counties.  As a result, WVDEP is a "necessary part[y] to this action because permitting this suit to continue in both the state and federal courts would likely subject all of the parties to conflicting legal obligations in a manner prohibited by Rule 19(a)(2)(ii) [now 19(a) (1) (b) (ii)]." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999).  Because WVDEP cannot be joined, this case must be dismissed.

1.     **WVDEP Cannot Be Made a Party to the Present Proceeding**

This Court analyzed extensively the application of Fed. R. Civ. P. 19 to the facts presented in *Hobet II,* 723 F. Supp. 2d 866, 913-19.  It first found that the WVDEP could not be joined.  "The WVDEP cannot be joined in this action because citizen suits under the CWA and SMCRA are permitted only to the extent allowed by the Eleventh Amendment, *see* 33 U.S.C. § 1365(a)(1)(ii); 30 U.S.C. § 1270(a)(1) & (2), and the WVDEP is immune to such suits as an arm of the State.  *See, e.g., Virginia v. Reinhard*, 568 F.3d 110 (4th Cir. 2009); *Bragg v. West Virginia Coal Ass'n.*, 248 F.3d 275 (4th Cir. 2001); *Westinghouse Elec. Corp. v. W.V. Dep't of Highways*, 845 F.2d 468 (4th Cir. 1988)."  *Hobet II*, (Doc. 49. p. 35).

Nevertheless, because the Court found the WVDEP not to be required within the meaning of Rule 19(a), it refused to dismiss the case as authorized by Fed. R. Civ. P. 12(b)(7).  Unlike *Hobet II*, but consistent with the Court's analysis in that case, the facts in the present case demonstrate that WVDEP is required for this action to proceed.[11]  Because it cannot be joined the action must be dismissed.

2.     **WVDEP is a Required Party Within the Meaning of Rule 19(a).**

The Court began its analysis in *Hobet II* by reviewing the two-part test under Rule 19(a)(1)(B).

> First, the Court decides whether the nonjoined party "claims an interest related to the subject of the action," *see* Fed.R.Civ.Pro.19(a)(1)(B), and, if so, the Court considers whether the absence of the non-joined party will either: (1) impede or impair that party's interest, *see* Fed.R.Civ.Pro.19(a)(1)(B)(i), or (2) leave an existing party subject to conflicting obligations. *See* Fed.R.Civ.Pro. 19(a)(1)(B)(ii). If the first and either of the second parts of the test are satisfied, then the non-joined party is

---

[11]     As observed by the Court in *Hobet II*, the 2007 amendments to Fed. R. Civ. P. 19 renumbered the Rule.  It also abandoned the labels "necessary" and "indispensable" historically relied upon by courts in analyzing issues of joinder.  723 F.3d at 915, fn.14.

> "necessary." *See, e.g., Nat'l Union*, 210 F.3d at 250-52 (finding non-joined party necessary); *Owens-Illinois*, 186 F.3d at 441 (same).

*Hobet II,* 723 F. Supp. at 915-916.

The Court found that WVDEP indeed had an interest implicated by the citizen suit in *Hobet II*, as required by Rule 19(a)(1)(B).  "Specifically, the WVDEP asserted its role as the primary enforcer of the CWA and SMCRA."  *Hobet II,* (Doc. 49, p.38).

The Court then turned to the two tests expressed under Rule 19(a)(1)(B)(i) and (ii).  The Court found that the WVDEP's interest would not be impaired but reached that conclusion because it deemed the state's prosecution in *Hobet II*—the modification of the consent decree to add the permit at issue—not diligent.  That same conclusion cannot result in the present case.  Here, as demonstrated above, the State has been engaged in diligent prosecution, and, in fact, this Court subsequently reached that conclusion with respect to the Hobet permits at issue, when it held that Hobet's Consent Decree with WVDEP made the *Hobet I* citizen suit moot.

In determining whether the WVDEP is a required party, Rule 19(a)(1)(B)(ii) applies in the second instance to persons already parties to the action.  In *Hobet II*, this Court acknowledged that "[t]his question is somewhat more difficult . . . because Hobet may be subject to injunctive relief imposed by two courts."  *Hobet II,* 723 F. Supp. 2d at 916.  It nevertheless resolved the issue by concluding that the WVDEP was not necessary because any "relief [entered by the Court] will not be inconsistent with the terms of the modified consent order in the Boone County Circuit Court".  *Id.*  The facts of the present case do not allow the Court to reach the same conclusion a second time.

Hobet clearly is "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Plaintiffs seek relief that is

directly at odds with the existing Settlement and Consent Order in the state court.  For example, Plaintiffs may seek a compliance schedule that conflicts with the schedule set forth in the State court proceedings.  Additionally, Plaintiffs may seek an order requiring a particular type of treatment system that differs from the treatment technology being used under the state court Consent Order.  Indeed, if Plaintiffs seek no relief different from that already present in the state court proceedings, this lawsuit would be moot.  Allowing the Plaintiffs to maintain their action in the absence of the WVDEP demonstrably places Hobet at the very risk that Rule 19 is designed to avoid.  Because the interests of both WVDEP and Hobet are implicated by the claims and relief sought by the Plaintiffs in the present suit, each satisfies the criteria of Rule 19 and the protection that rule affords.

With respect to Catenary and Apogee, because the state cases have recently commenced, there is no opportunity for this Court to determine if any relief it might grant will conflict with any decision of the state court.  Therefore, the careful tailoring that the Court undertook in *Hobet II* is not possible as to Catenary and Apogee.

Accordingly, under Rule 19(a)(1)(B)(ii) and the Court's prior reasoning, WVDEP is a required party in the present action.

### 3.    Rule 19(b) Requires that the Action be Dismissed.

Because WVDEP is a required party and because WVDEP cannot be joined to this action, this Court must proceed to determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  F.R.C.P. 19(b).  In *Hobet II,* the Court reviewed the four factors of Rule 19(b).  723 F. Supp. 2d at 917.  Although the Court reached the conclusion that WVDEP was not required in *Hobet II*, the facts of this case mandate a different conclusion.

Beginning with the first factor, the Fourth Circuit has acknowledged that the analysis used under Rule 19(b)(1) is largely the analysis under Rule 19(a)(2): "The extent a judgment rendered in the non-party's absence will prejudice that person or those already parties." *National Union Fire Insurance Company v. Rite Aid*, 210 F.3d 246, 252. For reasons set forth above, failure to join WVDEP to this case will result in prejudice to both the WVDEP, as well as Catenary and Apogee. Indeed, maintaining this action in the absence of the WVDEP effectively undermines the agency's statutory authority in its civil action against Catenary and Apogee. It ignores the validity of the existing state court decree as to Hobet. It also subjects Hobet to the likelihood of inconsistent or conflicting judgments. Thus, the Court cannot act to avoid prejudice to the state and the coal companies it found possible in *Hobet II*.

The second factor under Rule 19(b)(2)—"the extent to which prejudice could be lessened or avoided" by tailoring relief—is also unavailing . *Id.* at 253. Here, Plaintiffs seek a declaration and injunction from this Court regarding claims already resolved or currently being resolved by Boone County Circuit Court. Therefore, this Court cannot enter any form of relief in this case that will not implicate WVDEP's interests. Neither can the Court enter relief that will avoid subjecting Hobet to inconsistent obligations. As a result, narrow tailoring cannot avoid prejudice to the parties.

The third factor under Rule 19(b)(3) addresses the adequacy of the relief in the other forum, as well as "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, (1968). As the Fourth Circuit observed in *National Union Fire Insurance Company,* all of the parties to the present case are or can be proper parties to the state court action. 210 F.3d at 253. The Court acknowledged in *Hobet II* the potential for inefficiency to

the company from the maintenance of two actions. It nevertheless found WVDEP not to be required because the "August 9, 2010 trial is not only necessary to the proper resolution of the claims pending here, but may also promote the public interest in the complete and efficient settlement of both cases." *Hobet II,* 723 F. Supp. at 918. The trial has been concluded and its benefits to the Court and the public achieved. There can be no further doubt as to the required status of WVDEP in this action.

The fourth and final factor under Rule 19(b)(4) requires the Court to examine whether dismissal for nonjoinder will leave the plaintiff with an adequate remedy. As was the case in *National Union,* there is no reason why "state court will not provide an adequate remedy for the parties in this case." 210 F.3d at 253. The Plaintiffs have a clear right of intervention in the pending state proceeding. *State ex rel Ball v. Cummings,* 208 W.Va. 393 (1999). However, they chose previously to oppose joinder in the Catenary civil action. *See* Exhibit 11. Furthermore, this Court has already indicated that the settlement and consent order in the Boone County Circuit Court presents such a remedy: "Although this Court has criticized the WVDEP for prior lack of diligence, the agency employs environmental experts and engineers far better suited to understand the problem than this Court. The Court would not substitute its own plan for compliance in place of WVDEP's without evidence that the agency's plan was ill-conceived or developed in bad faith." *Hobet I,* 2008 WL 5377799, at 7 (December 18, 2008). This new action invites the Court to repudiate its prior decision in the *Hobet I* case which validated WVDEP's decision to enter its settlement.

Finally, dismissal of an action for nonjoinder of an indispensable party raised in a Rule 12(b)(7) motion is proper. *Northern Arapaho Tribe v. Harnsberger*, 660 F. Supp. 2d 1264 (D. Wyo, October 9, 2009).

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss.

Respectfully submitted,

PATRIOT COAL CORPORATION,
APOGEE COAL COMPANY, LLC
CATENARY COAL COMPANY, LLC and
HOBET MINING, LLC
By Counsel

/s/*Blair M. Gardner*
BLAIR M. GARDNER, WVBN 8807
THOMAS J. HURNEY, JR., WVBN 1833
ROBERT G. MCLUSKY, WVBN 2489
JACKSON KELLY, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
*Counsel for Patriot Coal Corporation,*
*Apogee Coal Company, LLC,*
*Catenary Coal Company, LLC and*
*Hobet Mining, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH,
INC., and SIERRA CLUB,**

      **Plaintiffs,**

**v.**                          **CIVIL ACTION NO. 3:11-cv-00115**

**PATRIOT COAL CORPORATION,
APOGEE COAL COMPANY, LLC
CATENARY COAL COMPANY, LLC,
and HOBET MINING, LLC,**

      **Defendants.**

**CERTIFICATE OF SERVICE
FOR DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

      I, Blair M. Gardner, hereby certify that the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** has been served electronically through the CM/ECF system this 2nd of May, 2011, upon the following:

      Amy G. Dawson, Esq.
      Derek O. Teaney, Esq.
      Joseph M. Lovett, Esq.
      Appalachian Center for the Economy
        & the Environment
      P.O. Box 507
      Lewisburg, WV  24901

                              */s/ Blair M. Gardner*
                              BLAIR M. GARDNER