**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC.; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.;
and SIERRA CLUB,**

|                              |                                |
|------------------------------|--------------------------------|
| **Plaintiffs,**              |                                |
| **v.**                       | **CIVIL ACTION NO. 3:11-cv-00115** |

**PATRIOT COAL CORPORATION;
APOGEE COAL COMPANY, LLC;
CATENARY COAL COMPANY, LLC;
and HOBET MINING, LLC,**

**Defendants.**

**<u>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT</u>**

In response to Defendants' Motion to Dismiss, Plaintiffs, Ohio Valley Environmental Coalition, Inc. ("OVEC"), West Virginia Highlands Conservancy, Inc. ("WVHC"), and Sierra Club submit the following memorandum of law.

## <u>INTRODUCTION</u>

The Court is by now very familiar with the string of citizen-suits brought by Plaintiffs to enforce mandatory limits on the discharge of selenium—a toxic pollutant—into rivers and streams of West Virginia. The Court is also familiar with the reasons for Plaintiffs' citizen-suits: Defendants and the West Virginia Department of Environmental Protection ("WVDEP") refuse to take compliance seriously. Industry and regulators have repeatedly colluded and stalled to push back the dates of effective limits. Defendants have had ample time and the benefit of extended compliance schedules to reduce selenium pollution to the levels required by law. They have, however, missed every deadline assigned to them and continue to pollute. Rather than

1

working towards a permanent solution they have sought the assistance of the WVDEP to block Plaintiffs from carrying out their statutory right to enforce the provisions of the Clean Water Act in West Virginia.   Likewise, Patriot and its subsidiaries have worked with WVDEP to circumvent the U.S. Environmental Protection Agency's ("EPA's") oversight role.

Far from "wholly usurping the enforcement authority of the CWA [Clean Water Act] from the state of West Virginia" and upsetting the careful balance established under that act, Plaintiffs are fulfilling a role Congress delegated to citizens—to enforce the law when government regulators cannot or will not act. Gwaltney of Smithfield v. Chesapeake Bay Foundation, 484 U.S. 49, 62 (1987) (recognizing the Congress enacted the citizen suit provision of the CWA for the "central purpose of permitting citizens to abate pollution when the government cannot or will not command compliance."); Sierra Club v. Powellton Coal Co., LLC, Civ. No. 2:08-cv-1363, 2010 WL 454929 at *15 (S.D. W. Va. Feb. 3, 2010) (rejecting argument that a citizen suit "usurps" a state's enforcement authority, explaining that "Congress recognized the 'important role citizens can play in abating pollution of United States waters' and vested them with limited power to participate in enforcement of the Clean Water Act" (quoting Comm. for Consideration of Jones Falls Sewage Sys. v. Train, 539 F.2d 1006, 1015 (4th Cir 1976)).  The WVDEP refuses to enforce the law. The "delicate balance" established by Congress contemplates just such a situation and gives citizen-plaintiffs a role not just to sue for their own damages, but to act as private attorneys general and ensure compliance.

## FACTS

This case involves several companies and 10 permits.  Because each permit is subject to unique allegations in the complaint, it is helpful to review them in turn.

**Apogee Permit WV0099520**

This permit regulates Apogee Coal Company's East Ruffner Complex and effluent draining from that mine. Am. Compl. at ¶ 14. Outlet 001 discharges into Rum Creek of the Guyandotte River. Id. at ¶ 58. Outlet 011 discharges into Buffalo Creek of the Guyandotte River. Id. On April 5, 2007, WVDEP issued an order extending the date by which Apogee would have to comply with its selenium limits to April 5, 2010. Id. at ¶ 59. The order required that construction of selenium treatment facilities begin by October 5, 2008 and that compliance be achieved by April 5, 2010. Id. at ¶ 60. Apogee did not comply with either deadline in the Order, and between April 5, 2010, and December 31, 2010, Apogee has accrued 373 days of violations of its effluent limits form selenium. Id. at ¶¶ 60-64.

On March 3, 2010, approximately one month before Apogee's selenium limits became final, WVDEP filed a public notice to modify Apogee's permit so that the compliance deadline would again be delayed—this time until July 2012. Id. at ¶ 66. Consistent with its oversight role, EPA objected to this modification, which effectively precluded the WVDEP from going forward with the proposed modification and administratively extending the permit deadlines. Pls.' Ex 1. (EPA Objection to Apogee Ruffner Mine). As an end run around EPA's objection, WVDEP filed action in the state circuit court of Logan County, West Virginia. Am. Compl. at ¶¶ 69–72. Rather than seeking compliance, in the state court action, WVDEP simply asks the court to take the action the state agency is precluded from taking itself—extending the compliance deadlines for selenium limits on Apogee's permits. Id. at ¶ 72. WVDEP has not pursued this relief vigorously, but has allowed the case to languish for several months without any progress towards resolution. Id. at ¶ 70; see also, Pls.' Ex 2 (Docket Sheet from Logan County Apogee Action).

3

**Catenary Permits:  WV0093751, WV0096920, WV0096962, WV1014684**

Defendant Catenary Coal Company holds four NPDES permits at issue in this case. Permit WV0093751 discharges from Catenary's Samples mine complex into Toms Fork of Cabin Creek from Outlet 26 and Left Fork of Laurel Fork of Coal Fork of Cabin Creek on outlets 003 and 005.   Am. Compl. at ¶ 76. The outlets on this permit were each subject to a WVDEP order extending the date of compliance with their selenium effluent limits until January 9, 2010. Id. at ¶ 77.   As part of this Order, Catenary was required to begin construction of selenium treatment facilities by January 9, 2009.  Id. at ¶ 79.  Catenary did not begin construction by the requisite date and has accrued 931 days of violation of its selenium effluent limitations since January 9, 2010.  Id. at ¶ 82.

Permit WV0096920 also discharges effluent from the Samples mine complex. Specifically, Outlet 001 flows directly into Toms Fork of Cabin Creek.  Id. at ¶ 84.  Immediately upon reissuance of the permit in 2007, WVDEP granted Catenary a compliance schedule delaying final effective selenium limits until January 23, 2010.  Id. at ¶ 88. The compliance schedule required Catenary to submit treatment plans for selenium no later than October 31, 2007 and to install such a treatment system by October 31, 2009.  Id. at ¶ 89.  Catenary did not meet either of those interim deadlines and, since its final limits went into effect the company, has accrued at least 361 days of violations from this outfall.  Id. at ¶¶ 90–93.

Catenary Coal's permit WV0096962 discharges into several small tributaries of White Oak Creek from Outlets 001, 042, 044 and 056.  Id. at ¶ 97.  It additionally discharges from Outlet 055 into Fourmile Branch, itself a tributary of White Oak Creek.  Id.  White Oak Creek is a tributary of Clear Fork of the Coal River on the other side of the mountain from Toms Fork. These drainages too, however, come from the Samples Mine complex.  Id. at ¶ 95.  On April 7,

2007, WVDEP issued an order delaying mandatory compliance with selenium limits on these permits until April 6, 2010.  Id. at ¶ 98.  As with the other WVDEP orders, this one contained interim deadlines requiring construction on selenium treatment facilities to begin by October 5, 2008, and for installation to be completed by April 5, 2010.  Id. at ¶ 99.  Catenary failed to meet both of these deadlines and since April 6, 2010 has accrued 1,437 days of violations on these permits for violations of selenium standards.  Id. at ¶¶ 100–03.

Permit WV1014684 places limits on the concentrations of pollutants that Catenary can discharge into an unnamed tributary of Seng Creek from Outfalls 001 and 002, into Rockhouse Creek from Outfall 003, and into Tenmile Fork of Cabin Creek from Outfall 006.  Id. at ¶ 107. On April 5, 2007, WVDEP issued an Order to Catenary extending selenium limits on these outfalls until April 6, 2010, but requiring the company to begin installation of treatment facilities by October 5, 2008 and to have such systems installed by April 5, 2010.  Id. at ¶¶ 108–09. Catenary has not met its interim deadlines on these permits and, since April 6, 2010, has accrued 1,149 days of violations of its selenium limits.  Id. at ¶ 113.

<u>The West Virginia Department of Environmental Protection's Action Against Catenary</u>

On February 23, 2010, Plaintiffs put WVDEP and Catenary on notice of their intent to sue for violations of Permits WV0097351 and WV0096920.  Id. at ¶ 115.  On April 23, 2010— the 59th day after Plaintiffs' Notice Letter—WVDEP initiated Civil Action No. 10-C-96 on these permits, in the Circuit Court of Boone County, West Virginia.  Id. at ¶ 116.  On March 3, 2010, WVDEP issued a notice of intent to modify the other two relevant Catenary permits— WV0096962 and WV1014684—to extend deadlines for selenium effluent limits until July 1, 2012.  Id. at ¶ 117.  As it had done with Apogee's permit, the EPA specifically objected to this extension of deadlines through modification.  See Pls.' Ex 3 (EPA Objection to Permit

WV0096962); <u>see also</u> Pls.' Ex 4 (EPA Objection to Permit WV1014684).   In response, WVDEP amended its complaint in Civil Action No. 10-C-96 to include all of the relevant permits.  <u>Am</u>. <u>Compl.</u> at ¶ 120.  That state court action does not seek compliance, but rather the result that WVDEP was prevented from carrying out administratively—the delay of effective permit limits for selenium.  <u>Id.</u> at ¶¶ 121–22.  Nor is it being diligently prosecuted—it has gone nearly a year without any meaningful action to bring about resolution.  <u>Id.</u> at ¶ 123; <u>see also</u>, Pls. Ex 5 (Docket Sheet from Boone County Catenary Action).

**<u>Hobet Permits</u>**

The Hobet Mining permits relevant to the instant case have all been subject to previous litigation before this Court.  As such, it is helpful to review not only the details of those permits, but also the actions this Court and other judicial bodies have taken.

<u>WV1017225</u>

Hobet Mining's Permit WV1017225 regulates water pollution discharged from the company's Berry Branch Deep Mine into Berry Branch of the Mud River.  <u>Id.</u> at ¶¶ 125–27. Permit WV1017225 was originally included in Civil Action No. 07-413, <u>Ohio Valley Environmental Coalition v Apogee</u>.  See <u>Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co., LLC</u>, 531 F. Supp. 2d 747, 750 (S.D. W.Va. 2008) ("<u>Apogee</u>"). Because of a WVDEP permit modification, however, the outlets on Permit WV1017225 subject to limits for selenium were administratively deleted.  <u>Id.</u> at 765.  As a result the parties jointly agreed to dismiss the relevant counts against Hobet.  The permit, however, was reissued by the WVDEP in 2009 with selenium limits on Outlet 004, which became effective on June 3, 2010. <u>Am.</u> <u>Compl.</u> at ¶ 123. Discharge monitoring reports from Outlet 004 show that the company has accrued 224 days of violations of its selenium limits since June 3, 2010.  <u>Id.</u> at ¶ 128.

Permits WV0099392, WV1016776, WV10120889, WV1021028

Permit WV0099392 regulates discharges from the Hobet-21 complex.  Id. at ¶ 130.
Outfalls from this permit flow into the Mud River mainstem as well as several tributaries,
including:  Stanley Fork, Sugartree Branch and Berry Branch and Horse Creek of the Little Coal
River.  Id. at ¶ 132.  Outfall 038 flows into Jack Smith Branch of the Lower Little Coal River.
Id. Since April 5, 2010, Hobet has accrued at least 2,805 days of violations of its selenium limits
on this permit. Id. at ¶ 133.

Permit WV1016776 regulates water pollution coming from Hobet's West Surface Ridge
Mine into Connelly Branch of the Upper Mud, Lukey Branch of the Upper Mud, and the Mud
River itself.  Id. at ¶¶ 135, 137.  Discharge monitoring reports filed pursuant to this permit show
that Hobet has accrued 1,266 days of violations since April 5, 2010.  Id. at ¶ 138.

Permit WV10120889 regulates discharges of water pollution from Hobet's West Ridge
Surface Mine into the Mud River.  Id. at ¶ 140.  Discharge monitoring reports show that since
April 5, 2010 the company has accrued 505 violations of it effluent limitations for selenium on
this permit.  Id. at ¶ 143.

Permit WV1021028 also regulates discharges from Hobet's West Ridge Surface mine,
into Lukey Fork of the Mud River.  Id. at ¶ 147.  Since April 5, 2010, Hobet has violated the
selenium conditions on this permit a total of 284 days. Id. at ¶ 148.

*Hobet I Litigation*

Permits WV0099392, WV1016776, WV10120889, and WV1021028 have all been the
subject of extensive litigation in this Court and have been affected by parallel litigation in the
Circuit Court of Boone County, West Virginia.  The WVDEP initially filed suit against Hobet
for violations of selenium limits on those four permits in January 2007 (in direct response to a

notice of intent to sue under the Clean Water Act's citizen suit provision). Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC, No. 3-08-088, 2008 WL 5377799 at *3, (S.D.W.Va. December 18, 2008) (Hobet I). In February 2008, the WVDEP's action had languished so long that it was subject to dismissal at the discretion of the Boone County Court. Id. at *5. Two of the Plaintiffs in this action commenced a case on February 7, 2008, arguing that the state was not diligently prosecuting its action against Hobet. Id. at *3. On September 5, 2008, WVDEP and Hobet reached a Consent Decree in Boone County Court which provided an injunction and schedule for compliance. Id. In its December 18, 2008 opinion, this Court found that, although the state court action was not being diligently prosecuted at the time of the commencement of the citizen suit, the Consent Decree entered later had the effect of mooting the citizen suit. Id. at *4–5. As a result, the Court dismissed the plaintiffs' claims for declaratory and injunctive relief. Id. at *7–8. (The Court also recognized that the prompt acceleration of pace in the state court action was attributable to the plaintiffs' filing of the federal action). Id. at *7. Claims for civil penalties were resolved by a Consent Decree entered by this Court for violations of selenium limits on the four Hobet permits through April 4, 2010 Pls.' Ex. 6 (Hobet I Consent Decree) at ¶ 25. By its terms, the Consent Decree terminated on April 19, 2010. Id. at 49. The Court subsequently dismissed the case. Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC, No. 3-08-088 Slip Op. (S.D. W.Va. Jan. 28, 2011).

*Hobet II Litigation*

In October 2009, the WVDEP and Hobet agreed to modify the Consent Decree in Boone County Court, which had resulted in this Court's findings that the claims for injunctive relief in Hobet I were moot. Am. Compl. at ¶ 154. The amended consent decree was entered by the Boone County Circuit Court in December 2009, and not only applied to the four original permits

at issue in the case, but was modified to include two additional permits—WV0122890 and WV1022911.  Id.  In July 2010, this Court issued an opinion reviewing the effect of the amended consent decree on a citizen suit regarding Permit WV1022911 (which is not involved in the instant case).  See Ohio Valley Envtl Coalition v. Hobet Mining, LLC, 723 F. Supp. 2d 886 (S.D. W.Va. 2010) ("Hobet II").  The Court found that the amended consent decree was far more lenient than the original.  As a result of the extended compliance schedules and weakening of the consent order, this Court held that the amended consent decree was neither diligently prosecuted nor reasonably calculated to require compliance.  Id. at 906–13.  It also determined that the amended decree left a realistic prospect for continued violations.  Id. at 911–13.  Accordingly, the Court concluded that the amended consent decree could not bar the citizen suit regarding selenium discharges related to Permit WV1022911.  Id. at 913.  Although the Court has already held that the Amended Consent Decree is evidence that the Boone County action is not being diligently prosecuted and that the decree itself is not calculated to require compliance, Defendants again rely on it in an attempt to block this action.

## **ARGUMENT**

Defendants proffer several arguments in their attempt to dismiss Plaintiffs' case—the Court has heard nearly all of them before. At least two of Defendants' arguments are barred by collateral estoppel; the majority of others are easily resolved by a look to recent decisions of this Court.  As the main thrust of Defendants' argument is that Plaintiffs are trying to interfere with the state enforcement authority, that argument will be addressed first.  Plaintiffs then proceed to answer each of Defendants' other arguments in turn.

I.      **Actions by WVDEP to Enforce Selenium Limits on Apogee and Catenary Permits Do Not Bar this Action**

    A.  **WVDEP's Boone County and Logan County Enforcement Actions are Not Diligent Prosecutions**

Pursuant to the citizen suit provisions of SMCRA and the CWA, under which this case is brought, no action may be commenced if the state administrator is <u>diligently</u> prosecuting a civil or criminal action <u>to require compliance</u> by the violator.  33 U.S.C. § 1365(b)(1)(B); 30 U.S.C. § 1270(b)(1)(B) (emphasis added).  While a federal court typically defers in the face of a state court proceeding, the deference owed is not unlimited.  <u>Hobet II</u>, 723 F. Supp. 2d at 906 ("[A] diligent prosecution analysis requires more than mere acceptance at face value of the potentially self-serving statements of a state agency and the violator." (quoting <u>Friends of Milwaukee's Rivers, v. Milwaukee's Metropolitan Sewerage Dist.</u>, 382 F.3d 743, 760 (7th Cir. 2004)).  The test for whether a state enforcement action is a diligent prosecution is whether the action "is capable of requiring compliance with the Act and is in good faith calculated to do so."  <u>Piney Run Preservation Ass'n v. County Com'rs of Carroll County, MD</u>, 523 F3d 453, 459 (4th Cir. 2008 (quoting <u>Friends of Milwaukee's Rivers</u>, 382 F.3d at 760).  As this Court held in <u>Hobet I</u> and <u>Hobet II</u>, whether a state prosecution is diligent for purposes of 33 U.S.C. § 1365(b)(1)(B) is measured "based upon the status of the state court proceeding at the time the citizen suit is filed." <u>Hobet</u> II, 723 F. Supp. 2d at 905; <u>Hobet</u> I, 2010 WL 5377799 at *5 (citing <u>Chesapeake Bay Found. v. Amer. Recovery Co., Inc.</u>, 769 F.2d 207, 208 (4th Cir. 1985).  To apply the diligence test, a court may look both to the docket of the state court action as well as the context surrounding that action.  <u>Hobet</u> II, 723 F. Supp. 2d at 906. (citing <u>Connecticut Fund For Environment v. Contract Plating Co., Inc.</u>, 631 F. Supp. 1291, 1293 (D. Conn. 1986); <u>Student Pub. Interest Research Group of N.J., Inc. v. Fritzsche, Dodge, & Olcott, Inc.</u>, 579 F. Supp. 1528,

1535 (D.N.J.1984)).  "If the federal court finds that the state action was not capable of requiring compliance or was not in good faith calculated to do so, it should not hesitate to allow a citizen suit to proceed."  Id.

For the past four years, WVDEP has done everything in its power to block the implementation of effective selenium limits on mining permits.  In November 2006, citizen groups, including two of the Plaintiffs in this action, issued notice to Hobet that they intended to sue for violations of selenium limits on its permits.  Hobet I, 2008 WL 5377799 at *3.  WVDEP responded by commencing a placeholder action in Boone County Circuit Court one day before the notice period expired.  Id.   On April 5, 2007, the WVDEP issued 80 identical orders to coal operators holding NPDES permits with selenium limits.  Apogee, 531 F. Supp. 2d at 747.   Each of those orders sought to suspend applicable selenium limits until 2010.  As a result of those orders, Plaintiffs were barred from filing suit to enforce compliance with the limits in any of the affected permits, with one exception.  This Court found that one compliance order issued to Apogee for its Permit WV1013599 in January 2007 was not properly noticed and thus allowed a citizen suit to proceed.  Id.  In March 2009, the parties reached a Consent Decree before this Court resolving those claims.   Other permits, subject to WVDEP's modifications did not result in compliance (or meaningful efforts to achieve compliance) by the deadlines contained within their modifications.  Rather than penalizing this noncompliance, DEP's typical response was to attempt to delay effective limits further—until this procedure was thwarted by EPA.

When the WVDEP has been unable to forestall compliance by administrative measures, it has not been hesitant to use the state court system.  In Hobet I, plaintiffs filed Notices of Intent to Sue Hobet for selenium violation of Permits WV0099392 and WV1016776, in late 2006.  As noted above, WVDEP filed an action in Boone County Court to block the citizen suit on January

12, 2007.  Hobet I, 2008 WL 5377799 at *3.  Plaintiffs filed Notices of Intent to Sue on two additional Hobet permits, WV1020889 and WV1021028 in March 2007.  Id.  In response WVDEP amended its Boone County complaint to include claims related to those permits.  Id.  Those cases then languished for more than a year in the Boone County court without any action, until the citizen groups commenced an action alleging the case was not being diligently prosecuted, a conclusion with which the Court agreed.  Id. at *6.  As described above, WVDEP appeared to begin to move the case forward, and this Court held that WVDEP's entry of a consent decree mooted several of the claims against Hobet.  Id. at *7–*9.  WVDEP then proceeded to modify that Consent Decree to extend deadlines and delay compliance, which ultimately resulted in a finding by this Court that WVDEP was not diligently prosecuting the case and that its actions were not calculated to require compliance.  See Hobet II, 723 F. Supp. 2d at 906–13.

WVDEP's actions with respect to the Catenary and Apogee permits at issue in this case have followed the same pattern as described above—one that cannot reasonably be described as diligent.  The Apogee permit at issue in the instant case—WV0099520—was one of the 80 subject to suspended selenium limits by order of the WVDEP on April 5, 2007.  The Catenary permits—WV0093751, WV0096920, WV0096962, and WV1014684—were each subject to individual orders extending compliance deadlines for selenium for years.  (The final compliance deadlines for these permits ranged from January 9, 2010 to April 6, 2010).  As Plaintiffs' Amended Complaint alleges, neither company met any of the deadlines within their respective order, including final deadlines for compliance with selenium limits. Am. Compl. at ¶¶ 59–64; 77–81; 88–92; 99–102; 109–112.  In response, WVDEP simply tried to extend deadlines for final compliance.  EPA, however, objected and blocked those administrative actions.  Am. Compl. at

12

¶¶ 68, 119. Undaunted, WVDEP filed "enforcement actions" in state court, asking the court to take the action WVDEP has been precluded from taking itself.  Am. Compl. at ¶¶ 69, 115–124. Those actions in Logan County Circuit Court and Boone County Circuit Court (like other WVDEP enforcement actions for selenium compliance) are neither diligently prosecuted nor reasonably calculated to achieve compliance.

A cursory review of the Logan County docket sheet in WVDEP's action against Apogee (Civil Action No. 10-C-144), reveals that the suit is not progressing towards resolution.  The case was filed on June 11, 2010 and on June 22, 2010 WVDEP received its answer from Apogee. Pls.' Ex. 1.  Since that time the only thing which has occurred in the case is the filing and subsequent withdrawal of a motion by to join additional parties.  Id.  The docket sheet does not show a single certificate of service—which are required to be served to the Court upon service or response to discovery.  Id.  No substantive motions have been filed, no hearings before the court scheduled—in short, it appears that WVDEP has taken no action since the filing of the case. This is a situation nearly identical to that in Hobet I, where this Court found the case was not diligently prosecuted.  Hobet I, 2008 WL 5377799 at *4-*6.

The case in Boone County Court against Catenary, Civil Action No. 10-C-96, is also not proceeding at any reasonable pace.  WVDEP filed that case over a year ago, on April 23, 2010. Pls.' Ex. 2.  On June 11, 2010, the complaint was amended to encompass additional Catenary permits; an answer to the amended complaint was filed on June 23, 2010.  Id.  The docket report appears more substantial than the one in WVDEP's action against Apogee, but only because Catenary mischievously sought to join these Plaintiffs and another environmental group as parties to that suit.  In fact, a close view of the docket report reveals that no discovery has taken

place, no substantive motions have been filed—in short, no meaningful action has been taken between WVDEP and Catenary since the case was filed last April.  Id.

As in Hobet I, "in this regulatory climate, where the WVDEP responded to selenium violations with compliance extensions and weak performance schedules, a defendant subject to the type of lackadaisical suit brought in [Logan or Boone] County would not feel compelled to comply with its permit limits."  2008 WL 5377799 at *4–*6.  Accordingly, WVDEP's Logan and Boone County actions are not "capable of requiring compliance."  Id.

Not only are the actions not capable of requiring compliance, they were not in good-faith calculated to do so.  As evidenced by WVDEP's complaint in the actions (discussed in more detail below), the actions were commenced in an attempt to achieve through the judicial branch that which EPA had prohibited WVDEP from achieving through administrative action—an extension of the deadline for Apogee, Catenary, and other coal operators to comply with selenium limitations.  In other words, the Boone and Logan County actions are exactly the type of collusive actions that cannot be considered a diligent prosecution.  See Friends of Milwaukee's Rivers, 382 F.3d at 760 (noting that the presumption of diligence can be rebutted by a showing "that the state has engaged in a pattern of conduct that could be considered dilatory, collusive, or otherwise in bad faith" (quoting Conn. Fund for the Env't, 631 F. Supp. at 1293)).

## B. WVDEP's State Court Actions Do Not Bar this Action Because They Do Not Seek to "Require Compliance" with the Selenium Limitations

The fact that the cases in state court are not progressing would alone be grounds on which to allow this citizen's action to proceed.  Here, however, it is obvious that the cases are also not calculated to achieve compliance, but rather delay or avoid it, notwithstanding the position EPA has taken on extended compliance with selenium limits.  Defendants make much of the fact that

14

the WVDEP is seeking civil penalties, but it is clear that no penalties will be imposed for violations that precede the establishment of new NPDES permit limits.  WVDEP has already entered an agreement, in the Kanawha County Circuit Court, with both Catenary and Apogee that limits on three permits set to take effect around April 5, 2010 are enjoined from taking effect.[1]  See Defs.' Exs. 7a, 7b.  ("The existing obligation in each of the above-listed NPDES permits to report the concentrations of selenium in discharges shall continue in effect, and the effluent limits on concentrations of selenium set to take effect on or after around April 5, 2010 are hereby preliminarily enjoined from taking effect.").  There is no reason to believe that WVDEP will consider any of the final compliance deadlines to be effective—what is far more likely the agency will enter into a sham Consent Decree as it did with Hobet.  While purporting to seek compliance through injunctive relief and civil penalties, then, WVDEP's actions in Logan and Boone County courts are actually calculated to extend or negate the deadline for effective limits—by seeking a modification of the permit through a court ordered compliance schedule in defiance of EPA.  Pls.' Ex 7 at 9 (Logan County Apogee Complaint); Defs' Ex. 9 at 8–9 (Boone County First Amended Complaint Against Catenary).

In similar situations, other federal courts have found that actions were not filed to "require compliance" and have allowed citizen suits to proceed.  For example, in Frilling v. City of Anna, the Court concluded that the determination of whether 33 U.S.C. § 1365(b)(1)(B) precluded a citizen suit "require[s] an examination of whether the state court action was brought 'to require compliance.'"  924 F. Supp. 821, 835 (S.D. Ohio 1996).  The Frilling Court concluded that the state action was not commenced to "require compliance" where the state substituted interim limitations for the final limitations.  Id. at 837.  Further, in Culbertson v.

---

[1] To be clear, Plaintiffs do not believe that this agreement had the legal effect of suspending Defendant's permit limits and Plaintiffs intend to seek relief—as stated in their compliant—for violations of effluent limits that went into effect on April 5, 2010.

Coats American, Inc., the Court concluded that the state action had no preclusive effect because it did not require compliance, but merely extended the compliance deadline.  913 F. Supp. 1572, 1579 (N.D. Ga. 1995).

The requested relief in the Logan and Boone County Actions is nearly identical and does little more than ask the Court to extend the compliance deadlines.  Pls. Ex 7 at 9; Defs.' Ex. 9 at 8–9.  While the request for relief first asks for civil penalties and injunctions on future violations of permits and acts, the subsequent paragraphs immediately obviate those requests.  Pls. Ex 7 at 9; Defs.' Ex. 9 at 8–9.  They ask not only for new schedules of compliance for selenium limits within the permits but also dates by which the permittee will have to meet water quality standards for selenium.  Pls. Ex 7 at 9; Defs.' Ex. 9 at 8–9.

### C.  Plaintiffs Bring Claims in This Action that WVDEP Does Not Seek to Prosecute

Even if the Catenary Boone County action and Apogee Logan County action were to have preclusive effect as to some of Plaintiffs' claims, they could have no preclusive effect as to Plaintiffs' Second, Fifth, Eight, Eleventh, and Fourteenth Claims for Relief.  In those claims, Plaintiffs seek to compel Apogee and Catenary to comply with their obligations under State issued Compliance Orders to build selenium treatment systems on outfalls regulated by their permits.  Am. Compl. at ¶¶ 175–183, 203–10, 230–39, 259–266, 286–295.[2]

The CWA allows citizens to enforce state issued orders such as the Compliance Orders in Plaintiffs' Claims for Relief.  33 U.S.C. § 1365(a)(1).  WVDEP's First Amended Complaint in the Catenary Boone County action does not seek to enforce violations of the Compliance Orders nor does WVDEP's action against Apogee in Logan County.  Pls. Ex. 7; Defs.' Ex. 9.  When a

---

[2] Plaintiffs' Claims for Relief from Compliance Orders refer to the following Orders relevant to their accompanying permit:  2nd Claim for Relief—Order 493, Permit WV0099529; 5th Claim for Relief—Order 198, Permit WV0093751; 8th Claim for Relief—Order 199, Permit WV0096920; 11th Claim for Relief—Order 775, Permit WV0096962; 14th Claim For Relief—Amended Order 1, Permit WV1014684.

governmental action fails to prosecute the same violations as the citizen suit, it cannot have preclusive effect.  <u>Frilling</u>, 924 F. Supp. at 837-39; <u>Glazer v. Amer. Ecology Environmental Servs.</u>, 894 F. Supp. 1029, 1035 (E.D. Tex. 1995).

**II.    <u>Claims Against Hobet Are Barred by the WVDEP's State Court Action Because That Litigation Is Not Diligently Prosecuted, Not Calculated to Achieve Compliance, and Leaves  Reaslistic Prospect of Continued Violation</u>**

The WVDEP's action in Boone County Circuit Court has been pending for over four years and has done nothing but delay effective selenium limits.  It is not being diligently prosecuted and it is not calculated to require compliance.  It is, in fact, a perfect example of why the present action should be allowed to proceed against all parties.  As already described, Plaintiffs were initially prevented from filing suit against Hobet because of the state Court action.  <u>Hobet I</u>, 2008 WL 5377799 at *3.  Plaintiffs then reasserted their claims after it became clear that literally nothing was happening before the state Court a year after the case was filed. <u>Id.</u>  In response WVDEP quickly reached a settlement with Hobet in an attempt to moot plaintiffs' action.  That agreement, however, was later severely weakened and it became clear that the agreement would not lead to compliance. <u>Id.</u> at 4–5.

Defendants rely heavily on the fact that the 2008 Consent Decree entered in Boone County Court was found to moot the plaintiffs' claims in <u>Hobet I</u>.  There is no dispute about that.  Significant events have taken place, however, in the form of the December 2009 modification of that consent decree.  Comparing the two consent decrees, this Court noted,

> When entered on September 5, 2008, the Boone County consent order did the following: (1) assessed civil penalties against Hobet for violations of effluent limits occurring between 2003 and March 31, 2008, in the amount of $4,088,315; (2) allocated up to $2,600,000 of this penalty to fund SEPs intended to address Hobet's selenium problem; (3) instituted interim limits for selenium; (4) established a system of stipulated penalties for future violations of the interim limits; (5) set a deadline for the installation of selenium treatment systems at all

applicable outfalls (December 31, 2009); and (6) set a deadline for Hobet's final compliance with the permit's selenium limits (April 5, 2010).

Hobet moved to modify the September 2008 consent decree, on August 10, 2009. The motion was granted and a modified consent decree entered on December 3, 2009. As modified, the consent decree: (1) reallocates a portion of the funds set aside to conduct certain SEPs to other pilot treatment projects (or as a civil penalty); (2) extends the application of the stipulated penalty provision in the original consent decree to July 1, 2012; (3) extends the deadline for the installation of selenium treatment systems at all applicable outlets to December 30, 2011; (4) extends the deadline for final compliance with selenium limits to July 1, 2012; and (5) adds WV/NPDES Permits 1022890 and 1022911 to the consent decree, applying all terms and modifications of the consent decree to each permit.

Hobet II, 723 F. Supp. 2d at 900.  In short, the amendment did nothing but extend compliance and reduce penalties.  Accordingly, the Court found that the Boone County action was not diligently prosecuted, not calculated to achieve compliance, and left a realistic prospect for continued violations of permit WV1022911.  Id. at 906–13.  As a result the citizen-suit was not barred.  Id.  The same result should issue here.

## III. Plaintiffs' Claims for Relief Against Hobet Are Based on Violations Which Have Never Been Litigated and Are Not Barred By Claim Preclusion

Claim preclusion, or res judicata, "bars a party from suing on a claim that has already been 'litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.'"  Ohio Valley Envtl. Coalition v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009) (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 131.10(1)(a) (3d ed. 2008)).  The doctrine does not apply here because Plaintiffs seek neither to relitigate the claims at issue in Hobet I or Apogee, nor to litigate claims that could have been litigated in those actions.

18

Under the terms of the Consent Decree that resolved Hobet I, the compromise reached by the parties resolved violations of WV/NPDES Permits WV0099392, WV1016676, WV1020889, and WV1021028 that occurred through April 4, 2010.  Ps' Ex. 6 at ¶ 25.  In direct contrast, the Amended Complaint in this action only prosecutes violations that have occurred since April 5, 2010.  Am. Compl. at ¶¶ 133, 137, 143, 147. "The scope of the res judicata bar created by a consent decree is determined by the language of the consent decree."  Sierra Club v. City and County of Honolulu, Civ. No. 04-00463 DAE-BMK, 2008 WL 515963 at *6 (D. Haw. Feb. 26, 2008) (citing Ellis v. Gallatin Steel Co., 390 F.3d 461, 473 (6th Cir.2004)).  Accordingly, the claims in this action against Hobet related to WV/NPDES Permits WV0099392, WV1016776, WV1020889, and WV1021028 were not litigated in Hobet I.

Nor could have Plaintiffs' pending claims against Hobet have been litigated in Hobet I. Each violation of a federal environmental law constitutes a distinct cause of action.  Hobet's post-April 5, 2010 violations of its selenium limits could not have been litigated in Hobet I because claims based on those violations did not arise until the violations occurred.  Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc., Civ. No. 97-6073-CV-SJ-6, 50 E.R.C. 1206, 2000 WL 220464 at *4-*5 (W.D. Mo. Feb. 23, 2000); Old Timer, Inc. v. Blackhawk-Centeral City Sanitation Dist., 51 F. Supp. 2d 1109, 1118 (D. Colo. 1999). Moreover, the Supreme Court of the United States has held that "a judgment . . . cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."  Lawlor v. Nat'l Screen Serv., 349 U.S. 322, 328 (1955).

For the similar reasons, claim preclusion does not apply to claims against Hobet for violations of Permit WV1017225.  The amended complaint filed in the Apogee case on July 18,

2007 alleged violations of Hobet's Permit WV1017225 which occurred from Outlet 002 during the first quarter of 2007.  During the pendency of the litigation, WVDEP administratively deleted Outlet 002 from the permit.  As a result the parties jointly moved for dismissal of Count 3, which alleged violations under the CWA.  Later, the Court found that, without those CWA violations, claims brought under WVSCMRA could not survive.  Ohio Valley Environmental Coalition v. Apogee Coal Co., 555 F. Supp. 2d 640, 650-51 (S.D. W.Va. 2008).  The present action involves different claims based on a different period of time and from a different outfall.  The current complaint alleges violations that have occurred since June 3, 2010 from Outlet 004.  They are distinct claims which were not subject to litigation in Apogee and could not have been brought in that case.  Claim preclusion, therefore, does not apply.[3]

### IV.   Orders Issued by the EQB and the Kanwaha County Court Are Not Sufficient to Stay the Effect of Permit Limits

#### a.   The EQB Had No Authority Modify Final Effective Permit Limits

Defendants argue that they cannot be held in violation of Apogee permit WV0099520 nor Catenary Permits WV0096962 and WV1014684 because limits on these permits are not final. When EPA objected to the proposed modifications—extending compliance deadlines—for these permits, WVDEP was forced to deny the modifications (and file sham "enforcement" actions in an attempt to block citizen-suit enforcement).  Because of the EPA objections to the modifications, compliance schedules in the permits expired and permit limits for selenium became final.  Defendants appealed the denial of the modifications to the Environmental Quality

---

[3] In support of their argument for claim preclusion Defendants cite the recent Supreme Court case of United States v. Tohono O'odham Nation,  for the proposition that the accepted test for claim preclusion "depends upon factual overlap barring claims arising from the same transaction."  558 U.S. __ (2011), 2011 WL 1543329 *6.  The holding of the case is inapposite as it involves claim preclusion in the context of jurisdiction granted to the Court of Federal Claims pursuant to 28 U.S.C. § 1500.  Moreover the quoted portion is taken out of context.  In Tohono O'odham Nation, the Court is simply making a point that claims based on the same set of facts may be precluded even if they request different relief.  Id.  As explained, the facts to be relied upon in the present case are different than those that have been the center of prior litigation.

Board "(EQB"), which sought to stay the effect of final limits.  While Apogee and Catenary have every right to pursue their appeals, those actions must be recognized for what they are:  appeals of the permit modifications <u>not</u> of the underlying permits.  Because the permits themselves were not before the Board had no authority to modify those applicable limits.  The Court reached this conclusion in a nearly identical case just weeks ago.  <u>See</u> <u>Ohio Valley Envtl Coalition v. Coal-Mac</u>, ___ F. Supp. 2d ___, 2011 WL 1237643 at *21–*24 (March 31, 2011) ("<u>Coal-Mac</u>").

The following provision governs appeals before the EQB:

The filing of the notice of appeal does not stay or suspend the effectiveness or execution of the order, permit or official action appealed from. . . . If it appears to the appropriate chief, the secretary or the board that an unjust hardship to the appellant will result from the execution or implementation of a chief's or secretary's order, permit or official action pending determination of the appeal, the appropriate chief, the secretary or the board, as the case may be, may grant a stay or suspension of the order, permit or official action and fix its terms: Provided, That unjust hardship shall not be grounds for granting a stay or suspension of an order, permit or official action for an order issued pursuant to article three, chapter twenty-two of this code.

W.Va. Code § 22B-1-7(d).

Reviewing the plain meaning of this section, the Court wrote in <u>Coal-Mac</u>, "the scope of the authority to grant a stay outlined in the second sentence is defined by the first sentence, which refers to 'the order, permit or official action appealed from.'"  2011 WL 1237643 at *22.  Support for this interpretation was found not only within the plain meaning of the provision itself, but also the context of the statute:  "The plain meaning of the statute is without question colored by the fact that it has to do with orders and permits on appeal. This interpretation finds support in the EQB's own rule implementing the statute, which states '[t]he appellant may request a stay of the action appealed from by written motion.'"  <u>Id.</u> (quoting W. Va. Code R. § 46-4-5.5).

21

That interpretation is further supported by the concept of cooperative federalism upon which the CWA operates.  As the Court noted, an expansive reading of EQB's stay authority would render EPA review of State-issued permits meaningless.  Id. at *23.  The EQB stays would have the effect of circumventing EPA's objection to WVDEP's extension of the compliance deadlines.  Id.  As it currently stands, many of the permits have effectively had their compliance deadlines extended for nearly a year, some longer.  Id.  Because the stays are not tied to a particular appeal, the process could be used to indefinitely stay final selenium limits—despite EPA's objection to any extension of those limits and the authority Congress granted to EPA to make such objections.  See 33 U.S.C. § 1342(d) (granting EPA authority to object to state permit decisions).

Defendants would have this Court reverse its own, well-reasoned opinion, in nearly identical circumstances, just a few weeks after that decision was issued.  Contrary to Defendants argument allowing the EQB to modify final limits would disturb the balance of cooperative federalism—not the other way around—by mooting EPA's role in the permitting process.  [there should be a cite in Coal-Mac to support this].  EPA objected to the extension of compliance deadlines, forcing WVDEP to deny applications for modification.  WVDEP then filed suit in state court ostensibly to enforce those final limits.  Simultaneously, each permittee appealed the denial of modification to the EQB.  The state has control over both enforcement of final limits contained within the permits and the grant or denial of the modification request.  WVDEP must simply act in accordance with limits placed on such control by the systems of federalism and citizen enforcement written into the CWA.  As already described, it has exceeded the bounds of both these limits.

Defendants disingenuously argue that "had EPA wanted to assert control over the permit, it could have followed the procedure described in <u>Chamption Int'l Corp. v. EPA</u>, 850 F.2d 182 (4th Cir. 1988), and vetoed it.  However, EPA has taken no such action at this time."  Defs.' Mem. of Law in Supp. of Mot. To Dismiss Pls.' First Am. Compl. at 23.  In fact, EPA has taken the only opportunity at its disposal to block the extension of compliance schedules within these permits—it issued specific objections to the proposed modifications.  Under the governing regulations—40 C.F.R. 123.44—it was then up to the State or the permittee to meet EPA's objections.  Rather than doing so, WVDEP chose to deny the modification applications.  As a result, EPA could not take any further control over the permit modifications.  In response to EPA's objections WVDEP made a new decision to deny the modifications, which is subject to the pending EQB appeals.  EPA's objections put the metaphorical ball back into the hands of the state; unfortunately the state is using that opportunity in an attempt to nullify EPA's objections by blocking both federal and citizen action relevant to these permits.

### b. An Injunction Is an Order Directed *In Personam* Which Cannot Be Used to Modify Permit Limits

The Kanawha County Circuit Court injunction, likewise, has no effect on the Court's jurisdiction in the instant case.  <u>See</u> <u>Coal-Mac</u>, 2011 WL 1237643 at *9 n. 6.  An injunction cannot be directed at permit limits.  As the Supreme Court of the United States recently explained, an injunction

> is a means by which a court tells someone what to do or not to do. When a court employs "the extraordinary remedy of injunction," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), it directs the conduct of a party, and does so with the backing of its full coercive powers. . . . .
>
> It is true that "'[i]n a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating <u>in personam</u>.' " *Id.,* at 800 (8th ed.2004) (quoting 1 H. Joyce, A Treatise on the Law Relating to Injunctions § 1, pp. 2-3 (1909)).

Nken v. Holder, 129 S.Ct. 1749, 1757 (U.S. 2009).  The West Virginia Rules of Civil Procedure likewise specify,

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

W.Va. R. Civ. P. 65(d) (emphasis added).  Thus, perhaps the Kanawha County Circuit Court could have enjoined the WVDEP, as a party to the action, from enforcing Defendants' selenium limits, but the Court had no authority to enjoin the limits themselves, or the Plaintiffs from enforcing them.

## V.    The Federal Surface Mining Reclamation and Control Act Provides a Federal Venue of Adjudication of State Law Promulgated Pursuant to the Federal Act

This Court has twice decided that SMCRA provides a federal venue for adjudication of state laws promulgated pursuant to the federal act.  See Apogee, 531 F. Supp. 2d at 760–64; Ohio Valley Environmental Coalition, Inc. v. Hobet Min., LLC, 2010 WL 1286652 at *8–*9 (S.D. W.Va. March 29, 2010).  Both Hobet and Apogee should be precluded from reasserting this issue as described below.  Catenary, however, has not been party to any litigation where the issue has been decided, as such Defendants' argument requires a substantive response.

Two opinions of the Fourth Circuit Court of Appeals are implicated by Defendants' argument: Bragg v. West Virginia Coal Association, 248 F.3d 275 (4th Cir. 2001), and Molinary v. Powell Coal Co., 125 F.3d 231 (4th Cir. 1997).  Both Bragg and Molinary recognize that a state may be given "exclusive jurisdiction over the regulation of surface coal mining and reclamation operations."  30 U.S.C. § 1253(a); Bragg, 248 F.3d at 288-89; Molinary, 125 F.3d at

234. The Bragg decision heavily emphasized the exclusive nature of this state regulation and determined that federal regulations would effectively drop into the background, along with federal regulatory authority. Bragg, 248 F.3d at 289, 293-96. The Bragg case was brought against the administrator of a state agency, and the court held that the Eleventh Amendment to the United States Constitution precluded federal jurisdiction of a state law claim against a state administrator. Id. at 295–96.

Defendants once again attempt to expand the meaning of statements in Bragg describing exclusive state regulatory jurisdiction. Prior to Bragg, however, the Fourth Circuit recognized that "exclusive regulatory jurisdiction simply does not encompass exclusive adjudicatory jurisdiction." Molinary, 125 F.3d at 236. Because Bragg and Molinary were both panel decisions, Bragg did not overrule Molinary—however much Defendants might wish it had. See McMellon v. U.S., 387 F.3d 329, 332-33(4th Cir. 2004) (en banc). ("When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting en banc or the Supreme Court.")

Bragg and Molinary are, in fact, easily reconcilable. The Bragg panel itself recognized "[i]t is now settled that 30 U.S.C. § 1270 confers on federal district courts subject matter jurisdiction over at least some sorts of claims." Bragg, 248 F.3d at 299 (citing Molinary, 125 F.3d at 235-37). As this Court previously has explained,

> Section 1270 itself recognizes some limitation to the types of citizen suit claims that may be brought in federal court. It provides, "any person having an interest which is or may be adversely affected may commence a civil action ... (2) against the Secretary of the appropriate State regulatory authority to the extent permitted by the eleventh amendment to the Constitution." Bragg addressed this limitation, holding that a citizen suit cannot be brought against a state administrator in a primacy state because doing so is a violation of the 11th Amendment. What Bragg did not do, and could not do, was disturb the clear holding of Molinary that

25

> distinguished between regulatory and adjudicatory jurisdiction. The Bragg panel
> did not hold that federal courts had no jurisdiction in a primacy state, only that the
> jurisdiction conferred by § 1270 was necessarily limited by the 11th Amendment
> to the Constitution.

Apogee, 531 F. Supp. 2d at 763 (internal citations omitted).  The Court concluded that citizen-

suit plaintiffs "must be allowed to pursue their claim based on violations of state regulations

passed pursuant to SMCRA."  Id.

Defendants claim that they have brought a new argument, because they contend that the

claims brought by Plaintiffs under the West Virginia Surface Coal Mining and Reclamation Act

were not passed pursuant to SMCRA.  That argument, however, is not new and was rejected by

this Court just over a year ago.  Ohio Valley Environmental Coalition, Inc. v. Hobet Min., LLC,

2010 WL 286652 at *8–10 (S.D. W.Va. March 29, 2010).  In any case, the argument cannot

survive even superficial scrutiny.  It is federal SMCRA that authorizes state jurisdiction over

mining and reclamation, federal SMCRA which limits state jurisdiction, and federal SMCRA

which provides an oversight role for federal officials to ensure that the state program is run in

accordance with federal limits.  See 30 U.S.C. § 1253 (granting authority for state programs); 30

U.S.C. § 1254 (providing for a federal program if a state's program is not maintained in

accordance with the federal act); 30 U.S.C. § 1255 (providing that state law cannot be

inconsistent with the federal act); 30 U.S.C. § 1267 (providing for a federal inspections of a state

program); 30 U.S.C. § 1271 (providing for limited federal enforcement in state run program and

outlining procedures for federal takeover where state program is deficient).  Clearly state mining

and reclamation laws, even those in a state with exclusive regulatory jurisdiction are "passed

pursuant to SMCRA."  Indeed, the provisions that Plaintiffs seek to enforce here have federal

corollaries.  Compare 38 C.S.R. § 2-14.5. with 30 C.F.R. §§ 816.41(a) and 817.41(a) (both state

and federal rules require mining to be conducted in a manner to "prevent material damage to the

hydrologic balance outside the permit area); also compare 38 C.S.R. § 2-14.5.b. with 30 C.F.R. §§ 816.42 and 817.42 (both state and federal rules mandate "[d]ischarge from areas disturbed by . . . mining shall not violate effluent limitations or cause a violation of applicable water quality standards.").

**V.    Plaintiffs Have Standing to Pursue this Action**

Arguments against Plaintiffs' standing now border on the frivolous.  Defendants torture citations to opinions well off-point and attempt to undermine the long-held American legal standard of notice-pleading by stretching the holding of Bell Atlantic v. Twombly, 550 U.S. 544 (2007) to ridiculous lengths.  To satisfy standing requirements Plaintiffs must simply allege enough facts to make it plausible that one or more Plaintiff will have standing for each asserted claim:  Plaintiffs have done so.

Defendants' principal argument against Plaintiffs' standing is that "*each* 'plaintiff must demonstrate standing for *each* claim he seeks to press and for *each* form of relief that is sought." Defs.' Mem. of Law in Supp. of Mot. To Dismiss Pls.' First Am. Compl. at 27 (citing Davis v. Federal Election Com'n, 554 U.S. 724, 734 (2008) (other citations omitted).  Without noticing the placement of quotation marks in this citation, one could easily think that the Supreme Court had recently overruled its long-held view that the presence of one plaintiff with standing creates a case or controversy sufficient to establish jurisdiction for all plaintiffs under Article III. Clinton v. City of New York, 524 U.S. 417, 431 (1998) ("Because both the City of New York and the health care appellees have standing, we need not consider whether the appellee unions also have standing to sue."); Bowsher v. Synar, 478 U.S. 714, 721 (1986) ("It is clear that members of the Union, one of whom is an appellee here, will sustain injury . . . . This is sufficient to confer standing under . . . Article III.); Village of Arlington Heights v. Metropolitan Housing

Development Corp., 429 U.S. 252, 264 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing to assert these rights as his own. Because of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit.").  A look at the actual quote from Davis shows it stands for the much less remarkable proposition that "a plaintiff must demonstrate standing for each claim he seeks to press."  554 U.S. at 734.  The Davis opinion could not contain any holding relevant to multiple plaintiffs because the case involved only one.  Thus, it is only required that the complaint contain sufficient allegations to support standing for any one plaintiff on each claim.

Additionally, Plaintiffs are not required to set forth all of the facts upon which they will rely or even enough facts to show that they are likely to succeed on a claim; the only requirement is that sufficient facts be alleged so that the complaint states a claim that is "plausible on its face."  See Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556.  In deciding Twombly and Iqbal, the Court made clear that it was not deviating from the notice-pleading standard, set forth by Rule 8 of the Federal Rules of Civil Procedure.  Id. at (citing Twombly 550 U.S. at 555).  Rule 8 specifies that a complaint must contain "a short plain statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P. 8.  The kind of claims that do not meet this threshold, and were the subject of opinions in Twombly and Iqbal are bald conclusions of law, or factual pleadings that do nothing more than show a possibility of misconduct.  See Twombly 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality); Iqbal 129 S.Ct. at 1950

("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

The facts alleged by Plaintiffs are more than sufficient to show the plausibility of standing under Article III of the United States Constitution. To establish Article III standing, a plaintiff must establish (1) injury-in-fact, (2) traceability, and (3) redressability. Amer. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 517 (4th Cir. 2003). An organization has representational standing when (1) at least one of its members would have standing to sue in his or her own right, (2) the organization's purpose is germane to the interests that it seeks to protect, and (3) there is no need for the direct participation of the individual members in the action. Id.

To establish injury-in-fact in the environmental context, "a plaintiff need only show that he used the affected area, and that he is an individual for whom the aesthetic and recreational values of the area [are] lessened" by the defendant's activity. Piney Run Preservation Ass'n v. County Com'rs of Carroll County, MD, 268 F.3d 255, 263 (4th Cir. 2002) (internal quotation marks omitted; modification in original). Federal courts have noted that "Congress has identified NPDES violations, however trifling, as injurious to persons such as plaintiffs' members, who use bodies of water into which a permittee's effluents flow." Ohio Valley Envtl. Coalition, Inc. v. Hobet Mining, LLC, 702 F. Supp. 2d 644, 650 (S.D. W. Va. 2010) (quoting Student Public Interest Research Group of New Jersey, Inc. v. Georgia-Pacific Corp., 615 F. Supp. 1419, 1424 (D.N.J. 1985)). Such evidence is also sufficient to satisfy the traceability prong. Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp., 204 F.3d 149, 161 (4th Cir. 2000) ("a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern.").

Plaintiffs have made specific allegations that members use a stream affected by each and every one of Defendant's discharges that are the subject of this lawsuit. Am. Compl. at ¶ 31. They have done so with detail, describing a member's use and how that person's aesthetic, recreational, or environmental interest is harmed. Id. While Plaintiffs do not name their members nor indicate which (of perhaps multiple) Plaintiff organizations these members belong to, there is no requirement that they do so. If a single Plaintiff organization has standing for a claim then the case may proceed on that claim. Moreover, all that is required at this stage is to allege enough facts to make it "plausible" that Plaintiffs will have standing as to their claims. The Plaintiff organizations will not even be required to rely on these same members to maintain standing throughout the life of the lawsuit. See Friends of the Earth Inc. v. Gaston Copper Recycling Corp, 629 F.3d 387, 394–96 (4th Cir. 2011). To require more than the facts alleged would go well beyond the bounds of Rule 8 and the notice-pleading standard.

Injunctive relief and civil penalties can redress the injuries caused by violations of effluent limitations. Injunctive relief can prevent future violations and civil penalties can deter the defendant and other polluters from future violations. Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 174 (2000); Gaston Copper Recycling, 204 F.3d at 162-63. The court's remedy need only redress a plaintiff's injuries to some degree; it need not eliminate them. Massachusetts v. E.P.A., 549 U.S. 497, 525–26 (2007).

Plaintiffs have clearly alleged the fact that injunctions and civil penalties would redress their injuries by preventing and deterring future violations of Defendant's permit limits. Am. Compl. at ¶ 30. Combined with the descriptions of Plaintiffs' members' injuries—which involve fears and concerns about the amount and effects of pollution in waterways they use—this allegation is more than sufficient to satisfy the plausibility standards of Twombly and Iqbal.

30

**VI.**    **The WVDEP Is Not A Required Party**

Defendants argue that the Court should dismiss this action under FRCP 12(b)(7) because the State of West Virginia is somehow a necessary and indispensible party under FRCP 19. Defendants fail, however, to cite a single citizen suit where the court has held that a state or federal agency was a necessary party because disposition of the action in the agency's absence could impair or impede its ability to protect its interests in the environmental program at issue. That is because "it has long been settled that federal and state agencies that administer federal environmental programs are not necessary, let alone indispensable, parties to citizen suits to enforce permitting and other federal environmental requirements against alleged violators." Sierra Club v. Young Life Campaign, Inc., 176 F. Supp. 2d 1070, 1078 (D. Colo. 2001). As the moving parties, Defendants bear the burden to establish the existence of a necessary and indispensible party. E.g., Hughes v. Bank of Amer., Civ. No. 5:07-cv-00109, 2008 WL 3926552 at *2 (W.D. Va. Aug. 26, 2008); Young Life, 176 F. Supp. at 1077.

As this Court recognized in Hobet II the analysis of whether or not a party is "required" pursuant to Fed. R. Civ. P. 19(a) requires a two part test. Hobet II, 723 F. Supp. 2d at 914 (quoting Nat'l Union Fire Insur. Co. of Pittsburgh, PA v. Rite Aid of SC, Inc., 210 F.3d 246, 249 (4th Cir.2000) ("Federal Rule of Civil Procedure 19 sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action.")). The first step is to determine whether the party is "necessary" because of an interest related to the subject matter of the litigation. Id. (citing Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir.1999). Pursuant to Rule 19, a party is necessary if either: i) resolving the claims in the party's absence would impede their relevant interest; or ii) resolving the claim without joining the absent party

would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed R. Civ. P. 19(a)(1)(B).

Defendants claim that WVDEP has an interest in this case because it is the state regulatory authority charged with enforcement of the CWA and SMCRA. In Hobet II, the Court found this to be a legitimate interest sufficient to trigger an inquiry under rule 19. Hobet II, 723 F. Supp. 2d at 915. Pursuant to part one of the test, this Court found that the Congress crafted the CWA and SMCRA to protect the state's enforcement interest against violators of the act by creating a bar to citizen actions being diligently prosecuted by the state agency. Id. at 916. Courts have expanded this interest by interpreting it to create a standard for mootness—barring claims when there is no realistic prospect for continued violations. Id. Because it has mechanisms readily available to protect its interest in enforcement, a state agency cannot claim that its interest will be impeded by a citizen suit if it is not diligently prosecuting an action reasonably calculated to require compliance. Id. at 916 ("If WVDEP had diligently prosecuted Hobet's alleged violations. . . or if it had taken post-complaint action to eliminate the realistic prospect of non-compliance then the agency could and would have avoided this litigation. . . .).

The WVDEP has engaged in litigation against all three Defendants, but none of it has been diligently prosecuted nor calculated to achieve compliance. This Court has already found that litigation in Boone County against four of Hobet's permits is neither diligent nor reasonably calculated to require compliance and also leaves a realistic prospect for future violations. Id. at 911–16. For the reasons explained above, the same reasoning applies to the actions against Apogee in Logan County Circuit Court and Catenary in Boone County Circuit Court. As such the WVDEP cannot claim to have an interest which would be impeded by the present suit.[4]

_____

[4] The WVDEP has not brought an action against Hobet for violation of WV1017225 and therefore cannot claim to have asserted its interest much less that its interest would be impeded by a resolution of the matters before this

Neither will resolution of this action "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the [WVDEP's] interest." Fed R. Civ. P. 19(a)(1)(B)(ii).  To the extent Defendants would rely on the December 2009 consent decree between the WVDEP and Hobet, the Court has already found that it can tailor relief so as not to subject that company to inconsistent obligations  Hobet II, 723 F. Supp. 2d at 916–17.  There is no reason the Court cannot fashion such relief with regard to permits WV0099392, WV1016776, WV1020889, and WV1021028 as it did with permit WV1022911. With respect to the Apogee and Catenary permits, this citizen suit should be allowed to proceed precisely because the WVDEP action is not diligent and will not lead to compliance.  "There is no authority, in the CWA or elsewhere . . . suggesting that the allegedly delinquent governmental enforcement agency is an indispensable party." Riverkeeper, Inc. v. Mirant Lovett, LLC, 675 F. Supp. 2d 337 at 353 (S.D. N.Y. 2009); Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc., 299 F.3d 1007, 1014 (9th Cir.2002); Friends of the Earth v. Carey, 535 F.2d 165, 173 (2d Cir.1976) (EPA not a necessary party in Clean Air Act citizen suit).  If the Boone and Logan County Circuit Courts issue relief to WVDEP, this Court can tailor relief accordingly.

Even if joinder of the State were necessary, but not feasible, dismissal would not be appropriate because Defendant cannot establish that the State is indispensable under the factors of Rule 19(b).  As Defendant notes, "courts are loath to dismiss cases" under Rule 19(b), and will do so only where "equity and good conscience" require it.  Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999).

The first Rule 19(b) factor is the extent of prejudice to the state or the existing parties.

---

Court.   The federal courts have recognized that the rule "only applies when the absent party asserts the interest." Grand Acadian, Inc. v. Flour Corp., No. 2:07-cv-295, 2008 WL 408874 at *2 (W.D. La. Feb. 12, 2008).  It is not enough for a legally protected interest to exist; the absent party must actually assert the interest.  U.S. v. Bowen, 172 F.3d 682, 689 (9th Cir. 1999).

Courts have universally held that there is no cognizable prejudice caused by allowing a citizen suit to proceed in the absence of the State regulatory authority.  E.g., Oregon State Public Interest Research Group, Inc. v. Pacific Coast Seafoods Co.,341 F. Supp. 2d 1170, 1179 (D. Or. 2004); Sierra Club v. Young Life Campaign, Inc.,176 F. Supp. 2d 1070, 1080 (D.Colo. 2001).  Because there is no prejudice, the second Rule 19(b) factor—the extent to which prejudice could be lessened or avoided—does not favor dismissal.

"The third [Rule 19(b)] factor is whether a judgment without the absent person will be adequate."  Hobet II, 723 F. Supp. 2d at 918.  "This factor implicates the interest of the courts and the public in complete, consistent, and efficient settlement of controversies . . . [and] promote[s] the public interest in avoiding piecemeal and inefficient litigation." Id. (quoting National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 253 (4th Cir. 2000) ("National Union").  That factor too favors Plaintiffs. A consent decree has already been reached in the action against Hobet, and it is doubtful that Plaintiffs could acquire complete relief in that action.  In the cases against Catenary and Apogee, Plaintiffs would become party to actions that have not seen meaningful progress in months and in any case are not reasonably calculated to achieve compliance.  Efficiency clearly favors pursuit of the instant litigation.

The final factor under Rule 19(b) is whether dismissal for non-joinder of a necessary party would leave plaintiff with adequate relief.  National Union, 210 F.3d at 253; see also Fed. R. Civ. P. 19(b)(4).  Defendant argues that there is no reason Plaintiffs could not be afforded adequate relief in state court proceedings.  As the December 2009 Consent Decree between Hobet and the WVDEP and the pace of current actions in Boone and Logan County demonstrates, however, there is a very good reason that Plaintiffs could not receive adequate

relief in state court—the WVDEP does not merely lack diligence in prosecuting selenium violations against the coal industry, it is actively colludes with industry to prevent effective limits from taking place.  By slowing down enforcement actions, WVDEP takes acts to delay effective selenium limits—delay that is harmful to Plaintiffs and curtails their relief.  There is no reason to believe that this tactic would not continue with the presence of Plaintiffs in the state actions and prevent Plaintiffs from attaining meaningful relief.

### VII.    Collateral Estoppel Bars Certain Claims of Hobet and Apogee

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336 (2005) (citing Allen v. McCurry, 449 U.S. 90 (1980)).  A claim for collateral estoppel requires the moving party to establish five elements:  1) "that the issue sought to be litigated is identical to one previously litigated;" 2) "that the issue was actually determined in the prior proceeding;" 3) "that the issue's determination was a critical and necessary part of the decision in the prior proceeding;" 4) "that the prior order is final and valid;" and 5) "that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum."  Collins v. Pond Creek Mining Company, 468 F.3d 213, 217 (4th Cir. 2006).

Each of these five elements is met with regard to Defendants' claims that 1) Plaintiffs' action against Hobet is moot or barred by diligent prosecution by a state regulator; 2) that the Court does not have jurisdiction under the Surface Mining Reclamation and Control Act ("SMCRA") to hear claims brought against violators of the West Virginia Surface Coal Mining Reclamation Act (WV SCMRA), and 3) that WVDEP is a necessary and indispensible party.

This Court rejected Hobet's indispensible party action in Hobet II.  723 F. Supp. 2d at 913-19.  As described above, in Hobet II this Court also decided that the December 2009 modification of the Consent Decree in Boone County action 7-C-3 showed the state court action to be neither diligently prosecuted nor reasonably calculated to achieve compliance and that it left a realistic prospect for continuing violations.  723 F. Supp. 2d at 911-912.  Consequently the Court allowed a citizen suit action against Hobet Permit WV1022911 to proceed.  This Court has twice decided that federal SMCRA allows for federal adjudication of claims brought directly pursuant to state acts themselves passed under the authority of federal SMCRA.  See Apogee, 531 F. Supp. 2d at 760–64; Ohio Valley Environmental Coalition, Inc. v. Hobet Min., LLC, 2010 WL 1286652 at *8–*9 (S.D. W.Va. March 29, 2010) ("Hobet Mining").  Defendants Hobet and Apogee were both parties to the case resulting in the first decision by this Court on the issue of SMCRA jurisdiction; Hobet was party to the second.  In each of the three cases, Apogee, Hobet Mining, and Hobet II, the issue decided was necessary to the allow the case to proceed.  The time is well-passed the allowable appeal period for any of these cases. Finally, both companies have had a full and fair opportunity to litigate those issues with the same counsel they have currently, before the same Court. As a result both Hobet and Apogee should be precluded from re-litigating the issue of SMCRA jurisdiction and Hobet should be barred from arguing that Boone County Circuit Court Action 07-C-3 is being diligently prosecuted or that WVDEP is a necessary and indispensible party.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the motion to dismiss be denied.

Respectfully submitted,

**/s/ DEREK O. TEANEY**
DEREK O. TEANEY (W.Va. Bar No.10223)
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
AMY G. DAWSON (W. Va. Bar No. 11420)
Appalachian Center for the Economy
    and the Environment
P.O. Box 507
Lewisburg, WV 24901
(304) 793-9007
Counsel for Plaintiffs