IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

         Plaintiffs,

v.              CIVIL ACTION NO. 3:11-0115

PATRIOT COAL CORPORATION,
APOGEE COAL COMPANY, LLC,
CATENARY COAL COMPANY, LLC,
and HOBET MINING, LLC,

         Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs' Motion for Order and Notice (ECF No. 22) and Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 29). For reasons set forth below, Plaintiffs' Motion is **GRANTED** and Defendant's Motion is **DENIED**.

**I. BACKGROUND**

**A. Regulatory Framework**

For a detailed and thorough discussion of the regulatory framework and legal background applicable to this case, the Court refers to the Memorandum Opinion and Order in *Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co.*, — F.Supp.2d —, 2011 WL 3874576 (S.D.W. Va. 2011) (hereinafter "Maple"). Due to the similarity between the two cases, the Court will refer to *Maple* throughout this Opinion.

**B. Factual Background**

Plaintiffs[1] filed this case pursuant to the citizen suit provisions of the Clean Water Act[2] and the Surface Mine Coal Reclamation Act[3] ("SMCRA"). Plaintiffs seek enforcement of the effluent selenium limitations under West Virginia's National Pollutant Discharge Elimination System ("WV/NPDES") and WVSCMRA permits issued by the West Virginia Department of Environmental Protection ("WVDEP") to the defendants[4].

Ten WV/NPDES permits are the subject of this litigation, and each has a procedural history of its own. Because the case involves ten different permits, the Court will review them in turn.

**1. Apogee Permit WV0099520**

Apogee holds one permit, WV0099520, that is at issue in this litigation. This permit regulates Apogee Coal Company's East Ruffner Complex and effluent draining from that mine. *First Am. Compl.* ¶14, ECF No. 23. On April 5, 2007, the WVDEP issued an order extending the date by which Apogee would have to comply with its selenium limits to April 5, 2010. *Id*. at ¶ 59. The order required that construction of selenium treatment facilities would begin by October 5, 2008 and that compliance be achieved by April 5, 2010. *Id*. at ¶ 60. Ahead of the 2010 deadline, Apogee applied to the WVDEP for a subsequent extension until July 2012. On March 3, 2010, one month

---

[1] Plaintiffs are Ohio Valley Environmental Coalition, Inc.; West Virginia Highlands Conservancy, Inc.; and the Sierra Club.

[2] Under 33 U.S.C. § 1365(a), a citizen may file a suit "against any person . . . who is alleged to be in violation of an effluent standard or limitation under this chapter or an order issued by the Administrator or a State with respect to such a standard or limitation."

[3] The SMCRA contains a citizen suit provision that allows citizens to file a suit to enforce compliance with the SMCRA. 30 U.S.C. § 1270.

[4] Defendants Apogee Coal Company, LLC; Catenary Coal Company, LLC; and Hobet Mining, LLC are all subsidiaries of co-defendant Patriot Coal Corporation.

before Apogee's selenium limits became final, the WVDEP filed a public notice to modify Apogee's permit to extend compliance until July of 2012. *Id*. at ¶ 66. EPA objected to this modification on May 27, 2010 and precluded the WVDEP from administratively extending the deadlines. *Apogee Objection Letter*, ECF No. 35-1. Because a delayed decision on its application for an extension would potentially violate the anti-backsliding provisions of 33 U.S.C. § 1344(o), the West Virginia Environmental Quality Board ("EQB"), granted a stay of the selenium effluent limitation in this permit on April 2, 2010. *EQB Stay*, ECF No. 29-8. Apogee also sought and received a stay from the Kanawha County Circuit Court on April 20, 2010. *Kanawha Cnty. Stay*, ECF No. 29-10. On June 11, 2010, the WVDEP filed an action in Logan County asking the Court to set new compliance deadlines for selenium in Apogee's permits, the precise action to which EPA had objected. *Apogee Compl.*, ECF No. 35-7. The defendants answered on July 22, 2010. *Apogee Docket*, ECF No. 35-2. In September, Apogee filed a motion to join additional parties that it withdrew in October. *Id*. After filing the complaint and before the instant case was filed on February 18, 2011, more than eight months later, the WVDEP took no action in the case. *Id*.

### 2. Catenary Permits  WV0093751, WV0096920, WV0096962 & WV1014684

Permit WV0093751 regulates the discharge from Catenary's Samples mine complex through three outfalls into tributaries of Coal Fork and Cabin Creek. *First Am. Compl.* ¶ 76, ECF No. 23. Permit WV0096920 regulates discharge from Catenary's Samples complex through one outfall into Tom's Fork, a tributary of Cabin Creek. *Id*. at ¶ 86. Plaintiffs put the WVDEP and Catenary on notice of their intent to sue for violations of these two permits on February 23, 2010. *Id*. at ¶ 115. On April 23, 2010, the WVDEP filed an enforcement action in Boone County seeking, *inter alia*,

an injunction barring future violations and civil penalties of $25,000 for each day of violations of these same permits. *Catenary Compl.,* ECF No. 29-11.

Permit WV0096962 regulates discharges from Catenary's Samples complex into several tributaries of White Oak Creek. *First Am. Compl.* ¶ 97, ECF No. 23. On April 7, 2006, the WVDEP delayed compliance with selenium limitations in this permit until April 6, 2010 and, as in its other Orders, implemented interim deadlines for construction of selenium treatment facilities. *Id.* at ¶¶ 98-99. Permit WV1016484 regulates discharges into Seng Creek, Rockhouse Creek, and Tenmile Fork of Cabin Creek. *Id.* at ¶ 108. On April 5, 2007, the WVDEP took similar action delaying compliance with selenium limitations and implementing interim deadlines. *Id.* at ¶¶ 108-109.

On March 3, 2010, roughly one month ahead of the delayed compliance deadlines, the WVDEP issued a public notice of its intent to extend the selenium deadlines in both of these permits once again, this time until 2012. *Id.* at ¶ 117. Fearing that the WVDEP would be unable to extend the deadlines in time, Catenary (together with Apogee) sought and received stays from both the EQB and the Kanawha County Circuit Court on April 1 and 2, 2010, respectively. *Kanawha Cnty. Stay*, ECF No. 29-10; *EQB Stay*, ECF No. 29-8. As with the Apogee permit, EPA specifically objected to the WVDEP's proposed extension. *Catenary Objection Letters*, ECF Nos. 35-3, 35-4. Two weeks later, the WVDEP amended its complaint in the Catenary enforcement action in Boone County to add these two permits. *Catenary Am. Compl.*, ECF No. 29-12. In the amended complaint, the WVDEP drops its initial claim for civil penalties with regard to first two permits. With regard to the second two, the WVDEP requests that the Circuit Court "set a new schedule of compliance regarding Selenium and order Catenary to immediately comply with the same." *Id.* at ¶ 4. Catenary answered the Amended complaint on June 23, 2010. *Catenary Docket,* ECF No. 35-5. The only

-4-

activity that appears on the docket sheet in that case before the filing of the instant case on February 18, 2011 is the filing, briefing, and withdrawal of a motion by the Catenary to join the current plaintiffs in that action. *Id*. In short, 8 months passed without any activity on the part of the WVDEP. *Id*.

### 3. Hobet Permits

#### a. WV0099393, WV101676, WV1020889, WV1021028

These four permits all contain selenium limitations that were originally set to go into effect on April 5, 2010. They have all been the subject of extensive litigation in this Court and have been affected by parallel litigation in the Circuit Court of Boone County, West Virginia. The WVDEP initially filed suit against Hobet for violations of the selenium limits in these permits in January 2007, in direct response to a notice of intent to sue under the Clean Water Act's citizen suit provision. *Ohio Valley Envtl. Coal., Inc. v. Hobet Mining, LLC*, No. 3:08-cv-088, 2008 WL 5377799, at *3 (S.D.W. Va. December 18, 2008) (Hereinafter "Hobet I"). In September of 2008, Hobet and the WVDEP entered into a Consent Decree in the Boone County Action which provided for an injunction and compliance schedule. This Court subsequently found that, although the WVDEP action was not being diligently prosecuted at the time Plaintiffs filed their citizen suit, the entry of the Consent Decree mooted the plaintiffs' claims for declaratory and injunctive relief. *Id*. at *4-5. In October 2009, the WVDEP and Hobet agreed to modify the Consent Decree that initially mooted the plaintiffs' claims in *Hobet I*. In *Ohio Valley Envtl. Coal., Inc. v. Hobet Mining, LLC*, 723 F.Supp.2d 886 (S.D.W. Va. 2010) (hereinafter "Hobet II"), this Court reviewed the modified Consent Decree with regard to a different permit and found that the amended Consent Decree was not a diligent prosecution**.**

### b. WV1017225

Hobet permit WV1017225 was originally included in Civil Action No. 07-413, *Ohio Valley Envtl. Coalition, Inc. v. Apogee Coal Co., LLC*. The outlets on permit WV1017225 subject to selenium limitations were administratively deleted pursuant to a WVDEP permit modification, and the parties jointly agreed to delete the counts against Hobet. *See Ohio Valley Envtl. Coal., Inc. v. Apogee Coal Co., LLC*, 531 F. Supp.2d 747, 750 (S.D.W. Va. 2008). The permit, however, was reissued by the WVDEP in 2009 with selenium limits that became effective on June 3, 2010. *First Am. Compl.* ¶ 128, ECF No. 23.

## II. DISCUSSION

### A. Legal Standards for Motions to Dismiss

#### 1. FRCP 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir.1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id.* If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*.

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."[5] *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citations omitted).[6]

### 2. FRCP 12(b)(6)

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the

---

[5]*Compare Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (holding that if a motion implicates the merits of a cause of action, the district court should find jurisdiction exists and treat the objection as a direct attack on the merits of the plaintiff's case). *See also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) (recognizing that "in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute[,] [i]t is the better view that . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits." (citations omitted)).

[6]*See also Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (discussing difference between facial and factual attacks under Rule 12(b)(1); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (same).

"grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 129 S. Ct. at 1949 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 1950. If the court finds

from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)).  The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## B. Diligent Prosecution

A citizen is precluded from bringing suit under the Clean Water Act or the SMCRA "if the [federal government] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order [that the citizen alleges to have been violated]."  33 U.S.C. § 1365(b)(1)(B); 30 U.S.C. § 1270(b)(1)(B).  Courts engage in a two-part inquiry to determine whether a defendant may invoke the diligent prosecution bar at 33 U.S.C. § 1365(b)(1)(B) to preclude a citizen suit from enforcing an effluent standard or limitation imposed pursuant to the Act.  First, a court must determine whether a prosecution by the state (or the EPA Administrator) to enforce the same "standard, order, or limitation" was pending on the date that the citizens' suit commenced.  Second, if the answer to the previous question is affirmative, a court must also determine whether the prior pending action was being "diligently prosecuted" by the state at the time that the citizens' suit was filed.  *See Conn. Fund for Env't v. Contract Plating Co.*, 631 F. Supp. 1291, 1293 (D. Conn 1986); 33 U.S.C. § 1365(b)(1)(B).

The burden of proving non-diligence is heavy. "Citizen-plaintiffs must meet a high standard to demonstrate that [a government agency] has failed to prosecute a violation diligently." *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008) ("*Piney Run II*") (quoting *Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007)). In meeting the standard, a citizen-plaintiff must do more than show an agency's strategy is less aggressive than that preferred by plaintiff. *Id.* Consequently, a governmental enforcement action will ordinarily be considered diligent so long as it "is capable of requiring compliance with the Act and is in good faith calculated to do so." *See, e.g.*, *id.* (quoting *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 760 (7th Cir. 2004)). Yet, if a federal court concludes that the agency action does not meet this standard, "it should not hesitate to allow a citizen suit to proceed." *Ohio Valley Envt'l Coal., Inc. v. Hobet Mining, LLC*, 2008 WL 5377799, at *5 (S.D. W. Va. 2008) ("*Hobet I*") (citing *Friends of Milwaukee's Rivers*, 382 F.3d 743); *see also Friends of the Earth v. Laidlaw Envt'l Servs. (TOC), Inc.* ("*Friends of the Earth*"), 890 F. Supp. 470 (D.S.C. 1995)).

Although a federal court must be deferential to a state court proceeding, the deference owed is not unlimited. "[A] diligent prosecution analysis requires more than mere acceptance at face value of the potentially self-serving statements of a state agency and the violator." *Friends of Milwaukee's Rivers*, 382 F.3d at 760. It requires "that the State *try*, diligently[,]" to achieve compliance. *Id.* at 759 (emphasis supplied). In reviewing diligence, a federal court may rely on evidence from the state court docket to determine "the prospects that the state suit would proceed expeditiously to a final resolution." *Hobet I*, 2008 WL 5377799, at *5 (citing *Conn. Fund,* 631 F. Supp. at 1293). The court must also consider the context surrounding the state prosecution. *Id.* (citing *Student Pub. Interest Research Group of N.J., Inc. v. Fitzsche, Dodge, & Olcott, Inc.*

("*Fitzsche*"), 579 F. Supp. 1528, 1535 (D. N.J. 1984) ("An evaluation of 'diligence' measures comprehensively the process and effects of agency prosecution.")).

**1. The Boone and Logan County Actions Against Catenary and Apogee are Not Diligent Prosecutions.**

Here, there is no dispute that the WVDEP enforcement actions against both Catenary and Apogee were ongoing at the time Plaintiffs filed the present case. However, Plaintiffs contend that the WVDEP Compliance Orders requiring installation of selenium treatment facilities are not part of the WVDEP Boone and Logan County Enforcement Actions. *Pls.' Resp. to Defs.' Mot. to Dismiss* 16, ECF No. 35. The WVDEP complaints refer only to the WV/NPDES permits and make no mention of the Compliance Orders. Therefore, if the Orders are not incorporated in to the permits, the Boone and Logan County actions do not preclude Plaintiffs' claims regarding construction deadlines for selenium treatment. For reasons explained in detail in *Maple*, 2011 WL 3874576, at *12-13, the Court disagrees with Plaintiffs and finds that the Compliance Orders are incorporated into the underlying permits and are the subject of the Boone and Logan County enforcement actions.

The Court further finds the status of the Boone and Logan County enforcement actions to be substantially identical to those recently adjudicated in *Maple*, — F. Supp.2d —, 2011 WL 3874576, at *13 (S.D.W. Va. September 2, 2011). Both the Boone and Logan County actions were filed on the same day less than one month after the EPA objected to the WVDEP's proposed permit modifications. *See Apogee Objection Letter*, ECF No. 35-1; *Catenary Objection Letters,* ECF Nos. 35-3, 35-4. As in *Maple*, the WVDEP took no action for over eight months before Plaintiffs initiated this citizen suit. As in *Maple*, neither enforcement action seeks "to enforce the permit as is,

-11-

inclusive of the selenium limits, nor to enforce the draft permit modification. . . ." *Id*. at *13. As in *Maple*, neither enforcement action appears to seek any enforcement whatsoever with regard to selenium. Instead, as in *Maple*, both actions seek vague relief from the Logan and Boone County Circuit Courts that specifically excludes selenium from the request for immediate relief on the grounds that the selenium limitations are subject to the stay orders of the EQB and the Kanawha County Circuit Court.[7] By acquiescing in the Stay Orders, excluding selenium from their claims for civil penalties on the basis of those Orders, and seeking in State Courts the delays already rejected by the Environmental Protection Agency, the WVDEP is not diligently prosecuting Defendants' selenium violations. Based on their context, timing, and the relief sought, Court **FINDS** that these actions, like the one at issue in *Maple*, are not diligent prosecutions.

### 2. The Modified Boone County Consent Decree is not a Diligent Prosecution

The Hobet permits have a lengthy history with which this Court is well acquainted. In November of 2006, Plaintiffs filed notices of intent to sue for violations of the selenium limitations of WV0099392 and WV1016776. *Hobet I*, 2008 WL 5377799, at *3. The WVDEP filed an enforcement action one day before the expiration of the mandatory sixty day notice period. *Id*. In March of 2007, Plaintiffs filed notices of their intent to sue for violations of WV1020889 and WV1021028. *Id*. The WVDEP amended its complaint in the enforcement action to include these permits, precluding plaintiffs' citizen suits from proceeding. *Id*. That case sat inactive in Boone County and Plaintiffs re-filed in this Court in February of 2008, alleging that the Boone County

---

[7]As noted in *Maple*, the WVDEP's acquiescence in the Circuit Court and EQB stay orders severely undermines any argument that these orders barred the agency from pursuing selenium violations in the Circuit Court enforcement actions. *EQB Stay,* ECF No.29-8; *Kanawha Cnty. Stays,* ECF Nos. 29-9, 29-10.

action was not being diligently prosecuted. In *Hobet I*, this Court agreed, but found that Plaintiffs' claims were mooted by a Consent Decree entered in Boone County Circuit Court. *Id*. That Consent Decree was later modified in December 2009, and the modified Consent Decree was raised as a bar to the citizen suit filed in *Hobet II*, 723 F. Supp.2d at 907-08. In that case, this Court held that the modified of the Consent Decree was not a diligent prosecution barring Plaintiffs' citizen suit. *Id.* at 910.

As in *Hobet I* and *Hobet II*, the Court looks to the entire context surrounding the WVDEP's prosecution of these permits. The four permits at issue in the present case are subject to the very same modified Consent Decree which the Court found not to bar Plaintiffs' citizen suit in *Hobet II*. The only difference between the two cases is the history of these four permits before the modification. That history does not mandate a different outcome in this case. Defendants' argument that a finding of non-diligence would somehow reverse the Court's *Hobet I* decision is a mischaracterization. As in *Hobet II*, the modified Consent Decree presents a very different context than that presented in *Hobet I*.

The conclusions of the Court in *Hobet I* and *Hobet II* gain more purchase in light of the WVDEP's actions since then. The regulatory climate for violations of selenium limitations is defined by continued extensions and enforcement actions that, rather than enforcing selenium limits, seek to accomplish in state courts the delays already rejected by the Environmental Protection Agency. The Court reiterates its holding in *Hobet II*, 723 F. Supp.2d at 913 that the modified Consent Decree "is not reasonably calculated to seek compliance" and **FINDS** that the modified Consent Decree does not bar Plaintiffs' claims with regard to the Hobet permits.

**C. Claim Preclusion Does Not Bar Plaintiffs' Claims Against Hobet**

Defendants' contend that, as a result of the Consent Decree entered in *Hobet I*, res judicata and claim preclusion require dismissal of the plaintiffs' claims regarding the four permits discussed above. To establish *res judicata* or claim preclusion, a party must establish:

> (1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action. . . . As long as the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment, the first suit will have preclusive effect.

*Ohio Valley Envt'l Coal., Inc. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009)(internal citations omitted). Additionally, "claims that were not raised in the original suit may be precluded if they arose from the same transaction or occurrence as those raised in the first suit and were available to the plaintiff at the time of the first suit." *Id*. at 211.

With regard to the four permits at issue in *Hobet I*, the Consent Decree in that case specifically resolved Plaintiffs' claims regarding for past and future violations up to and including April 4, 2010. The current action involves violations beginning on April 5, 2010. As such, these claims were not available to Plaintiffs at the time of *Hobet I* nor are they barred by the contractual language of the Consent Decree. WV1017225 was initially included in *Ohio Valley Envtl. Coal., Inc. v. Apogee Coal Co.*, 531 F. Supp.2d 747 (S.D.W. Va. 2008). Plaintiffs' original claims for violations of that permit were dismissed by stipulation of the parties after discovery revealed that the outfalls on that permit were administratively deleted, thereby depriving the Court of subject matter jurisdiction. That permit was reissued in 2009, and the current complaint alleges violations that have occurred since June 3, 2010, the effective date of the selenium limitations in the reissued permit. *First Am. Compl.* ¶ 127, ECF No. 23. The stipulated order of dismissal was not a judgment

on the merits and Plaintiffs' current claims are for a separate and distinct set of violations. For the reasons explained above, the Court **FINDS** that Plaintiffs' claims are not barred.

### D. Effect of EQB Stay on Catenary and Apogee's Selenium Limits

The arguments advanced by the parties on this issue are indistinguishable from those presented in *Ohio Valley Envtl. Coal., Inc. v. Coal-Mac, Inc.*, 775 F. Supp.2d. 900 (S.D.W. Va. 2011). Defendants urge the Court to abandon its prior decision in *Coal-Mac* because that decision involved a "difficult question." *Id*. at 920. The admitted difficulty of the question raised by both cases is not sufficient to distinguish *Coal-Mac* from the case at bar. The Court has considered the issues and arguments raised by the briefings, and ultimately arrived at the same conclusion as *Coal-Mac*.[8] For the reasons explained at length in *Coal-Mac*, 775 F. Supp.2d 900, 922-26, the Court **FINDS** that the EQB "exceeded its statutory authority when it issued a stay of both the orders before it on appeal and the underlying permits, which were not the subject of an appeal." *Id*. at 926. As in *Coal-Mac*, "the underlying permits and the effective dates of the selenium effluent limitations are currently operative." *Id*.

### E. SMCRA & Subject Matter Jurisdiction

Plaintiffs' First Amended Complaint alleges that Defendants selenium discharges violate the performance standards under the Surface Mining Control and Reclamation Act of 1970 ("SMCRA")

---

[8]In their reply, Defendants raise the additional argument that, to the extent that Plaintiffs believe that the WVDEP acted unlawfully, state law provides for judicial review of orders of the WVDEP and the EQB in the state court. At issue here is not whether Plaintiffs could have pursued a different course of action but rather the effect of the EQB stay on the selenium limits contained in Defendants' permits.

and the terms and conditions of their surface mining permits.[9] Defendants move to dismiss Plaintiffs' SMCRA claims, arguing that Plaintiffs fail to state a claim upon which relief can be granted because the state regulations Plaintiffs claim Defendants are violating - specifically West Virginia Code of State Regulations §§ 38-2-14 and 33.3.c - were not "issued pursuant to [federal SMCRA]" and the citizen suit provision of SMCRA only authorizes suits against a "person who is alleged to be in violation of [a] rule, regulation, order of permit, issued pursuant to this subchapter." 30 U.S.C. § 1270(a)(1). Accordingly, Defendants assert that the Court lacks subject matter jurisdiction over Plaintiffs' SMCRA claims. The Court has already decided this issue in two prior cases involving Hobet and Apogee. *Ohio Valley Envtl. Coal. Inc. v. Apogee Coal Co., LLC*, 531 F. Supp.2d 747, 760-64 (S.D.W. Va. 2010), *Ohio Valley Envtl. Coal. Inc. v. Hobet Mining, LLC*, 2010 WL 1286652 (S.D.W. Va. March 29, 2010). Catenary was not a party to any of the prior proceedings and so must be allowed to raise this issue in the current case.

This argument implicates two Fourth Circuit cases: *Bragg v. West Virginia Coal Association*, 248 F.3d 275 (4th Cir. 2001) and *Molinary v. Powell Coal Co.*, 125 F.3d 231 (4th Cir. 1997). In both of those cases, this Court denied identical motions after reviewing both *Molinary* and *Bragg*. As in *Hobet,* Catenary recognizes that the legal issues presented are similar but argues that those cases are not controlling and that jurisdiction is inappropriate because (1) the regulations at issue were not "issued pursuant to this subchapter [of SMCRA]", and (2) [*Apogee* and *Hobet*] "did not address the question of the legal source of the regulations that the Plaintiffs seek to enforce in the

---

[9]Plaintiffs' SMCRA claims are contained in Counts Three, Six, Nine, Twelve, Fifteen, Seventeen, Nineteen, Twenty-One, Twenty-Three, and Twenty-Five of the First Amended Complaint.

present case." *Def.'s Mem. in Supp. of Mot. to Dismiss* 24-25, ECF No. 31. Catenary, like Hobet and Apogee before it, argues that *Molinary* is limited to (I) suits for damages, and (ii) its facts.

Plaintiffs disagree. They contend that the issue raised in this case is indistinguishable from those already decided in *Apogee* and *Hobet*. The Court agrees. In both of those cases, the Court addressed the issue and resolved it in Plaintiffs' favor. The Court initially reconciled *Molinary* and *Bragg* as follows:

> Despite *Bragg's* strong emphasis on the exclusivity of state regulation, the opinion recognized that 30 U.S.C. § 1270 granted federal jurisdiction over some claims. *Bragg,* 248 F.3d at 299 (citing *Molinary* 125 F.3d at 235-37). The type of claim *Bragg* held was not subject to federal jurisdiction was a claim against the administrator of a state program that had been granted primacy pursuant to SMCRA. *Id.* at 298. The claim brought by Plaintiffs is not of this type.

*Apogee,* 531 F.Supp.2d at 761. This Court then reiterated the holding in *Molinary* that "[e]xclusive regulatory jurisdiction simply does not encompass exclusive adjudicatory jurisdiction. Common sense dictates that a government's acts in regulating a subject are distinctly different than its acts in adjudicating a party's rights related to the subject." *Id.* at 762 (citing *Molinary,* 124 F.3d at 236).

In both *Apogee* and *Hobet*, this Court concluded that primacy with regard to surface mining regulation does not eliminate federal jurisdiction over citizen suits, even though "once a state [is] granted primacy, federal regulatory authority and federal regulations [drop] into the background." *See id.* Consequently, this Court holds that, as was the case in *Apogee* and *Hobet:*

> The case before this Court is an enforcement action by a citizen-plaintiff against an operator alleged to be in violation of state regulations and federal regulations passed pursuant to SMCRA. The 11th Amendment is not implicated as neither the state itself nor a state administrator has been named as a party. The suit is brought under one of the provisions of the federal SMCRA recognized by both *Bragg* and

-17-

>   *Molinary* as directly operable, even in a primary state.... [Thus,] Plaintiffs must be allowed to pursue their claim ... [and] Defendants' motion to dismiss on grounds that there is no cause of action under federal SMCRA must be **DENIED.**

*Id.* at 764.

### F. Plaintiffs Have Adequately Pleaded Standing

Plaintiffs, three environmental groups, assert twenty-five causes of action against four related defendants based on violations of ten different permits. Plaintiffs' First Amended Complaint contains a number of paragraphs and subparagraphs specifically alleging their organizational interests and injury to members. *First Am. Compl.* ¶¶ 27-31, ECF No. 23. The allegations in the Amended Complaint do not identify the group membership or names of the members on whom Plaintiffs base their standing. *Id.* The First Amended Complaint does allege, among other things, that members live or grew up near the water bodies into which Defendants discharge pollutants and that they no longer use them or are impacted by their fears about the effects of pollution.

Defendants do not challenge these allegations. Instead, they argue that allowing "multiple plaintiffs [to] assert multiple claims against multiple defendants would subvert restrictions placed upon joinder and consolidation by the Federal Rules of Civil Procedure, allowing plaintiffs generally to group together any number of unrelated defendants for any number of unrelated claims in a single action." *Def.'s Reply to Pl.'s Mem. in Opp. to Mot. to Dismiss* 17, ECF No. 38. Defendants apparently conflate the standard for permissive joinder, embodied in Rule 20 of the Federal Rules of Civil Procedure, with the standing doctrine derived from the "case or controversy" requirement of Article III of the United States Constitution. Nonetheless, the Court has reviewed the Plaintiffs' allegations in the First Amended Complaint.

Based on that review, the Court **FINDS** that Plaintiffs have made allegations sufficient to state a claim of standing that is plausible on its face. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2009); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

**G. Failure to Join a Necessary and Indispensable Party**

For a through discussion of the application of Federal Rule of Civil Procedure 19 to this case, the Court incorporates by reference its extended discussion of this issue in *Maple,* — F. Supp.2d —, 2011 WL 3874576, at *16-19 (S.D.W. Va. September 2, 2011). Defendants' argument that they may be subject to inconsistent obligations is speculative at best. As was noted in *Maple*, this Court has considerable discretion in shaping relief to avoid inconsistent obligations. Additionally, resolution of the WVDEP's enforcement proceedings might moot this action. For these reasons, and those stated more fully in *Maple,* the Court **FINDS** that the WVDEP is neither required nor indispensable to the instant action.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Order and Notice (ECF No. 22) is **GRANTED**; Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 29) is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 7, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE