# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

                    Plaintiffs,

v.                                     CIVIL ACTION NO. 3:11-0115

PATRIOT COAL CORPORATION,
APOGEE COAL COMPANY, LLC,
CATENARY COAL COMPANY, LLC,
and HOBET MINING, LLC,

                      Defendants.

## MEMORANDUM OPINION AND ORDER

On January 18, 2012, the parties filed a Notice of Lodging of Proposed Consent Decree. On March 5, 2012, the United States filed a Notice indicating that it has no objection to the entry of the proposed decree. The 45 day comment period required by 33 U.S.C. § 1365(c)(3) has now expired, and the parties have requested that the Court enter the proposed decree if it is found to be fair, reasonable, and in the public interest. Notice of Lodging of Proposed Consent Decree, ECF No. 45.

### I. Introduction

This case involves ten permits issued to three Patriot Coal Corporation ("Patriot") subsidiaries. Specifically, Apogee Coal Company, LLC ("Apogee") holds WV0099520, a permit issued by the West Virginia Department of Environmental Protection ("WVDEP") to regulate Apogee's Ruffner mine in Logan County. Defs' Mem. In Supp. Of Mot. to Dismiss 7, ECF No. 31. Catenary Coal Company ("Catenary") holds four permits, WV0093751, WV0096920, WV0096962,

and WV1014684, which regulate discharges from its surface mines in Boone and Kanawha Counties. *Id*. Hobet Mining, LLC ("Hobet") holds five permits,WV1017225, WV0099392, WV1016776, WV1020889, and WV1021028, which together regulate discharges from Hobet's mine complex in Boone and Lincoln Counties. *Id.* at 5.

Plaintiffs are three environmental organizations: Ohio Valley Environmental Coalition, Inc. ("OVEC"), West Virginia Highlands Conservancy, and the Sierra Club. Plaintiff OVEC is a nonprofit organization incorporated in Ohio with its principal place of business in Huntington, West Virgnia. It has approximately 1,500 members and is dedicated to the improvement and preservation of the environment. First Am. Compl. ¶ 27, ECF No. 23. The West Virginia Highlands Conservancy is a West Virginia nonprofit organization with approximately 2,000 members that works for the conservation and wise management of West Virginia's natural resources. *Id*. at ¶ 28. The Sierra Club is a nonprofit organization incorporated in California with more than 600,000 members nationwide and approximately 1,900 members residing in West Virginia. *Id*. at ¶ 29. Among the Sierra Club's diverse interests are the exploration, enjoyment, and protection of surface waters in West Virginia. *Id*.

On February 18, 2011, Plaintiffs instituted this action for declaratory and injunctive relief based on the citizen suit provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, and the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270. The 104-page First Amended Complaint sets forth a total of twenty-five distinct claims for relief against the three Patriot subsidiaries. *Id*. Plaintiffs assert that Defendants, by discharging selenium in excess of the limitations contained in their permits, violated the CWA and SMCRA with regard to all ten permits. Specifically, their Complaint alleges that Apogee violated the selenium limitation contained in

permit WV0099520 on 373 occasions; that Catenary violated the selenium limitation contained in permit WV0093751 on 931 occasions, in permit WV0096920 on 361 occasions, in permit WV0096962 on 1437 occasions, and in permit WV1014684 on 1149 occasions; that Hobet violated the selenium limitation contained in permit WV1017225 on 224 occasions, in permit WV0099392 on 2805 occasions, in permit WV1016776 on 1266 occasions, in permit WV1020889 on 505 occasions, and in permit WV1021028 on 284 occasions. In total, the First Amended Complaint details 9,335 violations by these three Patriot subsidiaries.

On January 18, 2012, the parties lodged a proposed consent decree with this Court. The citizen suit provision of the Clean Water Act provides that:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

33 U.S.C. § 1365(c)(3). Consistent with this provision, the parties served the United States with a copy of the proposed consent decree, which was received by a citizen suit coordinator for the Department of Justice on that same day. Notice of No Obj., ECF No. 50. On March 5, 2012, the United States notified the Court that it has reviewed and has no objection to the entry of the proposed decree. *Id*.

## II. Legal Standards

The Fourth Circuit Court of Appeals has noted that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 152 (4th Cir. 2002) (quoting *Smyth v. Rivero*, 282 F.3d 268, 279–80 (4th Cir. 2002)); *see also Local No. 93,*

*Int'l Assn. of Firefighters, AFL-CIO v. Cleveland*, 478 U.S. 501, 519 (1986); *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n. 10 (1975) (citation omitted); *Alexander v. Britt*, 89 F.3d 194, 199 (4th Cir. 1996).

It has expanded on this principle in *Smyth*, observing that a district court is to scrutinize the proposed decree and make findings prior to entry:

> Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court. As Judge Rubin noted in *United States v. Miami,*
>
>> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanct ion on and power behind a decree that violates [sic] Constitution, statute, or jurisprudence.
>
> 664 F.2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful.

*Smyth*, 282 F.3d at 280. The Fourth Circuit has further explained:

> In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged. *See Durrett v. Housing Authority of City of Providence,* 896 F.2d 600, 604 (1st Cir.1990). Nevertheless, a district court should not blindly accept the terms of a proposed settlement. *See Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). Rather, before entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." *United States v. Colorado,* 937 F.2d 505, 509 (10th Cir.1991). In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case. *See Flinn,* 528 F.2d at 1172–73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision." *Id.* (internal quotation marks omitted). In particular, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." *Carson v. American Brands, Inc.,* 606 F.2d 420, 430 (4th Cir.1979)

(en banc) (Winter, Circuit Judge, dissenting), *adopted by Carson v. American Brands, Inc.,* 654 F.2d 300, 301 (4th Cir.1981) (en banc)(per curiam).

*United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).

### III. Discussion

The Court accepts the proposition that settlements are generally encouraged. A trial in this case would have consumed significant time and expense for the parties as well as a significant amount of judicial resources. Next, the Court turns to the fairness, adequacy, and reasonableness of the proposed decree. Compliance with the proposed consent decree will require the Defendants to pay $750,000.00 to the United States Treasury as a civil penalty for violations of the selenium limitations in the CWA and SMCRA permits that are at issue in this case. Proposed Consent Decree, ¶ 12, ECF No. 45-1. In addition to the civil penalty, entry of the proposed consent decree will require the defendants to pay $6,750,000.00 to the West Virginia Land Trust in order to fund a Supplemental Environmental Project ("SEP"). *Id*. at ¶ 16. Appendix B to the proposed consent decree, which describes the SEP in great detail, provides that the funds will be provided to the West Virginia Land Trust and will be used to restore riparian areas and preserve land within the Kanawha and Guyandotte watersheds, areas which are directly affected by the mining permits that are at issue in this litigation. *Id*. at App. B.

Next, the proposed consent decree creates a systematic process of technology selection and implementation which is intended to bring all of the covered outfalls into compliance on an aggressive timetable. *Id*. at Part VII. In addition, Patriot agrees to forego the construction of four valley fills that had been permitted for construction at its Jupiter Callisto Surface Mine. *Id*.

at Part VIII.  Part IX of the proposed decree provides for stipulated penalties for noncompliance during the implementation of the consent decree, the amounts of which are significant and accelerated for continued noncompliance.  In Part XII, the defendants agree to pay the plaintiffs' costs and attorneys fees leading up to the consent decree, which are agreed to be $58,807.70, and for payment of the plaintiffs' costs and attorneys fees during the implementation of the decree.

      The remainder of the decree provides, inter alia, for a process of appointing a special master to oversee the compliance requirements and for the Court to retain limited jurisdiction during the implementation of the decree.  In short, the proposed decree requires the defendants to come into compliance with their obligations under federal law, requires the payment of $750,000.00 to the federal government, and requires the payment of $6,750,000.00 for the SEP which will preserve and protect the watersheds directly affected by Defendants' mining operations.

      While the defendants do not admit the alleged violations, this decree represents a substantial victory for the plaintiffs.  Early on, Plaintiffs faced a dispositive motion involving complicated and potentially fatal issues such as standing, res judicata, and the diligence of parallel state enforcement actions.  While the Court ultimately resolved Defendants' motion in favor of the plaintiffs, the skill and experience of the attorneys on both sides of this matter was a great aid to the Court in deciding these difficult issues.

      Finally, the Court notes that the agreed civil penalty and SEP constitute a meaningful compromise.  In their complaint, Plaintiffs alleged 9,335 separate violations of Defendants' permits and sought to recover the statutory maximum of $37,500 per violation.  The combined

value of the civil penalty and the SEP, $7,500,000, amounts to $803 per violation, a significant reduction of the amount originally sought.

### IV. Conclusion

Based upon the foregoing, the Court finds that the proposed consent decree is fair, adequate, and reasonable. The court further finds that the proposed agreement is not the product of collusion and is in the public interest. In light of this conclusion, and there being no objection to the proposed decree, the Court **ORDERS** that the proposed consent decree be entered with the Court's approval on this date. With the entry of this decree, the Court **ORDERS** that this action be, and hereby is, dismissed and stricken from the active docket, with the Court retaining jurisdiction over this case as set forth in Part XVI of the Consent Decree. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: March 15, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE