IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC.; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.;
and SIERRA CLUB,**

    Plaintiffs,

**and**

**APPALACHIAN HEADWATERS, INC.,**

    Nonparty in whose favor an order has been entered,

v.

**ERP ENVIRONMENTAL FUND, INC.,**

    Defendant,

**and**

**VCLF LAND TRUST, INC.**

    Nonparty against whom an order may be enforced.

**MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE THE SECOND
MODIFIED CONSENT DECREE AND SELENIUM SETTLEMENT AGREEMENT
AND AWARD ATTORNEY'S FEES**

    Defendant ERP Environmental Fund, Inc., and VCLF Land Trust, Inc. ("VCLF"), are in violation of certain provisions of the Second Modified Consent Decree, and its incorporated Selenium Settlement Agreement, entered by the Court in this action on October 7, 2016. CM/ECF #105. Plaintiffs, along with Appalachian Headwaters, Inc. ("Headwaters")—a nonparty in whose favor an order has been entered—have filed a motion to enforce the Second Modified Consent Decree and the Selenium Settlement Agreement and for an award of attorney's fees. Plaintiffs and Headwaters respectfully request that the Court exercise its inherent authority to summarily enforce consent decrees and settlement agreements and order Defendant and VCLF to comply with the

applicable terms and conditions of the Second Modified Consent Decree and the Selenium Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

The claims at issue in this Clean Water Act citizen enforcement action were resolved by a Consent Decree entered by the Court on March 15, 2012. CM/ECF #51. Following the first bankruptcy of the original defendants in this matter, the Parties negotiated an extension to certain compliance deadlines under the March 15, 2012 Consent Decree, and those extensions were embodied in the Modified Consent Decree entered by this Court on January 9, 2013. CM/ECF #87. On May 12, 2015, the original defendants filed yet another bankruptcy petition. *In re Patriot Coal Corp., et al.*, No. 15-32450 (KLP) (E.D. Va. 2015). As a result of the 2015 bankruptcy proceedings, Defendant ERP Environmental Fund, Inc. assumed all of the original defendants' obligations under the Modified Consent Decree. CM/ECF #105 at ¶¶10–15. Plaintiffs and Defendant ERP Environmental Fund, Inc., negotiated an agreement under which Defendant ERP Environmental Fund, Inc., would receive a 42-month extension of certain compliance deadlines in the Modified Consent Decree. *Id.*, ¶16–17. In consideration for the extended deadlines, Defendant ERP Environmental Fund, Inc., and its parent company VCLF, agreed, among other things, to make a $6,000,000 donation to Headwaters. *Id.*, ¶18.

On October 7, 2016, the Court entered the Second Modified Consent Decree, which memorialized the 42-month extension and the obligations of ERP Environmental Fund, Inc. and VCLF under the Selenium Settlement Agreement. *See generally, id.* The Selenium Settlement Agreement was attached as Appendix F to the Second Modified Consent Decree, and the terms and conditions of the Selenium Settlement Agreement were incorporated by reference into the Second Modified Consent Decree as if fully set forth therein. *Id.*, ¶18.

Under Paragraph 13 of the Selenium Settlement Agreement, VCLF was obligated to donate $6,000,000 to Appalachian Headwaters, Inc, through installment payments. Selenium Settlement Agreement ¶13 (CM/ECF # 105 at pp 87–88). To secure its $6,000,000 obligation to Headwaters, VCLF pledged a perfected security interest in 100% of the shares of VCLF Loudoun Holdings, LLC (the "Virginia LLC"). *Id.* (CM/ECF #105 at p 88). The sole asset of the Virginia LLC is an undivided 89% interest in 313 acres of land in Loudoun County, Virginia (the "Loudoun Property"). VCLF represented, through an appraisal, that the Loudoun Property had a market value of or about $5,500,000. Decl. of Derek O. Teaney, ¶4 (CM/ECF #110-1). Plaintiffs and Headwaters relied on that representation in their agreement to accept the proposed collateral. Pursuant to the Selenium Settlement Agreement, Headwaters was entitled, among other things, to take possession of the collateral and, *at its option*, cause the sale of the Virginia LLC's interests in the Loudoun Property in a commercially reasonable manner in the event of VCLF's default on its payment obligations, defined as VCLF's failure to failing to make a scheduled monthly payment within 30 days of its due date. Selenium Settlement Agreement ¶13 (CM/ECF #105 at p. 88). If such a sale were to occur, and if the proceeds from the sale were insufficient to cover VCLF's remaining debt to Headwaters, the Selenium Settlement Agreement provided that VCLF's monthly payments would be recalculated according to the new balance after (1) sale of the Virginia LLC's interests in the Loudoun Property and (2) application of the proceeds, less reasonable proceeds, to VCLF's arrearage. *Id.* Alternatively, if the net proceeds of the sale of the Virginia LLC's interests in the Loudoun Property were to exceed the outstanding balance of the $6,000,000 total donation amount, the excess would be returned to VCLF. *Id.*

VCLF is in arrears in the monthly installment payments required by the Selenium Settlement Agreement. *See generally* Decl. of Elizabeth Sutton (CM/ECF #110-2). Headwaters received installment payments totaling $3,000,000 through April 26, 2018. *Id.*, ¶¶6–7. But the last

3

payment Headwaters received was on April 26, 2018, and was a late payment of the installment due on February 1, 2018. *Id.*, ¶¶11–12. Consequently, VCLF is $1,950,000 in arrears on its monthly installment payments of $150,000 per month to Headwaters, as a result of its failure to make 13 monthly payments from March 1, 2018 through March 1, 2019.

Following VCLF's default, Headwaters took possession of the collateral designated to secure VCLF's obligation to Headwaters. Decl. of Isak Howell, ¶5–9 (CM/ECF #110-3). After taking possession, Headwaters took good faith efforts to cause the Virginia LLC to sell its interests in the Loudoun Property, but those efforts have not led to a sale. *Id.*, ¶¶12–15, 17. Specifically, Headwaters (1) negotiated with potential buyers of the property in the land conservation community because of the property's proximity to the Appalachian Trail and because the property had previously been identified for protection as a public park; (2) negotiated with a realtor to list the property for sale; and (3) retained an auctioneer for the purpose of auctioning the property to the highest bidder. *Id.*

Through those efforts to cause the sale of the Loudoun Property, Headwaters determined that the $5.5 million appraisal of the Loudoun Property vastly overstates the market value of the Virginia LLC's interests in the Loudoun Property and that those interests are all but unmarketable. *Id.*, ¶¶10–17. The potential buyers in the conservation community are not interested in providing valuable consideration for the property. *Id.*, ¶¶12–13. The realtor Headwaters approached would not list the property because of the existence of an undivided 11% interest in the Loudoun Property held by an unaffiliated third party. *Id.*, ¶¶14–15. Recently, the owners of that undivided 11% interest have even questioned Headwaters's ability to sell the Virginia LLC's interests in the Loudoun Property. *Id.*, ¶16. The nature of the Loudoun LLC's partial interest in the Loudoun Property has caused Headwaters difficulty in establishing a date for an auction. *Id.*, ¶17.

Through Headwaters's efforts to cause the Virginia LLC's interests in the Loudoun Property to be sold, it has become clear that a substantial deficiency in VCLF's obligation to Headwaters would remain even after the application of the net proceeds from any sale to that obligation. There is virtually no market for the Virginia LLC's interests in the Loudoun Property. That is true for several reasons: (1) the deed provides limited and problematic physical access to the property; (2) the property is primarily composed of a forested mountainside with little development potential; (3) timber rights were severed from the whole; and (4) there is an 11% undivided interest in the Loudoun Property evidently owned by unaffiliated third-parties. *Id.*, ¶¶10–17; App. B to Teaney Decl. (CM/ECF #110-1). Accordingly, Headwaters believes that the Virginia LLC's interests in the Loudoun Property have little to no value.

On February 8, 2019, Plaintiffs and Headwaters sent a letter to Defendant ERP Environmental Fund, Inc., and VCLF, invoking the dispute resolution provisions in Paragraph 17 of the Selenium Settlement Agreement. Teaney Decl., ¶5. Paragraph 17 provides for the Parties to the Selenium Settlement Agreement to engage in good-faith negotiations for a period of 21 days prior to seeking judicial enforcement of the Selenium Settlement Agreement. Selenium Settlement Agreement ¶17 (CM/ECF #105 at p. 90). The 21-day period expired on March 1, 2019, but the Parties continued the efforts to resolve VCLF's nonpayment through March 15, 2019. Teaney Decl., ¶6. When those efforts failed to resolve the dispute, Plaintiffs and Headwaters filed the pending motion to enforce.

## **ARGUMENT**

**I.  This Court Has Inherent Power To Enforce The Second Modified Consent Decree And The Selenium Settlement Agreement.**

A district court has the "inherent power" to specifically enforce a settlement agreement. *Wood v. Virginia Hauling Co.*, 528 F.2d 423, 425 (4th Cir. 1975); *see also Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 543 (4th Cir. 2002) (recognizing authority of court to specifically enforce a

settlement agreement); *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983) ("It is well settled that a district court retains inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before that court."). If a settlement agreement "can be translated into terms of dollars and cents" the district judge "should enforce payment of precisely that amount." *Wood*, 528 F.2d at 425.

As the Fourth Circuit has observed, "[t]he parties to a consent decree expect *and achieve* a continuing basis of jurisdiction to enforce the terms of the resolution of their case in the court entering the order." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002) (emphasis added). "Either incorporation of the terms of the agreement or a separate provision retaining jurisdiction over the agreement will suffice" to provide the court with "jurisdiction to enforce the settlement . . . ." *Id.* at 283; *see also Columbus-Am. Discovery Grp. v. Mut. Ins. Co.*, 203 F.3d 291, 299 (4th Cir. 2000) (same).

Here, this Court has jurisdiction to enforce VCLF's obligations under the Selenium Settlement Agreement under *Smyth* and *Columbus-American Discovery Group*. Paragraph 18 of the Second Modified Consent Decree expressly incorporates the terms of the Selenium Settlement Agreement into the Second Modified Consent Decree:

> In consideration for the extended [compliance] deadlines, Substituted Defendant and its parent company VCLF Land Trust, Inc.[] have agreed to fund forest and stream restoration in West Virginia pursuant to the Selenium Settlement Agreement with Plaintiffs executed on August 19, 2016. The Selenium Settlement Agreement is attached to this Second Modified Consent Decree as Appendix F, and its terms and conditions are hereby incorporated by reference into this Second Modified Consent Decree as if fully set forth herein.

CM/ECF #105 at ¶18 (internal footnote omitted). Paragraph 23 of the Second Modified Consent Decree provides that, "[f]or purposes of . . . any action to enforce this Second Modified Consent Decree or the Selenium Settlement Agreement, Substituted Defendant and its Affiliated Companies consent to this Court's jurisdiction over this Second Modified Consent Decree and

consents [*sic*] to venue in this judicial district." *Id.*, ¶23. Paragraph 105 of the Second Modified Consent Decree provides that "[t]he Court shall retain jurisdiction over this case until termination of Second Modified Consent Decree with respect to . . . effectuating or enforcing compliance with the terms of this Decree." *Id.*, ¶105. Paragraph 107 of the Second Modified Consent Decree governs termination of the Decree, and its terms have not yet been satisfied. *Id.*, ¶107. Finally, Paragraph 17 of the Selenium Settlement Agreement expressly provides that "any Party [to the Selenium Settlement Agreement] may ask the United States District Court for the Southern District of West Virginia, to whose jurisdiction the parties expressly and irrevocably consent, to enforce the [Selenium] Settlement Agreement." Selenium Settlement Agreement ¶17 (CM/ECF #105 at p. 90).

## II.     The Court Should Summarily Enforce the Provisions at Issue.

The Court should summarily issue an order specifically enforcing VCLF's obligations under the Selenium Settlement Agreement and the Second Modified Consent Decree. As the Fourth Circuit has held, "if an agreement for complete settlement of the underlying litigation, or party of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement *summarily* as long as the excuse for nonperformance of the agreement is comparatively insubstantial." *Hensley*, 277 F.3d 535 (emphasis added; internal quotation marks omitted). The authority to enforce a settlement agreement summarily and *without a hearing* stems from the trial court's inherent equitable power. *Millner v. Norfolk & W.R. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981).

Here, a binding settlement agreement has been incorporated into a consent decree, and its terms and conditions are easily determined. Moreover, any excuse that Defendant or VCLF may offer will be comparatively insubstantial. Accordingly, the Court should summarily enter an order enforcing VCLF's obligation to make a $6,000,000 donation to Headwaters.

III. **Plaintiffs and Headwaters May Enforce the Second Modified Consent Decree and Selenium Settlement Agreement Against VCLF Pursuant to Federal Rule of Civil Procedure 71 and the Terms of Those Documents.**

That Headwaters and VCLF are not named parties in this action does not prohibit Headwaters from seeking enforcement of VCLF's obligations under the Selenium Settlement Agreement against VCLF. Federal Rule of Civil Procedure 71 provides that, "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." Fed. R. Civ. P. 71. Here, the Second Modified Consent Decree grants relief to Headwaters through the incorporated Selenium Settlement Agreement, by requiring Defendant's parent company to donate $6,000,000 to Headwaters. Selenium Settlement Agreement ¶13 (CM/ECF #105 at pp. 87–88). Indeed, the Selenium Settlement Agreement itself acknowledges that it is intended for the benefit of Headwaters and that it is enforceable by Headwaters. Selenium Settlement Agreement ¶21 (CM/ECF #105 at p. 91).[1]

Moreover, the order may be enforced against VCLF pursuant to Rule 71. The obligation to make the $6,000,000 donation is VCLF's under Paragraph 13 of the Selenium Settlement Agreement ¶13 (CM/ECF #105 at p. 87), and VCLF is a signator of and a party to the Selenium Settlement Agreement, *see generally id.* VCLF is the parent company of Defendant ERP Environmental Fund, Inc. (CM/ECF #105 at ¶18), and, hence, as a business entity with the ability to control Defendant, VCLF is an "Affiliated Company" of ERP Environmental Fund, Inc., as that term is used in the Second Modified Consent Decree (*Id.*, ¶27(a)). As a result, VCLF has consented to venue and jurisdiction in this Court. *Id.*, ¶23; Selenium Settlement Agreement ¶17 (CM/ECF #105 at p. 90).

---

1 Even if Headwaters were not entitled to enforce the Second Modified Consent Decree, it is joined in this motion by the Plaintiffs in the underlying action, who unquestionably may seek to enforce the payment of the $6,000,000 donation.

**IV. The Court Should Enter An Order Compelling VCLF To Pay Its Arrearage And Make Timely Future Payments.**

VCLF defaulted on its obligation to make a $6,000,000 donation to Headwaters halfway through its performance of that obligation. It has made none of the required $150,000 payments due on the first of each month from March 1, 2018 through the present. Sutton Decl., ¶¶11–12. Its arrearage stands at $1,950,000 as of the date of this motion (and will reach $2,100,000 on April 1, 2019). Moreover, VCLF is obligated to continue making $150,000 monthly payments on the first of each month through and including October 1, 2019. Selenium Settlement Agreement ¶13 (CM/ECF #105 at pp. 87–88).

As a remedy for VCLF's failure to perform its obligations under the Selenium Settlement Agreement and the Second Modified Consent Decree, Plaintiffs and Headwaters ask the Court to enter an order declaring that VCLF has not complied with its obligations under Paragraph 13 of the Selenium Settlement Agreement by failing to make the required $150,000 monthly payments due on March 1, 2018 through and including March 1, 2019. Plaintiffs and Headwaters further request that the Court issue an order enforcing the Selenium Settlement Agreement and the Second Modified Consent Decree in the following manner:[2]

1. Directing Defendant and/or VCLF (a) to pay to Headwaters, via cashier's check or electronic funds transfer and within 14 days, an amount equal to VCLF's arrearage, as of the date of the payment, resulting from its nonpayment of its monthly obligation of $150,000 per month under Paragraph 13 of the Selenium Settlement Agreement ($1,950,000 as of March 1, 2019); and (b) to pay to Headwaters, via cashier's check or electronic funds transfer on the first of each month thereafter through and including

---

[2] Plaintiffs and Headwaters request this relief to remedy violations of Paragraph 13 of the Selenium Settlement Agreement only, and reserve their rights to seek enforcement of any other provision or provisions of the Selenium Settlement Agreement and Second Modified Consent Decree at the appropriate time and through an appropriate motion.

    October 1, 2019, $150,000 in accordance with Paragraph 13 of the Selenium Settlement Agreement; and

2. Directing Headwaters to endorse and deliver the membership certificate in the Virginia LLC to VCLF Land Trust, Inc., upon the satisfaction of VCLF's $6,000,000 obligation under Paragraph 13 of the Selenium Settlement Agreement.

Finally, Plaintiffs and Headwaters request that the Court enter a Judgment in their favor in the amount of VCLF's arrearage as of the date of the entry of the Judgment.

    Enforcement of Paragraph 13 of the Selenium Settlement Agreement in the proposed manner will ensure that VCLF's obligation to Headwaters is satisfied and is appropriate because of (1) VCLF's prolonged failure to perform its obligations,[3] (2) the misleading appraisal and near complete lack of economic value of the Loudon Property, and (3) the fact that the Selenium Settlement Agreement does not require a sale of the Virginia LLC's interests in the Loudoun Property.

    Nothing in the law or the terms of the Selenium Settlement Agreement prohibits Plaintiffs and Headwaters from seeking to enforce VCLF's financial obligations under the Selenium Settlement Agreement while in possession of the collateral. Paragraph 13 of the Selenium Settlement Agreement grants Headwaters "all the rights of a secured creditor under the applicable Uniform Commercial Code" in the event of default. Selenium Settlement Agreement ¶13 (CM/ECF #105 at p. 88). After default, Section 9-601(a) of the Uniform Commercial Code

---

[3] Plaintiffs and Headwaters ask the Court to take judicial notice from the records of the Virginia State Corporation Commission that the President of VCLF is Thomas M. Clarke. Ex. 4 to Motion to Enforce (printout of search result from the website of the Virginia State Corporation Commission). Mr. Clarke is the "Chief Executive Officer of [Clarke Investments, LLC], which provides financial advisory and management support to a number of companies that are owned directly or indirectly" by Mr. Clarke and his wife. Ex. 5 to Motion to Enforce (Decl. of Thomas M. Clarke at ¶6, *In re Westmoreland Coal Co.*, No. 18-35672, CM/ECF #1502 (S.D. Tex. Feb. 26, 2019). Clarke Investments, LLC "operates in the metals, mining, and energy sectors with approximately $2 billion of annual revenues." *Id.*, ¶17.

("UCC") grants a secured party the rights provided in Part 6 of Article 9 of the UCC. Va. Code §8.9A-601(a); W. Va. Code §46-9-601(a). Among those rights is the authority to take possession of the collateral under Section 9-609. Va. Code §8.9A-609; W. Va. Code §46-9-609. Also among those rights is the authority to "reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." Va. Code §8.9A-601(a)(1); W. Va. Code §46-9-601(a)(1). The secured party's rights "are cumulative and may be exercised simultaneously." Va. Code $8.9A-609(c); W. Va. Code §46-9-601(c).

Because the secured party's rights to possession of the collateral and to seek judicial enforcement of the underlying debt are cumulative and may be exercised simultaneously, "the UCC does not require [the secured party] to elect a remedy." *SFG Commercial Aircraft Leasing, Inc. v. N59CC, LLC*, Civ. No. 3:09-CV-101-PPS, 2010 WL 883764, at *3 (N.D. Ind. Mar. 8, 2010); *see also In re King*, Civ. No. 08-61922, 2010 WL 4290527, at *3 (Bankr. N.D.N.Y. Oct. 20, 2010) ("It is universally understood that the UCC does not require a secured creditor to elect a remedy."). Indeed, "[a] secured creditor may take any action or combination of actions until the debt is satisfied, subject to the limitation that the creditor can obtain only one satisfaction of the debt." 68A Am.Jr.2d *Secured Transactions* §534 (2009). As a result, "the UCC permits a creditor to pursue a judgment on a note while retaining possession of collateral." *Callidus Capital Corp. v. Smith*, Civ. No. 5:15-365-DCR, 2016 WL 4699700, at *8 (E.D. Ky. Sept. 7, 2016). The relief that Plaintiffs and Headwaters seek on this motion is consistent with those principles.

**V.     The Court Should Award Attorney Fees and Costs to Plaintiffs and Headwaters.**

Paragraph 90 of the Second Modified Consent Decree provides that Defendant ERP Environmental Fund, Inc. "agrees to pay Plaintiffs' reasonable costs, including attorneys' fees and expert witness expenses, for their work conducted after the Effective Date of the Second Modified

Consent Decree and related to . . . proceedings to interpret or enforce the terms of the Second Modified Consent Decree." CM/ECF #105 at ¶90.

Plaintiffs and Headwaters respectfully request that the Court enter an order declaring that they are entitled to recover costs and fees related to the litigation of this motion, and directing the parties to submit briefing on the appropriate amount of a fee award once VCLF's obligations under Paragraph 13 of the Selenium Settlement Agreement have been fully performed.

## CONCLUSION

For the foregoing reasons, Plaintiffs and Headwaters respectfully request that the Court grant their motion to enforce the terms of the Second Modified Consent Decree and Selenium Settlement Agreement and award them attorney fees and costs.

DATED: March 15, 2019

Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (W. Va. Bar No. 10223)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 793-9007
Email: dteaney@appalmad.org

*Counsel for Plaintiffs and Appalachian Headwaters, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC.; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.;
and SIERRA CLUB,**

    Plaintiffs,

**and**

**APPALACHIAN HEADWATERS, INC.,**

    Nonparty in whose favor an order has been entered,

**v.**

**ERP ENVIRONMENTAL FUND, INC.,**

    Defendant,

**and**

**VCLF LAND TRUST, INC.**

    Nonparty against whom an order may be enforced.

## **CERTIFICATE OF SERVICE**

I, Derek O. Teaney, do hereby certify that on March 15, 2019, I electronically filed the foregoing document the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the CM/ECF participants in the case. I further certify that on March 15, 2019, I also served the foregoing on Timothy Dixon, counsel for Clarke Investments, LLC, at timothy.dixon@clarkeinvestments.com pursuant to his agreement to accept service by electronic mail.

                                                      **/s/ Derek O. Teaney**
                                                      DEREK O. TEANEY (W. Va. Bar No. 10223)