IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC.; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.;
and SIERRA CLUB,

    Plaintiffs,

v.                                  CIVIL ACTION NO. 3:11-cv-00115

ERP ENVIRONMENTAL FUND, INC.,

    Defendant.

**ERP ENVIRONMENTAL FUND, INC.'S SUBSTITUTED RESPONSE IN OPPOSITION TO MOTION TO ENFORCE SECOND MODIFIED CONSENT DECREE AND SELENIUM SETTLEMENT AGREEMENT AND AWARD ATTORNEY'S FEES**

## I.    INTRODUCTION

ERP Environmental Fund, Inc. ("ERP") does not dispute Plaintiffs' assertion that it has fallen behind on payments required under the Second Modified Consent Decree ("the Decree"). Notwithstanding ERP's arrearage, the Court should deny Plaintiffs' motion as premature. The Decree and Selenium Settlement Agreement ("Settlement Agreement") contemplated that, in the event of default, Appalachian Headwaters, Inc. ("Headwaters") would take possession of VCLF Loudoun Holdings, LLC ("Virginia LLC"), take commercially reasonable steps to market the Loudoun Property, and *then* pursue any remaining deficiency from ERP after the sale of the Loudoun Property.  Indeed, Headwaters and ERP both took the first required step and transferred Virginia LLC to Headwaters with no argument or objection.  However, Headwaters has failed to comply with the second required step and has not yet taken commercially reasonable steps to market and sell the Loudoun Property, as required by the Settlement Agreement.  Additionally,

ERP opposes Plaintiffs' motion to the extent it suggests that a judgment can be levied against VCLF Land Trust ("VCLF"), who is not a party to the Decree.

## II. FACTUAL BACKGROUND

ERP is in general agreement with the two full paragraphs on page two of Plaintiffs' Memorandum but is in substantial disagreement with the way Plaintiffs characterize many of the relevant facts. ERP caused VCLF to pledge its Membership Interests (the "Membership Interests") in VCLF Loudoun Holdings, LLC ("Virginia LLC") as security for the financial commitments of VCLF under paragraph 13 of the Selenium Settlement Agreement. The Loudoun Property is the sole asset of Virginia LLC.

The Loudoun Property is located in the northwest corner of Loudoun County, Virginia, adjacent to or near the portion of the Harper's Ferry National Park located in Virginia. *See* Exhibit 1 (Declaration of Timothy Dixon), ¶ 13. The property features steep slopes, rocky outcrops, a dense, mature forest and limited means of vehicular access. *Id.* All of these features can be observed by a drive by on US Route 340. *Id.* Vehicular access is available via Chestnut Hill Road from US Route 340. *Id.* Plaintiffs or Headwaters could have inspected the Loudoun Property more closely, if they wished to do so.

If the Plaintiffs chose not to evaluate the Loudoun Property themselves, the appraisal report ERP provided to Plaintiffs provides a great deal of detail on the property. ERP provided the Plaintiffs with a copy of an Appraisal Report dated June 30, 2015 prepared by Thorne Consultants, Inc. (the "Appraisal"). *See* ECF Doc. # 110-1, p. 18. ERP's purpose in providing the Plaintiffs with the Appraisal was not to mislead the Plaintiffs. To the contrary, the Defendant's purpose was to provide the Plaintiffs with full and fair disclosure as to the nature of the Loudoun Property.

ERP is a West Virginia non-profit corporation who agreed to assume the massive environmental liabilities at issue in this action at multiple former Patriot sites that have not profitably produced coal for years. ERP is a conservation organization whose main objective is mitigating and reducing the impacts of mining. *See* Exhibit 1, ¶ 5. ERP's principle corporate purpose is to promote conservation of water and air quality, wildlife, and recreational land use as it relates to current or former mines, oil or gas wells, or other energy resource extraction, storage, transportation and/or processing sites and facilities through the reclamation, monitoring, and mitigation of those sites on a non-profit basis. *Id.* ERP employs approximately 80 people, mostly West Virginia residents. *Id.* at ¶ 7.

Another primary corporate objective of ERP, as delineated in its mission statement is to reduce the rate of growth of atmospheric carbon dioxide through global reforestation. *Id.* at ¶ 11. ERP has incurred over $500,000 in tree planting expenses alone at its reclamation sites. *Id.* at ¶ 10.

### III.  ARGUMENT

ERP—a non-profit—has thus far paid Headwaters $3 million while working to remedy environmental issues it did not cause or profit from. Under the terms of paragraph 13 of the Selenium Settlement Agreement, in the event of a default on VCLF's payment obligations, the Plaintiffs had the right to foreclose upon the Membership Interests in Virginia LLC to recoup any deficiency. Once they foreclosed upon those membership interests, Plaintiffs and Headwaters had an obligation to proceed in good faith with commercially reasonable efforts to market and sell the Loudoun Property. Plaintiffs and Headwaters have failed to demonstrate commercially reasonable efforts to market and sell the Membership Interests in the Loudoun Property and should be foreclosed from taking additional enforcement action until they do so.

A. **Plaintiffs Were Well-Aware of the 11% Undivided Interest Held By the Fairfax Heirs in the Loudoun Property.**

In Plaintiffs' factual recitations concerning the Loudoun Property, they attempt to portray themselves as victims of fraud perpetrated by the ERP and VCLF. Plaintiffs' discussion of the Loudoun Property implies that sophisticated environmental organizations such as the Ohio Valley Environmental Coalition, Inc., the West Virginia Highlands Conservancy, Inc. and the Sierra Club, with the advice of counsel, lack the ability to evaluate real property either independently or with the aid of an appraisal report. Plaintiffs assert that the Appraisal was misleading based on their contention that the 11% ownership interest held by the Fairfax Heirs makes the property completely unmarketable and also imply that they were misled into accepting VCLF's interest in Virginia LLC by this allegedly undisclosed 11% interest. *Id.* at 4.

Nowhere does the Settlement Agreement represent that VCLF or Virginia LLC owned a 100% interest in the Loudoun Property. Rather, the Settlement Agreement states that VCLF conveyed "its right, title, and interest to 313 acres of land in Loudoun County, Virginia" to Virginia LLC on August 17, 2016. ECF Doc. # 105, p. 88. The Appraisal discusses VCLF's interest in the Loudoun Property as of August 5, 2015 and expressly notes (1) the presence of an 11.1% undivided interest held by the Fairfax Heirs and (2) ownership of the timber rights by Margaret W. Didden and Hope W. Cullinane. *See* ECF Doc. # 110-1, p. 18. Thus, Plaintiffs were well-aware of the fact that Virginia LLC did not hold a 100% fee simple interest in the Loudoun Property and still agreed to accept the ownership interest in Virginia LLC as collateral. This Court should ignore Plaintiffs' attempts to portray ERP or VCLF as dishonest in their representations regarding the Membership Interests.

B. **Plaintiffs May Not Pursue a Deficiency Judgment Until After They Have Taken Commercially Reasonable Steps to Sell the Loudoun Property.**

4

4840-2812-8915.v1

The actions of Headwaters were not merely taking possession of the Membership Interests. Rather, Headwaters' actions constituted a disposition of the Membership Interests within the meaning of Virginia Code, Section 8.9A-610. Under paragraph 13 of the Selenium Settlement Agreement, the Membership Interests were held in escrow by Mark W. Botkin, as escrow agent. Attached hereto as Exhibit 2 is a letter dated July 20, 2018 jointly signed by Isak Howell, Virginia counsel to the Plaintiffs, and Astrika Adams, counsel to the ERP and VCLF, directing Mr. Botkin to endorse the Membership Interests to Headwaters, thereby causing Headwaters to be the legal and beneficial owner of the Membership Interests. The transfer of ownership constitutes a disposition and a foreclosure, not a mere transfer of possession.

In its Motion, Headwaters is now asking this Court to reverse Headwaters' disposition of the collateral. Headwaters cites no legal authority for this Court to so act. In the absence of any legal authority, ERP submits that the disposition of the Membership Interests may be reversed only by a consensual transfer between Headwaters and VCLF.

Headwaters also asks the Court for a deficiency judgment, but Headwaters is unable to pursue a deficiency amount against ERP until it demonstrates that a deficiency exists after the proceeds from the sale of the collateral is taken into account. This conclusion is supported by the language in the Settlement Agreement. The Settlement Agreement (ECF Doc. # 105, p. 83) states that, in the event of a default, the escrow agent "<u>shall</u> endorse the certificate of membership interest in VCLF Loudoun Holdings, LLC, to Headwaters, Inc." *Id*. at 88 (emphasis added). Headwaters is then required to "proceed in good faith, in a commercially reasonable manner, to cause the Virginia LLC to market the Loudoun Property and to extract the highest purchase price practicable…." *Id*. Once the property is sold, the settlement agreement states that "VCLF's monthly payments <u>shall</u> be recalculated according to the new balance after sale of the

Loudoun Property." In using the mandatory, *shall*, the Parties to the Settlement Agreement contemplated that, once Headwaters foreclosed on the Virginia LLC, a sale of the Loudoun Property would occur, and the balance of VCLF's obligation to Headwaters would be recalculated accordingly. Thus, the Parties understood that Plaintiffs would pursue the remaining balance of the donations due Headwaters only after the sale occurred.

### C. Plaintiffs and Headwaters Have Not Taken Commercially Reasonable Steps to Market and Sell the Loudoun Property.

The actions of Headwaters detailed by Plaintiffs since taking possession of Virginia LLC do not demonstrate the good faith effort to take commercially reasonable steps to market the Loudoun Property, as required by the Decree and Settlement Agreement. Plaintiffs claim that Headwaters has discharged its duty to market and sell the Loudoun Property based on the facts that (1) conservation groups do not want the property; and (2) a single realtor would not list the property without the consent of the other parties with ownership interests in the property. But these facts do not demonstrate that the Loudoun Property is unmarketable and, therefore, do not support Plaintiffs' claims that Headwaters has made commercially reasonable efforts to market and sell the property.

As a secured creditor under the Uniform Commercial Code, Headwaters is obligated to proceed in a commercially reasonable manner to extract the *highest* [1] purchase price practicable from the Loudoun Property. Indeed, the Appraisal (ECF Doc. # 110-1, App. A) Plaintiff now complain about is based on a "highest and best use" assumption of subdividing 125 acres of the property into housing lots, with the remaining 188 acres being dedicated to one or two additional

---

[1] Virginia Code, Section 8.9A-610(b) provides as follows:
"Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms." *See also* ECF Doc. # 105, p. 88, ¶ 13 (requiring Headwaters to extract the highest purchase price practicable from the Loudoun Property).

home sites and recreational activities. ECF Doc. # 110-1, p. 8. Approaching an environmental trust organization that wishes to leave the property in an unimproved state does not discharge the duty of a secured creditor to proceed in a commercially reasonable manner to sell the property for the *highest* purchase price anticipated by the Appraisal. Thus, the conservation community's refusal to pay market value for the Loudoun Property is immaterial to determining whether it is marketable as contemplated under the assumptions of the Appraisal.

Nor does approaching a single real estate agent who would not list the property due to the 11% interest owned by the Fairfax Heirs constitute a commercially reasonable effort. As explained above, Plaintiffs were well-aware of the undivided 11% interest held by the Fairfax Heirs. Given this knowledge, Plaintiffs were on notice that they might need the consent of the other tenants in common or, alternatively, that they might need to bring a partition action.

Partition is governed by statute in Virginia. Virginia Code § 8.01-81 provides that "[t]enants in common, joint tenants, executors with the power to sell, and coparceners of real property ... shall be compellable to make partition and may compel partition." Tenants in common can thus compel partition and are compellable to partition under the statute.

Plaintiffs and Headwaters had ample notice that sale of the Loudoun Property would involve either cooperation with the Fairfax Heirs or a suit for partition, and they still agreed to resort first to foreclosing on the Membership Interests and selling the Loudoun Property in the event of a default. In this case, a good faith, commercially reasonable effort to sell the Loudoun Property would include an action to partition the property, if necessary to market it. Yet Plaintiffs make no mention of Headwaters even considering a partition action.

Furthermore, Headwaters also acknowledges that it has an auction contract with Wilson Auction Company. ECF Doc. # 110-3 (Declaration of Isak Howell) to sell the property:

> On or about January 31, 2019, I contacted Tony Wilson of Wilson Auction Company. Following our initial discussions, Headwaters executed an auction contract with Wilson Auction Company to market and sell the property at auction. That contract is pending, and initial marketing work is under way. The auction company recommended a title report, which I authorized on behalf of Headwaters. I am working with the auctioneer and an abstractor to determine precisely what was conveyed to Loudoun Holdings in order to develop an accurate description of the property for marketing purposes. <u>That work is ongoing and an auction date has not been set</u>.

ECF Doc. # 110-3 , ¶ 17 (emphasis added). Until Headwaters completes the work referenced by Mr. Howell, there is no reason for the Court to conclude that Virginia LLC's interest in the Loudoun Property is worthless.

Anyone with even a passing familiarity with the real estate development process would know that more effort is involved in extracting value from an undeveloped property of this nature than the superficial inquiries made by the Plaintiffs. If Headwaters lacked the expertise to extract value from the Loudoun Property, then they are obligated to retain the services of someone who does have that expertise. The Appraisal reveals that the Loudoun Property contains approximately 20 lots capable of residential development. Properly managed and developed, high end housing in a secluded, forested area, which is protected from further development, within commuting range to Washington, DC, could be highly valuable. A commercially reasonable effort to extract value from the collateral would include investigation of that potential. A commercially reasonable effort would also include investigation of a partition action to gain clear title to those lots for development. The efforts of Headwaters fall far short of a commercially reasonable effort to extract the highest purchase price practicable from the sale of the Loudoun Property.

By its own admission, Headwaters had no plan for liquidating the collateral once they assumed ownership of the Membership Interests. Now Plaintiffs claim that it is impossible to extract any value from the collateral. The truth is that it is impossible for Headwaters to extract value because they failed to develop a workable plan of liquidation.

As it stands, Headwaters currently hold the collateral used to secure ERP's obligations under the Decree. They cannot foreclose on the collateral, refuse to take commercially reasonable efforts to sell it, and then seek the balance of payments while remaining in possession of Virginia LLC. The Court should deny Plaintiffs Motion to Enforce as premature until Headwaters takes commercially reasonable steps to market and sell the Loudoun Property, including a partition action if necessary.

### D. Plaintiffs and Headwaters May Not Enforce the Second Modified Consent Decree and Settlement Agreement Against VCLF.

Plaintiffs claim that VCLF has consented to personal jurisdiction by this Court because the Decree provides that ERP's "Affiliated Companies"—defined to include those entities that own or control ERP—consent to the Court's jurisdiction and venue within the judicial district. ECF Doc. # 111, p. 8. Paragraph 23, however, merely precludes ERP from moving the case to another jurisdiction and grants the Court subject matter jurisdiction over any claims that ERP's affiliate mining companies are not complying with the obligations imposed by the Decree. But nothing in Paragraph 23 states that ERP's Affiliated Companies consent to *personal* jurisdiction.

This is made apparent by the fact that every reference to "Affiliated Companies" in the Decree refers to companies that held environmental permits related to mining operations at the time the Decree was entered. *See, e.g.,* ECF Doc. # 105, ¶ 49 (waiving rights under CWA § 404 permit), ¶ 50 (waiving mining rights under SMCRA permit S-5009-00) ¶ 52 (waiving rights under CWA § 404 permit), ¶ 53 (requiring withdrawal of CWA § 404 permit application), ¶ 54

(prohibiting Affiliated Companies from submitting new 404 permit applications and prohibiting Affiliated companies from engaging in large scale surface mining), ¶ 58 (placing coal production tonnage limits on Affiliated Companies). Under the terms of the Decree, if Plaintiffs have reason to believe that one of ERP's affiliate mining companies is not acting in accordance with ERP's obligations under the Decree, this Court has subject mater jurisdiction to hear those enforcement claims and may hold ERP liable for stipulated payments under Section IX of the Decree based on the action of those affiliates. ECF Doc. #105, ¶¶ 64-72.

This conclusion is made even more clear by reference to Section XVI of the Decree, which only retains jurisdiction in this Court for the purposes of "resolving disputes arising under this Decree or…enforcing compliance with the terms of this Decree." ECF Doc. # 105, ¶ 105. The provision regarding the Court's retention of jurisdiction says nothing about jurisdiction for enforcement of the Settlement Agreement.

If Plaintiffs wish to pursue VCLF as a guarantor of ERP's obligations under Decree, they should initiate a new action in a Virginia court against VCLF to enforce a guaranty. If they wish to pursue VCLF under a breach of contract theory related to VCLF's independent obligations under the Settlement Agreement, they may pursue that action in a Virginia court. But VCLF has not consented to personal jurisdiction in this Court.

### E. Request for a Hearing.

ERP hereby requests a hearing on Plaintiffs' Motion to Enforce. Under Federal Rule of Civil Procedure 78, this Court has the authority to grant a hearing on a motion. Local Rule 78.1 provides that "[t]he judicial officer may require or permit hearings on motions, and the hearings may be by telephone or other electronic means." The decision to grant a hearing on this motion is within the discretion of this Court. *Coakley & Williams Const., Inc. v. Structural Concrete*,

4840-2812-8915.v1

973 F. 2d 349 (4th Cir. 1992), *US Fidelity & Guaranty Co. v. Lawrenson*, 334 F.2d 464 (4th Cir. 1964).

In the case at bar, there is substantial disagreement over the facts and the interpretation of the Decree and Settlement Agreement. Plaintiffs' preemptive dismissal of ERP's potential arguments against the Motion as "insubstantial" is not persuasive. Plaintiffs have not cited any reason why they would be prejudiced by any delay occasioned by this Court scheduling a hearing. Given that it has been over a year since default, an additional few weeks should not present any irreparable harm. ERP submits that it is in the interests of justice for this Court to grant a hearing on the Motion and ERP's response in opposition to the Motion.

## IV. CONCLUSION

For the reasons explained above, ERP respectfully requests that the Court deny Plaintiffs' Motion to Enforce.

Respectfully submitted,

/s/ *Christopher M. Hunter*
CHRISTOPHER M. HUNTER, WVBN 9768
ROBERT G. MCLUSKY, WVBN 2489
JACKSON KELLY PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
*Counsel for Defendant*

4840-2812-8915.v1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC.; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.;
and SIERRA CLUB,**

  Plaintiffs,

v.          CIVIL ACTION NO. 3:11-cv-00115

**ERP ENVIRONMENTAL FUND, INC.,**

  Defendant.

### CERTIFICATE OF SERVICE

  I, Christopher M. Hunter, do hereby certify that on April 6, 2019, I electronically filed the foregoing RESPONSE IN OPPOSITION TO MOTION TO ENFORCE SECOND MODIFIED CONSENT DECREE AND SELENIUM SETTLEMENT AGREEMENT AND AWARD ATTORNEY'S FEES with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> Derek O. Teaney
> Appalachian Mountain Advocates, Inc.
> P.O. Box 507
> Lewisburg, WV 24901

> /s/*Christopher M. Hunter*
> CHRISTOPHER M. HUNTER
> JACKSON KELLY, PLLC
> 1600 Laidley Tower
> Post Office Box 553
> Charleston, West Virginia 25322

4840-2812-8915.v1

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**OHIO VALLEY ENVIRONMENTAL COALITION, INC.; WEST VIRGINIA HIGHLANDS CONSERVANCY, INC.; and SIERRA CLUB,**

    Plaintiffs,

v.     CIVIL ACTION NO. 3:11-cv-00 15

**ERP ENVIRONMENTAL FUND, INC.,**

    Defendant.

**DECLARATION OF TIMOTHY E. DIXON, COUNSEL TO THE DEFENDANT**

The undersigned hereby affirms under penalties of perjury as stated in this Declaration.

1. I am over 21 years of age and suffer from no impairment or disability affecting my ability to give truthful testimony.

2. I am employed as corporate counsel to Defendant, therefore, have personal knowledge of the facts set forth below.

3. I reside in Ellicott City, Maryland.

4. ERP Environmental Fund, Inc. (the "Defendant") is a West Virginia non-profit corporation, recognized by the Internal Revenue Service as a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code.

5. The Defendant is a conservation organization, actively involved in mitigating, reducing and controlling emissions primarily from coal mines. As stated in its corporate organizational documents, the principal corporate purposes of the Defendant are as follows:

    a. Promoting conservation, water and air quality, wildlife and recreational land use as it relates to current or former mines, oil or gas wells or other energy resource extraction, storage, transportation and/or processing sites and

facilities (together, "Energy Resource Sites and Facilities") through the reclamation of closed Energy Resource Sites and Facilities, monitoring and mitigation of emissions and discharges from Energy Resource Sites and Facilities, and other services on a non-profit basis.

      b.    Promoting of various means to mitigate, off-set, reduce and/or control emissions and discharges from the use, extraction, transportation and/or processing of coal and other mineral based energy resources, including forestation and other means of carbon sequestration, on a non-profit basis.

      c.    Undertake any one or more of the following activities for charitable, educational and/or scientific purposes: (A) retaining or protecting the natural or open-space values of real property; (B) assuring the availability of real property for agricultural, forestal, recreational, or open-space use; (C) protecting natural resources; (D) maintaining or enhancing air or water quality; or (E) preserving the historic, architectural or archaeological aspects of real property.

6.    The Defendant is not a mining company. Its permits limit its mining activities to those which are incidental to the Defendant's mine closure and reclamation activities.

7.    The Defendant received its initial funding through the Patriot Coal Corporation bankruptcy. The Defendant receives approximately $6 million of additional funding from the sale of coal recovered by the Defendant incidental to its reclamation work. The Defendant employs a conservation staff of 80 people, located in offices in Madison, West Virginia and Roanoke, Virginia.

8.    The Defendant holds 135 permits issued under the West Virginia Surface Coal Mining and Reclamation Act, West Virginia Code, Chapter 22, Article 3. The Defendant's reclamation and mitigation activities have saved the five states in which the Defendant operates millions of dollars in reclamation costs which the Defendant assumed in the wake of the second bankruptcy of Patriot Coal Corporation.

9.    The Defendant is active protecting the quality of surface and ground waters. The Defendant maintains 2,000 outlets to monitor water quality. The Defendant has invested over $1.5 million in direct water treatment cost to mitigate and control acid water run-off.

10. The Defendant reclaims land, with efforts made to replicate the original topography and flora. The Defendant currently has over 42,000 acres of land under management. The Defendant has incurred over $500,000 in tree planting expenses for reclaimed sites.

11. In addition to its reclamation activities, the Defendant is active in air quality initiatives. The Defendant's mission statement includes the following:

> "The primary objective of ERP Environmental Fund is to reduce the rate of growth of atmospheric carbon dioxide ($CO_2$) through global reforestation and by incentivizing coal consumers to accelerate the reduction of $CO_2$ pollution. We intend to sell compliant fuels, which would bundle carbon credits with coal sales to produce a compliance instrument, effectively reducing carbon dioxide emissions."

12. This innovative approach recognizes that coal will continue to be a significant source of energy for the foreseeable future. Bundling carbon offsets realized by preserving or replanting forested lands with coal sales effectively carbon emissions from coal.

13. I drive past the Loudoun Property multiple times per week and have hiked in and around the Loudoun Property. The Loudoun Property is located in the northwest corner of Loudoun County, Virginia, adjacent to or near the portion of the Harper's Ferry National Park located in Virginia. The property features steep slopes, rocky outcrops, a dense, mature forest and limited means of vehicular access. All of these features can be observed by a drive by on US Route 340. Vehicular access is available via Chestnut Hill Road from U.S. Route 340.

This Declaration is given this 5th day of April, 2019.

_____
Timothy E. Dixon, Esquire
192 Summerfield Court, Suite 203
Roanoke Virginia 24019
Virginia Bar Number: 90482

3

# Isak Howell · Attorney at Law

119 Norfolk Ave. SW #330, Roanoke, VA 24011
isak@howell-lawoffice.com · 540.998.7744

**EXHIBIT 2**

July 20, 2018

Mark W. Botkin
BotkinRose, PLC
3190 Peoples Drive
Harrisonburg, VA 22801

Re:   Parties' Joint Notice of Incurable Default and Instructions to Deliver Collateral Pursuant to August 1, 2016 Escrow Agreement By and Among the Ohio Valley Environmental Coalition, Inc., Sierra Club, the West Virginia Highlands Conservancy, the VCLF Land Trust, Inc., ERP Environmental Fund, Inc., and BOTKINROSE, PLC, as amended

Dear Mr. Botkin:

On behalf of Appalachian Headwaters, Inc., ERP Environmental Fund, Inc., and the VCLF Land Trust, Inc., we hereby provide joint notice of incurable default and respectfully request that you immediately deliver the Virginia LLC Certificate held by you pursuant to the August 1, 2016 Escrow Agreement By and Among the Ohio Valley Environmental Coalition, Inc., Sierra Club, the West Virginia Highlands Conservancy, the VCLF Land Trust, Inc. ERP Environmental Fund, Inc., and BOTKINROSE, PLC (the "Escrow Agreement," attached as Appendix A to this letter), as amended (including the "First Errata to the Escrow Agreement," attached as Appendix B to this letter) to Appalachian Headwaters, Inc. Pursuant to Paragraph 12 of the August 19, 2017 Selenium Settlement Agreement by and among the Ohio Valley Environmental Coalition, Inc., Sierra Club, the West Virginia Highlands Conservancy, the VCLF Land Trust, Inc., and ERP Environmental Fund, Inc. (the "Selenium Settlement Agreement," attached as Appendix C to this letter), VCLF Land Trust, Inc. is obligated to make monthly installment payments towards a $6,000,000 donation to Appalachian Headwaters, Inc. on the first day of each month. Paragraph 12 of the Selenium Settlement Agreement also provides that,

> [i]n the event that VCLF [Land Trust, Inc.] fails to make any of the monthly payments described above within thirty (30) days of the due date for that payment, such failure shall constitute an incurable default. In the event of such a default, pursuant to the terms of the Escrow Agreement, the Escrow Agent shall endorse the certificate of membership interest in VCLF Loudoun Holdings, LLC, to Appalachian Headwaters, Inc., and deliver that certificate to Appalachian Headwaters, Inc.

VCLF Land Trust, Inc. failed to make the required installment payments of $125,000 for a period greater than sixty (60) days. Further, VCLF Land Trust, Inc. has notified Appalachian

Headwaters, Inc. that it is in default, that it has not made the required installment payments, and that it will be unable to make such payments in the future. By endorsing this letter, VCLF Land Trust, Inc. acknowledges such default and joins in this request for the remedies provided in the Escrow Agreement.

As a result of its actions and its acknowledgement, VCLF Land Trust is in incurable default of its obligations under the Selenium Settlement Agreement. Paragraph 4.c of the Escrow Agreement provides that, "[u]pon a default in such payments (as determined under the Virginia Uniform Commercial Code or by the Selenium Settlement Agreement), the Plaintiffs may instruct the Escrow Agent to deliver the Virginia LLC Certificate to the Plaintiffs . . . ." Pursuant to the First Errata to the Escrow Agreement (attached as Appendix B to this letter), executed by the Parties to the Selenium Settlement Agreement, Paragraph 4.c of the August 1, 2016 Escrow Agreement was corrected to be consistent with the Selenium Settlement Agreement and to provide for delivery of the Virginia LLC Certificate to Appalachian Headwaters, Inc., rather than to Plaintiffs.

Accordingly, pursuant to the Selenium Settlement Agreement and the August 1, 2016 Escrow Agreement, this letter constitutes instructions to deliver the Virginia LLC Certificate. Please deliver the Virginia LLC Certificate in your possession as Escrow Agent to Appalachian Headwaters, Inc., through Isak Howell, 119 Norfolk Ave. SW #330, Roanoke, Va., 24011, as its counsel.

Thank you for your prompt attention to this matter. If you have any questions about the foregoing, please do not hesitate to contact either of us.

Sincerely,

Isak Howell
*Counsel for Appalachian Headwaters, Inc.*

Astrika W. Adams
*Counsel for VCLF Land Trust, Inc. and ERP Environmental Fund, Inc.*

Enclosures

cc:  Matt Light, BotkinRose, PLC
     Christopher Hunter, Jackson Kelly PLLC
     Tom Clarke, VCLF Land Trust, Inc.