IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

WEST VIRGINIA HIGHLANDS
CONSERVANCY, INC., and
SIERRA CLUB,

    Plaintiffs,

    and

APPALACHIAN HEADWATERS, INC.,

    Nonparty in whose favor
    an order has been entered,

v.                                                                          CIVIL ACTION NO. 3:11-cv-00115

ERP ENVIRONMENTAL FUND, INC.,

    and

RECEIVERSHIP ESTATE OF ERP
ENVIRONMENTAL FUND, INC.,

    Defendants,

    and

VCLF LAND TRUST, INC.,

    Nonparty against whom an order may be enforced.

**RESPONSE IN OPPOSITION PLAINTIFFS' MOTION FOR SHOW CAUSE ORDER AND ISSUANCE OF AN EMERGENCY ORDER PRESERVING STATUS QUO**

    In November 2021, the Special Receiver for ERP Environmental Fund, Inc. ("ERP") notified the Plaintiffs and other parties that the Special Receiver intended to conduct mining on the Buck Fork Surface Mine (Buck Fork) in order to reclaim the Hewitt Creek No. 1 Mine, (Hewitt Creek) which was left unreclaimed by ERP.  In response, Plaintiffs expressed

concern that such mining was not "necessary and incidental" to reclamation, as set forth in Paragraph 63 of the Second Modified Consent Decree in this matter.

Over the course of the past 9 months, the Special Receiver has in good faith exchanged information with the Plaintiffs and their experts in the hopes of either: (a) demonstrating that mining as proposed at Buck Fork is "necessary and incidental;" or (b) reaching some understanding as to whether some portion of proposed mining at Buck Fork is "necessary and incidental." These efforts have proven futile. Accordingly, on August 25, 2022, the Special Receiver asked this Court to refer the "necessary and incidental" issue to Special Master Kyles so that he can resolve this technical/engineering issue.

In response, Plaintiffs have sought injunctive relief and have further sought to hold the Special Receiver in contempt. They have not met the standards for obtaining such relief, however. Indeed, the motion for contempt is entirely baseless. As set forth below, even after exchanging information with the Special Receiver over nearly a year, Plaintiffs and their expert *still cannot tell the Special Receiver or this Court what amount of mining they believe to be beyond that which is "necessary and incidental" to reclamation*. How then—when the Plaintiffs themselves claim to be unsure—can the Plaintiffs seriously allege that the Special Receiver is in contempt of the provisions of Paragraph 63?

Put differently, Plaintiffs boldly contend that the Special Receiver has crossed the line, but either will not or cannot tell this Court where that line is. The Special Receiver strongly suspects that Plaintiffs and their expert actually understand that *some* amount of mining at Buck Fork is "necessary and incidental" to reclamation of the Hewitt Creek permit, but are unwilling to reveal to the Court, or to the Special Receiver, what they believe that amount is. Until

Plaintiffs are willing to be transparent with the Court, they are not entitled to equitable relief, as set forth below.

### A. Plaintiffs Fail to Present Clear and Convincing Evidence of Contempt.

In order to establish that the Receivership Estate is in contempt of the Second Modified Consent Decree, Plaintiffs bear the burden of proving, by clear and convincing evidence, the violation of a clear, unambiguous order that requires or prohibits, in specific and definite language, certain acts:

> Civil contempt is an appropriate sanction if we can point to an order of this Court which "set[s] forth in specific detail an unequivocal command" which a party has violated. *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986) (citation and internal quotation marks omitted); *see also Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991) ("[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous."). The burden is on the complainant to prove civil contempt by clear and convincing evidence. *Id*.

*In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995); *see also Buschmeier v. G & G Investments, Inc.*, No. 02:03-MC-00506, 2005 WL 2545296, at *1 (W.D.Pa. Oct.7, 2005) (*citing Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3d Cir.1970)) ("Civil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts").

Plaintiffs' motion is premised on their assertion that the Receivership Estate's actions violate the provision of Paragraph 63 of the Second Modified Consent Decree that restricts mining at locations formerly owned or operated by Patriot Coal to that necessary and incidental to reclamation. Leaving aside the issue of whether the restrictions of Paragraph 63 even apply at the Buck Fork Surface Mine—which restrictions the Receivership Estate do not believe apply—neither Plaintiffs nor their expert have stated, nor can they state, that *no mining*

of the Buck Fork permit is necessary or incidental to reclamation of Hewitt Creek, nor do they claim to know even roughly how much mining of the Buck Fork Surface Mine permit is necessary and incidental to the reclamation of the Hewitt Creek permit.

Plaintiffs were first apprised of the Receivership Estate's plans to engage reclamation services contractors to conduct mining on the Buck Fork permit[1] in order to reclaim the Hewitt Creek permit in November of 2021, when the Special Receiver sought permission of the Kanawha County Circuit Court—Business Division to engage contractors for that purpose. At that time, Plaintiffs acknowledged that "it is certainly plausible that the removal of some of the coal proposed to be mined would be necessary to generate material to reclaim permit areas…." *See* ECF No. 243-8, p. 16 (Dec.17, 2021 *Resp. in Opp. To Receiver's Mot. For Entry of Order Authorizing Receiver to Enter into Reclamation Services Agreements*). In the intervening nine months, Plaintiffs have yet to identify how much mining could occur within the parameters they believe are imposed by Paragraph 63.

Plaintiffs' own mining engineering expert, John Morgan, states the following:

- At the Hewitt Creek No. 1 Mine, "there are exposed highwalls that require backfilling." [ECF No. 244-16, ¶ 5].
- "It cannot be determined what additional spoil will be required to achieve the regrade contours" approved for the Hewitt Creek No. 1 Surface Mine. *Id.,* ¶ 8.

Thus, Mr. Morgan acknowledges that the exposed highwalls at Hewitt Creek must be backfilled, but he concedes that he does not know how much additional spoil will be required to achieve reclamation at Hewitt Creek; and he does not purport to know where that indeterminate amount of overburden can or should come from. Without knowing how much overburden it will take to reclaim Hewitt Creek, Mr. Morgan clearly cannot offer an opinion as

---

[1] *Ibid.*

4

to how much mining at Buck Fork is necessary and incidental to the reclamation of the Hewitt Creek No. 1 Surface Mine. Most importantly, however, **Mr. Morgan never states that no amount of mining at Buck Fork is permissible.**

Notwithstanding his uncertainty regarding how much additional spoil will be required to reclaim the exposed highwalls at the Hewitt Creek No. 1 Surface Mine, Mr. Morgan still asserts that "the quantity of Excess Spoil that would be generated from implementing the mining plan authorized in the Buck Fork permit exceeds that required to reclaim the Hewitt Creek permit…." *Id.,* ¶ 9. That is, Mr. Morgan believes that, if the entirety of the Buck Fork permit were to be mined, *some* of that mining may exceed that which is necessary and incidental to reclamation at Hewitt Creek. But Mr. Morgan provides no spoil balance calculations of his own, nor does he draw a line on a map to show his idea of *how much* mining could occur at Buck Fork without running afoul of paragraph 63.

Such an equivocal statement is hardly "clear and convincing" evidence that the Receivership Estate's proposal violates a clear, definite, specific directive of the Second Modified Consent Decree. Even though Plaintiffs have yet to draw a line in the sand, they nonetheless assert confidently that the Receivership Estate's proposal would cross it—and in contemptuous fashion. Plaintiffs cannot have it both ways. They cannot refuse to take a position as to the specific scope of Paragraph 63 in this situation while also arguing that the Receivership Estate's proposal is contemptuous of Paragraph 63. Accordingly, Plaintiffs' request for a show cause order should be denied, and the dispute over exactly how much mining is necessary and incidental to reclamation should be referred to Special Master Kyles, as urged by the Receivership Estate. *See* ECF No. 243.

**B.     Plaintiffs Are Not Entitled to an Emergency Order Preserving the Status Quo.**

Plaintiffs' request for an emergency order preserving the status quo is premised on the underlying assumption that the Receivership Estate is in violation of the Second Modified Consent Decree, and an emergency order is necessary to "remedy the Receivership Estate's violations." ECF No. 245, p. 17. But, as explained above, Plaintiffs do not contend that no mining at all may be commenced, nor do they draw a line in the sand as to how much mining Paragraph 63 would allow at the Buck Fork mine permit (if, in fact Paragraph 63 applies at all or even in part). Plaintiffs' inability or refusal to take a position on the precise amount of mining at Buck Fork that is permissible under Paragraph 63 is certainly not grounds to halt any and all mining at Buck Fork and the resulting reclamation at Hewitt Creek. Having failed to establish a violation of the Second Modified Consent Decree that would rise to the level of contempt, Plaintiffs are not entitled to an emergency order halting all mining, as they put it, "unless and until the Receivership estate purges its contempt." *Id.*

Furthermore, it is clear that no "emergency" exists. Mining on the Buck Fork permit is the only practicable way to generate overburden material to facilitate and achieve reclamation of the Hewitt Creek permit. *See* Ex. 1 (Declaration of R B Doss). Mining at Buck Fork as contemplated and proposed by the Receivership Estate will not progress too rapidly for the dispute over how much mining is necessary and incidental to reclamation of Hewitt Creek to be decided by the Special Master.

The Special Receiver has calculated that ERP's reclamation contractor would produce approximately 5.7 million bank cubic yards per year from Buck Fork, and the Special Receiver has estimated that the reclamation contractor would produce approximately 7.4 million bank cubic yards between August 2022 and December 2023. *See* Ex. 1,¶ 7 (Declaration of R.B.

Doss). Although the expected ratio of bank to loose cubic yards is approximately 120%, the Special Receiver has calculated that an estimated 4.6 million loose cubic yards of overburden material generated from Buck Fork would be placed on Hewitt Creek during this time frame. Thus, according to the Special Receiver's calculations, by December of 2023, only approximately 25% of the 19 million cubic yards necessary to reclaim the Hewitt Creek permit to the currently-permitted regrade plan made effective by Incidental Boundary Revision ("IBR") No. 7[2] will have been generated from mining at Buck Fork. *Id.*, ¶ 7.

Plaintiffs and their expert make much of the fact that ERP submitted and received approval for Revision No. 8 to the Hewitt Creek permit S502799. *See* ECF No. 244-10 (Rev. No. 8) & ECF No. 244-16 (Morgan declaration). Revision No. 8[3] established a regrade configuration for the Hewitt Creek permit based on ERP's then-current (economically-based) mining and reclamation plans. *See* ECF 244-10 (Rev. No. 8). The Special Receiver has calculated that the amount of overburden fill material needed to reclaim the Hewitt Creek permit to the Revision 8 configuration would be approximately 7.5 million loose cubic yards. *See* Ex. 1, ¶ 9 (Declaration of R B Doss).

This means, that even under the Revision No. 8 regrade plan, which is not the currently-permitted plan, the estimated 4.6 million loose cubic yards of excess overburden material that could be generated from mining Buck Fork and placed on Hewitt Creek by December of 2023, is still only slightly more than 60% of the 7.5 million loose cubic yards of

---

[2] IBR No. 7 to Permit S502799 was approved by WVDEP in August 2018, after Revision No. 8 to Permit S502799 was approved in July 2016,

[3] Which revision was submitted by ERP after ERP apparently made an economic decision not to pursue mining at the unstarted Buck Fork permit and ERP voluntarily relinquished Buck Fork permit S500511 and retrieved ERP's then-posted reclamation bond for an unstarted permit,

overburden material required to reclaim to the Hewitt Creek permit (S502799) to the regrade configuration of Revision No. 8. *See* Ex. 1, ¶ 9 (Declaration of R.B. Doss).

Plaintiffs have not posited any scenario where the Receivership Estate would approach the most conservative boundaries potentially imposed by Paragraph 63 in the next year and a half. Accordingly, there is certainly no "emergency" requiring the Court's immediate intervention.

Even under the applicable preliminary injunction standard,[4] Plaintiffs would still not be entitled to relief. First, at this juncture, Plaintiffs do not even have a position on the amount of mining necessary and incidental to reclamation; thus, they cannot say that they are likely to succeed on the merits of a dispute over the scope of Paragraph 63's restrictions on mining at Buck Fork.

Second, the Receivership Estate—not Plaintiffs—will be irreparably harmed if mining is not allowed to move forward at the Buck Fork Surface Mine. The Special Receiver is charged with maximizing the Receivership Estate's assets to achieve the most environmental benefit. Without the no-cost reclamation services provided under the proposed reclamation services agreements, which Plaintiffs ask this Court to block, the Receivership Estate will be incapable of reclaiming the Hewitt Creek permit.

Moreover, the Receivership Estate would suffer un-recoupable financial harm. In the mining industry, timing is very important due to fluctuations in the coal market. The

---

[4] "A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "All four elements must be established by a 'clear showing' before the injunction will issue." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D. W. Va. 2014) (quoting *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued as to Parts I & II, *Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010)).

Receivership Estate has already delayed commencement of mining the Buck Fork Surface Mine, which is necessary to facilitate reclamation of the Hewitt Creek No. 1 Surface Mine, for over 9 months. Coal prices are currently up, but are not guaranteed to stay that way. On a long enough timeline, coal prices will decline, which would decrease the ancillary financial benefits to the Receivership Estate.

Additionally, the Hewitt Creek permit has been under an order from the WVDEP to show cause why the permit should not be revoked due to failure to follow the reclamation plan since April 26, 2021. *See* Ex. 2 (Show Cause order). If the permit is revoked, the Receivership Estate would forfeit the $2.8 performance bond associated with the permit. The Receivership Estate's only available option to abate the Show Cause order is the reclamation services agreement that is the subject of the current proceedings.

Plaintiffs, on the other hand, cannot articulate any harm if mining at Buck Fork is allowed to progress because the evidence establishes that it will be a minimum of a year and a half before mining at Buck Fork could advance beyond a point necessary and incidental to the reclamation of Hewitt Creek under any regrade scenario.

Third, the balance of equities tips in the Receivership Estate's favor, given that it will be unable to achieve its core mission of reclaiming as much of ERP Environmental Fund, Inc.'s mine lands as possible if the Court rules in Plaintiffs' favor.

Finally, the public interest lies in having over 10,000 linear feet of exposed highwall and hundreds of acres of currently disturbed mining areas being reclaimed to approximate original contour by private entities as soon as practicable and at no cost to the State's tax-funded Special Reclamation Fund.

9

Ultimately, until and unless Plaintiffs can prove otherwise, the current evidence of record establishes that mining at Buck Fork is necessary and incidental to reclaim the Hewitt Creek permit. Under the most conservative scenario—which would require a reversion to the regrade configuration of Revision No. 8—at the earliest, the mining at Buck Fork necessary and incidental to reclamation at Hewitt Creek will still not be complete for another 18 to 24 months. There is clearly ample time for the Special Master to consider the engineering/technical dispute between the Parties as to the actual amount of mining and excess spoil from Buck Fork that is necessary and incidental to the reclamation of Hewitt Creek. There is simply no reason to halt *all* mining at this juncture.

        Respectfully submitted,

        DOSS SPECIAL RECEIVER, LLC
        By Counsel

/s/ *Christopher M. Hunter*
CHRISTOPHER M. HUNTER (WVBN 9768)
JACKSON KELLY PLLC
P.O. Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY, INC., and**
**SIERRA CLUB,**

    Plaintiffs,

    and

**APPALACHIAN HEADWATERS, INC.,**

    Nonparty in whose favor
    an order has been entered,

v.                                                                                          CIVIL ACTION NO. 3:11-cv-00115

**ERP ENVIRONMENTAL FUND, INC.,**

    and

**RECEIVERSHIP ESTATE OF ERP**
**ENVIRONMENTAL FUND, INC.,**

    Defendants,

    and

**VCLF LAND TRUST, INC.,**

    Nonparty against whom an order may be enforced.

### CERTIFICATE OF SERVICE

    I, Christopher M. Hunter, do hereby certify that on August 29, 2022, I electronically filed the foregoing RESPONSE IN OPPOSITION PLAINTIFFS' MOTION FOR SHOW CAUSE ORDER AND ISSUANCE OF AN EMERGENCY ORDER PRESERVING STATUS QUO  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Derek O. Teaney
J. Michael Becher
Appalachian Mountain Advocates, Inc.
P.O. Box 507
Lewisburg, WV 24901


/s/ *Christopher M. Hunter*
CHRISTOPHER M. HUNTER