

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

WEST VIRGINIA HIGHLANDS
CONSERVANCY, INC., and
SIERRA CLUB,

    Plaintiffs,

    and

APPALACHIAN HEADWATERS, INC.,

    Nonparty in whose favor
    an order has been entered,

v.                                                          CIVIL ACTION NO. 3:11-cv-00115

ERP ENVIRONMENTAL FUND, INC.,

    and

RECEIVERSHIP ESTATE OF ERP
ENVIRONMENTAL FUND, INC.,

    Defendants,

    and

VCLF LAND TRUST, INC.,

    Nonparty against whom an order may be enforced.

### DECLARATION OF R. B. (BARRY) DOSS, PE, PS

1.     I, R. B. (Barry) Doss, am over the age of eighteen and am competent to make this sworn statement and have first-hand knowledge of the statements contained herein.

4858-1801-1952.v1

2. I am a registered professional mining engineer and licensed professional surveyor with more than 35 years of experience in permitting, environmental compliance, and solving complex environmental and engineering problems in the coal mining industry.

3. By order of Kanawha County Circuit Court, Doss Special Receiver, LLC, of which I am manager, was appointed Special Receiver over the estate of ERP Environmental Fund, Inc. ("the Estate") on March 27, 2020. In my capacity as manager of the Special Receiver, I have obtained first-hand knowledge of the matters described herein.

4. The Hewitt Creek No. 1 Surface Mine ("Hewitt Creek") currently contains approximately 10,550 linear feet of exposed highwall. A "highwall" is created when a contour cut, cross-ridge cut, or other surface mine excavation is taken along or across the mountain in order to remove overburden and expose a portion of the coal seam that lay beneath the cut. Highwalls are essentially steep rock faces that can present public safety concerns if left unreclaimed and abandoned. Highwalls must either be eliminated by blasting and excavation or reclaimed by backfilling the exposed rock face with dirt and fractured overburden material to create a grade that approximates the original contour of the mountainside. The Hewitt Creek mine also contains approximately 265 acres of permitted and previously mined areas not completely backfilled, regraded, and reclaimed to Phase I reclamation standards.

5. There is insufficient overburden material at Hewitt Creek to complete all backfilling and grading required to reclaim the entirety of the disturbed areas at the mine. Accordingly, the Special Receiver proposes to engage a reclamation contractor to complete reclamation at Hewitt Creek by mining on the adjacent Buck Fork Surface Mine permit, which will generate excess spoil that will be hauled to the Hewitt Creek mine and used to eliminate highwalls and complete backfilling to approximate original contour.

6.     Mining on the Buck Fork permit is the only practicable way to generate the necessary overburden material to facilitate and achieve reclamation of the Hewitt Creek permit in accordance with the current WVDEP-approved regrade configuration Incidental Boundary Revision ("IBR") No. 7 to Hewitt Creek permit S502799,[1] which represents the actual regrade configuration that current permit terms and conditions for Hewitt Creek acknowledge and require would result in approximate original contour reclamation of the Hewitt Creek permit. According to spoil balance calculations performed under my direction and supervision by an experience mine engineer, the amount of overburden fill material needed to reclaim the Hewitt Creek permit to the configuration of IBR No. 7 would be approximately 19 million loose cubic yards.

7.     Mining at Buck Fork as contemplated and proposed by the receivership will not progress quickly. I estimate that the reclamation contractor will nominally produce approximately 5.7 million bank cubic yards per year from Buck Fork, and inclusive of a production ramp up period, the reclamation contractor would produce approximately 7.4 million bank cubic yards between August 2022 and December 2023. Although the expected ratio of bank to loose cubic yards is approximately 120%, I have calculated that an estimated 4.6 million loose cubic yards of overburden material generated from Buck Fork would be able to be placed on Hewitt Creek during this time frame. This is only approximately 25% of the 19 million loose cubic yards of overburden material required to reclaim Hewitt Creek to the regrade configuration of the currently approved permit conditions of IBR No. 7 to Hewitt Creek permit S502799.

8.     John Morgan states in his declaration that there is uncertainty regarding which regrade contours are supposed to be achieved at Hewitt Creek. He refers to the regrade plan approved as

---

[1] The surface mining permit for the Hewitt Creek Surface Mine currently authorizes the placement of up to 20 million cubic yards of material from the Buck Fork Surface Mine onto the Hewitt Creek Surface Mine.

part of Revision No. 8 to Permit S502799, which was approved by WVDEP in July 2016. Revision No. 8 apparently established a regrade configuration for the Hewitt Creek permit based on ERP's then-current (economically-based) mining and reclamation plans. It was preempted/replaced by the regrade plan approved as part of IBR No. 7 to Permit S502799 in August 2018, which means there is no dispute as to the regrade plan that the Receivership Estate must follow in reclaiming Hewitt Creek: IBR No. 7—not Revision No. 8—contains the currently effective/permitted regrade plan.

9. However, even assuming Revision No. 8, which allowed ERP to backfill and regrade Hewitt Creek highwalls to a different and slightly lower elevation than IBR No. 7, were effective, I have calculated that the amount of overburden fill material needed to reclaim the Hewitt Creek permit to the Revision 8 configuration would be approximately 7.5 million loose cubic yards. Thus, using the estimated pace of mining/excess spoil generation discuss above, the amount of loose cubic yards of overburden material that would be generated by December of 2023 is still only approximately 60% of the overburden material required to reclaim Hewitt Creek to the regrade configuration approved in Revision No. 8.

10. I estimate as-is estimated reclamation cost for the Hewitt Creek No. 1 Mine to be approximately $11.8 million. This amount of cash greatly exceeds that which the Receivership Estate currently has on-hand (approximately $112,600 for the reporting period ending August 26, 2022), and it is very unlikely that future Receivership Estate asset sales will generate anywhere near $11.8 million in useable funds. Without both the excess spoil generated by mining the Buck Fork Surface Mine and the no-cost reclamation services provided in conjunction with mining at Buck Fork, the Receivership will be incapable of reclaiming the Hewitt Creek mine.

Accordingly, the mining proposed at Buck Fork is necessary and incidental to reclamation of Hewitt Creek from both an engineering and business standpoint.

11.     I declare under penalty of perjury that the foregoing is true and correct.

                                                                               _____

                                                                               R. B. (BARRY) DOSS
                                                                               Doss Special Receiver, LLC

                                                                               Special Receiver for
                                                                               ERP Environmental Fund, Inc.