# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

WEST VIRGINIA HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

    Plaintiffs,

v.                                          CIVIL ACTION NO.  3:11-0115

ERP ENVIRONMENTAL FUND, INC. and
RECEIVERSHIP ESTATE OF
ERP ENVIRONMENTAL FUND, INC.,

    Defendants,

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Referral of Dispute Under the Second Modified Consent Decree to the Special Master. ECF No. 243. For the reasons stated below, this Motion is **DENIED**. *Id.*

Also pending is Plaintiff's Emergency Motion for Order to Show Cause Why the Receivership Estate of ERP Environmental Fund, Inc., Acting By and Through Doss Special Receiver, LLC, Should Not Be Held in Civil Contempt and for Issuance of an Emergency Order Preserving the Status Quo. ECF No. 244. For the reasons stated below, this Motion is **DENIED**. *Id.* Regarding the first portion of this Motion, the Court declines to issue an order to show cause but concludes that Special Receiver's proposed mining and reclamation plan violates the Second Modified Consent Decree. Regarding the second portion, the motion for an order to maintain the status quo is denied as moot, though the Court **ORDERS** Special Receiver to cease all surface mining activities at Buck Fork Surface Mine.

## BACKGROUND

The issue here centers on whether surface mining is permissible at Buck Fork Surface Mine (Buck Fork) when some of the spoil material would be used to reclaim Hewitt Creek No. 1 Mine (Hewitt Creek). The relationship between Environmental Groups, Plaintiffs in this action, and ERP and Special Receiver, the Defendants, stems from the entry of the Second Modified Consent Decree. This decree prohibits surface mining at all sites formerly owned or operated by Patriot Coal Corporation or one of its subsidiaries except that mining which is "necessary and incidental to reclamation." *Second Modified Consent Decree*, ECF No. 105 ¶ 63. Special Receiver has entered into a reclamation services agreement and obtained West Virginia Department of Environmental Protection (WVDEP) permits to authorize mining at Buck Fork, which would also generate spoil to reclaim Hewitt Creek.

The parties lodged the decree on October 7, 2016. *Id.* Through it, ERP assumed the obligations of Patriot Coal, its predecessor in interest. *Id.* The modified decree added a new term, paragraph 63, which prohibits "Surface Mining at any location formerly owned or operated by Patriot Coal or one of [its] subsidiaries, except that Surface Mining which is necessary and incidental to reclamation." *Id.* While ERP was permitted to acquire permits for existing surface mines under this decree, any acquisition remained subject to limitations in paragraph 63. *Id.* ¶ 54. The Second Modified Consent Decree binds ERP and any of its successors, including Special Receiver. *Id.* ¶ 24.

<u>Hewitt Creek and Buck Fork</u>

Hewitt Creek and Buck Fork are both part of the Corridor G complex. *Pl.'s Mem. in Support*, ECF No. 245 at 4. Hewitt Creek has been owned and operated by different entities over

the years. Prior to Patriot Coal's bankruptcy, one of its subsidiaries, Hobet Mining, Inc., held a permit to mine Hewitt Creek. *Id.* Hobet Mining conducted mining at the site from 2002 until 2012. ECF No. 243 at 4. The permit was inactive and no surface mining occurred there from 2012 to 2015. *Id.* ERP took over the permit in 2016 and engaged in mining and reclamation activity until it ran out of funding in late 2019. *Id.*

Buck Fork has also been passed between entities over the years. ECF No. 243 at 5. Another Patriot Coal subsidiary, Coyote Coal, held a surface mining permit and operated there from March 2012 to July 2016. ECF No. 245 at 4. Following Patriot Coal's bankruptcy, ERP received the permit for Buck Fork from Coyote Coal. *Id.* On July 19, 2016, ERP relinquished and surrendered the Buck Fork mine permit. ECF No. 244-10. Thus, when the Court lodged the Second Modified Consent Decree in October 2016, ERP had relinquished the Buck Fork permit. ECF No. 105.

Parties to this action

Plaintiffs—Ohio Valley Environmental Coalition, West Virginia Highlands Conservancy, and Sierra Club—initially instituted this action against Defendants in February 2011, alleging violations of the Clean Water Act, 33 U.S.C. § 1251-1387, and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201-1328. *Complaint*, ECF No. 1. In 2021, the Court granted Ohio Valley Environmental Coalition's motion to withdraw from the action. *Order Granting Rule 21 Motion*, ECF No. 236. Defendants in this action were initially various coal companies, including Patriot Coal Corporation, Apogee Coal Company, Catenary Coal Company, and Hobet Mining LLC. ECF No. 1. Following Patriot Coal's bankruptcy, ERP was substituted as a party in 2016. *Order on Motion to Substitute Parties*, ECF No. 97.

Special Receiver emerged as a successor to ERP in 2020. WVDEP had sued ERP in the Kanawha County Circuit Court, alleging the company lacked liquid assets and seeking to appoint a receiver to manage ERP's assets, business, and operations. Complaint, *Ward v. ERP Environmental Fund, Inc.*, No. 20-C-282 (Kan. Co. Cir. Ct). A temporary receiver, Doss Special Receiver, LLC., was appointed by temporary order on March 27, 2020, *id.*, and reaffirmed in the Business Court Division later that year, *Preliminary Injunction and Order Preliminarily Appointing a Special Receiver for Defendant's Property, Assets, and Operations* (Dec 22, 2020). Since its appointment, Special Receiver has raised funds to provide for operating expenses, enabling numerous reclamation, remediation, and water monitoring and treatment projects, among others. ECF No. 243 at 3.

The proposed reclamation plan

Special Receiver has entered into a reclamation services agreement to mine coal at Buck Fork and use excess overburden to reclaim Hewitt Creek. *Id.* at 2. ERP had, at one point, the same plan. Prior to 2016, WVDEP had issued a permit that accounted for placing excess overburden from Buck Fork onto Hewitt Creek. ECF No. 244-12. In July 2016, WVDEP revised this plan via Incidental Boundary Revision (IBR) 8, updating the previous regrade and drainage configuration at Hewitt Creek to no longer rely on excess overburden from Buck Fork. ECF Nos. 244-11, 244-12. This revision was contemporaneous with ERP relinquishing the Buck Fork permit. ECF No. 244-10. Attachment 6 to IBR 8 specifies this change was "due to the applicant having no current plans to mine Buck Fork" and notes that a subsequent revision would be required should "economic conditions change and the applicant [] want to proceed with mining." ECF No. 244-12.

However, approximately two years later, in August 2018, ERP obtained IBR 7, which revised the drainage/regrade configuration to once again account for placing excess overburden from Buck Fork on Hewitt Creek. ECF No. 244-15. Also in 2018, ERP re-permitted the previously-relinquished Buck Fork site to allow for mining without Plaintiff's knowledge or consent. ECF No. 245 at 5; ECF Nos. 244-12, 244-13.

After Special Receiver became a successor to ERP, it took steps to advance this reclamation project. In November 2021, it moved in Kanawha County Circuit Court to authorize entry into a reclamation services agreement. ECF No. 244-16. The court granted this motion in January 2022. ECF No. 243-7. The court's order noted that nothing in it should be construed to "modify or otherwise affect the terms of the Second Modified Consent Decree." *Id*. The agreement would allow a reclamation services contractor to mine coal at Buck Fork and use excess spoil to reclaim Hewitt Creek at no extra cost. ECF No. 243 at 5.

Special Receiver continued to implement the proposed reclamation plan. In April 2022, it obtained an Operator Assignment from WVDEP, which named an operator for both Hewitt Creek and Buck Fork. ECF No. 245 at 7. On August 25, 2022, the Receiver notified Plaintiffs that it would execute a reclamation services agreement as soon as that afternoon, and that the effective date of the agreement would be August 30, 2022. *Id.* at 8.

Defendant's Motion to refer this issue and Plaintiff's Motion for show cause and emergency orders followed shortly thereafter. ECF Nos. 243, 244. Defendant argues the reclamation services agreement for Buck Fork constitutes surface mining necessary and incidental to reclamation because: (1) state law requires reclaiming highwall areas to promote public safety, and (2) the reclamation services contract allows for no-cost reclamation, which comports with the

Special Receiver's mission to maximize ERP's limited resources while achieving the most environmental benefit possible. Additionally, because they argue this matter involves questions of technical and engineering expertise, Defendants move to refer this dispute to the Special Master.

Plaintiffs counter that any mining at Buck Fork is merely convenient, rather than necessary and incidental, to reclamation at Hewitt Creek. Further, they argue that carrying out the terms of the reclamation services agreement—and in fact, entering into the agreement at all—violates the terms of the Second Modified Consent Decree such that it warrants a finding of contempt. This opinion addresses the motions in order of submission.

## LEGAL STANDARD

Because this issue has the requisite adverseness to constitute a case or controversy under Article III of the U.S. Constitution, the Court has authority to hear it. In *United States v. Windsor*, 570 U.S. 744 (2013), the Supreme Court clarified that "sufficient adverseness" is necessary to provide an adequate basis for jurisdiction. *Id.* at 759. Adverseness is present where "a judgment issued by this court [has] some effect in the world, that it will cause real or immediate action or inaction by one of the parties that otherwise would not occur." *Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 403 (4th Cir. 2022) (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196-97 (2020)).

Here, even if Defendants were correct in arguing they did not violate the Second Modified Consent Decree in pursuing the proposed reclamation plan, the Court would have authority to hear this issue because its judgment bears on the parties' actions. Based on this Court's holding, the parties will either implement the proposed plan or be forced to abandon it. A judgment will therefore spur action or inaction by Defendants.

In addition to the issue being a live case or controversy, this Court has equitable authority to enforce the Second Modified Consent Decree. "It has long been recognized the courts are vested with inherent power to modify injunctions they have issued." *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825 (4th Cir. 2005). This authority extends to consent decrees, which operate the same as injunctions in that they regulate future conduct. *Id.*; *see also Frew v. Hawkins,* 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.").[1] It does not matter that the Second Modified Consent Decree was lodged six years ago: "so long as the injunction endures, the district court's enforcement authority can always be reawakened." *Brewster v. Dukakis,* 3 F.3d 488, 491 (1st Cir. 1993) (internal citation and quotation omitted); *Hook v. Arizona Dep't of Corr.,* 972 F.2d 1012, 1014 (9th Cir.1992) (holding that district court had jurisdiction over motion to show cause for violating a consent decree even though the case had been closed for sixteen years).

Finally, the parties have agreed to this Court's authority to enforce the Second Modified Decree. In paragraph 23 of the decree, the parties expressly consented to this venue and this Court's jurisdiction over both the decree and any actions to enforce it. ECF No. 105 ¶ 23.

## ANALYSIS

The Court has the authority to determine the issue itself or to refer it to a special master. Pursuant to its inherent authority to develop post-verdict relief, a court can appoint a special master to enforce a judicial decree, even when the parties do not consent to it. *Trull v. Dayco Products, LLC*, 178 Fed App'x 247, 251 (4th Cir. 2006). Federal Rule of Civil Procedure 53(a)(1)(C)

---

[1] In their briefing, both parties reference the standard for a preliminary injunction. However, because of the Court's equitable authority to enforce its judgments, it need not engage in this analysis. ECF No. 245 at 17-18; ECF No. 247 at 8.

similarly permits courts to refer posttrial matters to special masters when they cannot be "effectively and timely" addressed by a district court or magistrate judge. The parties have also agreed to appointment of the Special Master—paragraph 96 of the Second Modified Consent Decree provides the Special Master with "authority to carry out his or her obligations," which include but are not limited to deciding "any other specific dispute or issue regarding request for relief from the terms . . . that . . . the Court may refer to the Special Master." ECF No. 105 ¶ 96(k).

The Court declines to refer the issue to the Special Master. The Court sees no reason it cannot expeditiously resolve the matter. Interpreting contracts also lies within the duty of the Court and is not within the Special Master's particular area of expertise.

<u>1. The proposed plan authorizes surface mining beyond that which is "necessary and incidental" to reclamation.</u>

Next, the Court addresses the issue of whether Special Receiver's proposal violates the Second Modified Consent Decree. Here, the issue centers on whether the proposed plan at Buck Fork authorizes surface mining that is not "necessary and incidental to reclamation" at a site formerly owned or operated by Patriot Coal or one of its subsidiaries. ECF No. 105 ¶ 63. Plaintiffs claim that ERP's abandonment and return to its plan to use Buck Fork spoil to reclaim Hewitt Creek, as well as IBR 8's reference to economic conditions, indicate that mining at Buck Fork is not necessary or incidental to reclamation at Hewitt Creek. ECF No. 245. Defendants counter that the nature of the Hewitt Creek highwall necessitates the proposed project to protect the public safety and that due to financial constraints, reclamation can only be achieved via surface mining at Buck Fork. ECF Nos. 243, 247.

The standard for interpreting consent decrees is clear: courts apply the principles of contract interpretation. *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 462-63 (4th Cir.

2020); *Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir. 1993) (citing *Willie M. v. Hunt*, 657 F.2d 55. 59-60 (4th Cir. 1981). "[T]he district court's authority is thus constrained by the language of the decree." *Consumer Financial Protection*, 957 F.3d at 463. Courts can, however, consider factors such as the circumstances surrounding formation of the decree, technical meanings words may have had to the parties, and other documents incorporated into the decree. *Willie M. Hunt*, 657 F.2d at 60 (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 239 n.11 (1974)).

While they have authority to order parties to perform duties within a decree's four corners, *Johnson*, 987 F.2d. at 1049 (quoting *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984), districts courts cannot confuse their power to enforce consent decrees with the power to "enlarge or diminish the duties on which the parties have agreed and which the court has approved." *Id.* at 1046. Further, because a consent decree is the product of negotiation and subsequent judicial approval, it cannot be described as having a "purpose" upon which courts can rely when determining its scope. *Consumer Fin. Prot.*, 957 F.3d at 463. Rather, a consent decree is the product of negotiations between parties, each of whom has their own, often opposing purposes. *Willie M. Hunt*, 657 F.3d at 59 (citing *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)).

Because the Second Modified Consent Decree does not, in its body, define "surface mining necessary and incidental to reclamation," the inquiry starts with the decree's plain language. The requirement is conjunctive—surface mining must be both necessary *and* incidental to reclamation. In addition to being "absolutely needed or required," *Necessary*, MERRIAM-WEBSTER ONLINE DICTIONARY (Aug 31, 2022), it must also be "likely to ensue as a chance or minor consequence." *Incidental*, MERRIAM-WEBSTER ONLINE DICTIONARY (Aug 31, 2022). The surface mining at Buck

Fork, then, violates the Second Modified Consent Decree if it is more than a minor consequence of reclaiming Hewitt Creek or if it is not required to reclaim the site.

ERP's abandonment and return to a plan to mine Buck Fork, as well as IBR 8, demonstrate that Hewitt Creek can be reclaimed sans spoil from Buck Fork. ERP and WVDEP's revision of the Hewitt Creek reclamation plan in 2016 shows material from Buck Fork is not required to reclaim the site. Likewise, IBR 8 includes a rationale that indicates the proposed surface mining is not necessary and incidental to reclamation. IBR 8's reference to changing "economic conditions," shows the project arose mainly, if not solely, from financial considerations, not the need and desire to reclaim Hewitt Creek. ECF No. 244-12. If financial benefits serve as the main impetus for the proposed mining and reclamation plan, it would render the reclamation incidental to the mining, rather than the other way around.

Defendant's Motion similarly shows that both the focus and the impetus of the proposed plan is financial. Though Defendant's instant Motion briefly mentions that West Virginia law and public safety require reclamation, it focuses on the need to raise operating funds for reclamation at Hewitt Creek and "approximately 100 other ERP permits across the state." ECF No. 243. at 5. This does not meet the plain meaning of "necessary and incidental." Instead, it suggests that surface mining at Buck Fork is not required to generate material for reclamation. The financial benefits of surface mining is the project's focus, rather than it being a necessary and incidental consequence of reclamation.

The Court concludes that classifying surface mining at Buck Fork as necessary and incidental to reclamation at Hewitt Creek would also be contrary to the express agreement in the consent decree. Take, for example, the fact that sometime in 2016, ERP placed excess spoil from

Hewitt Creek in a valley fill instead of using it to reclaim the site. Allowing Defendant to now remedy a past transgression with more mining would effectively nullify paragraph 63 of the Second Modified Consent Decree. If beneficial economic conditions made mining coal on former Patriot Coal properties more desirable, Defendant would be allowed to mine at any location, regardless of whether reclamation could have been achieved through means that better conformed with the Second Modified Consent Decree. Ultimately, allowing additional surface mining to solve a problem Defendant's predecessor created would clearly deprive Plaintiffs of the benefit of what they bargained for in the decree.

Nor does the Selenium Settlement Agreement (Agreement), incorporated into the Second Modified Consent Decree by reference, conflict with the Court's interpretation. The Agreement defines "Surface Mining Necessary for and Incidental to Reclamation" as any "coal extraction performed in conjunction with, and to offset the cost of, the removal of overburden where the disturbance would not otherwise occur but for the need to generate material for the reclamation of highwalls, compliance with approximate original contour standards, or to meet other SMCRA reclamation obligations." ECF No. 105 at 85.

"But for" plays an important role in this definition: while cost may factor into determining when surface mining may be necessary and incidental to reclamation, it can only enter the equation where mining occurs with the main purpose of generating reclamation material. Here, the proposal does not meet the Agreement's definition of "surface mining necessary and incidental to reclamation" because it authorizes mining outside the need to generate material. The Court does not doubt that Special Receiver contends with complicated financial circumstances. However, these circumstances cannot affect the Court's analysis where Plaintiffs are entitled to receive the

benefit of their bargain and where the disturbance extends beyond the need to generate reclamation material.

Regarding relief, Plaintiffs request that the Court grant their emergency motion to preserve the status quo. ECF No. 244. At this point in the proceedings, the Court need not an issue an emergency order to maintain the status quo. The Court, in an order on August 30, 2022, instructed Defendant not to engage surface mining activity at Buck Fork pending further instruction. ECF No. 251. Later, the Court ordered the Defendant to cease any actions that would lead to surface mining at Buck Fork. ECF No. 252. Given the Court has now clarified the bounds of the Second Modified Consent Decree and Defendants will be in contempt should they continue with their proposed mining and reclamation plan, it denies Plaintiff's request for an order to maintain the status quo as moot.

2. Violation of the Second Modified Consent Decree does not warrant an order to show cause

Plaintiffs additionally allege the Special Receiver is in civil contempt of the Second Modified Consent Decree. They provide two main bases for this claim. First, Special Receiver allegedly engaged in indirect contempt by stepping into ERP's shoes and taking on all existing claims against it, including Plaintiff's claim for relief when ERP obtained the Buck Fork permit in violation of paragraphs 54 and 63 of the decree in 2018. ECF No. 245 at 10. Second, Special Receiver allegedly engaged in direct contempt by obtaining permission from the Kanawha County Circuit Court to authorize mining at Buck Fork, assigning its rights to operate at Buck Fork via WVDEP operating agreements, and ultimately executing the reclamation services agreement. *Id.*

The Court denies Plaintiff's motion for a show cause order because it has not established contempt by clear and convincing evidence. ECF No. 44. Civil contempt is warranted where an order of the court "set[s] forth in specific detail an unequivocal command" and a party violates

that order. *In re Gen. Motors Corp.*, 61 F.3d at 258 (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1978). "A single violation [of an order] is sufficient to support a finding of contempt." *Consumer Fin. Prot. Bureau*, 957 F.3d at 461 (quoting *Rainbow School, Inc. v. Rainbow Early Education Holding LLC*, 887 F.3d 610, 618 (4th Cir. 2018)).

The moving party initially bears the burden of proving contempt by clear and convincing evidence. *In re Gen. Motors Corp.,* 61 F.3d 256, 258 (4th Cir. 1995). In moving for contempt, a party must establish four elements: (1) a valid decree exists and the alleged contemnor had actual or constructive knowledge of it; (2) the decree was in the movant's favor; (3) the alleged contemnor violated the terms of the decree and had knowledge of the violations; and (4) the violation harmed the movant. *De Simone v. VSL Pharmaceuticals*, 36 F.4th 518, 529 (4th Cir. 2022). "Because the contempt power is a substantial one, it should be used sparingly and not be lightly invoked." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989).

Here, Plaintiffs have not sufficiently established the third or arguably even the fourth element of contempt—that Special Receiver knowingly violated the decree and harmed Plaintiff in the process. First, IBR 7 was obtained before Special Receiver stepped into ERP's shoes. Second, the Special Receiver put Plaintiff on notice as to its intent to mine Buck Fork and conduct reclamation at Hewitt Creek. Faced with Plaintiff's opposition, Special Receiver also sought to clarify the bounds of the decree and avoid violating the consent decree by moving to refer this issue to the Special Master. Notably, Special Receiver did so before actually undertaking any mining. Defendant's conduct, therefore, does not warrant a finding of contempt.

## CONCLUSION

The Court **DENIES** Defendant's motion to refer this issue to the Special Master because the Court can timely and effectively address it. ECF No. 243.

The Court **DENIES** Plaintiff's Emergency Motion for Order to Show Cause Why the Receivership Estate of ERP Environmental Fund, Inc., Acting By and Through Doss Special Receiver, LLC, Should Not Be Held in Civil Contempt and for Issuance of an Emergency Order Preserving the Status Quo. ECF No. 244. Regarding the first portion of this Motion, the Court concludes the violation does not warrant a for-cause order because Plaintiffs have not established by clear and convincing evidence that Special Receiver knowingly violated the Second Modified Consent Decree. Regarding the second portion, the motion for an order to maintain the status quo is denied as moot.

However, the Court **ORDERS** that Defendant cease any plans to conduct surface mining at Buck Fork, as it is in violation of paragraph 63 of the Second Modified Consent Decree. In obtaining operator assignments and entering into a reclamation services agreement, Defendants authorized mining at Buck Fork beyond that which is "necessary and incidental to reclamation."

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:  October 5, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE