IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WEST VIRGINIA HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

    Plaintiffs,

v.                                      CIVIL ACTION NO.  3:11-0115

ERP ENVIRONMENTAL FUND, INC. and
RECEIVERSHIP ESTATE OF
ERP ENVIRONMENTAL FUND, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two cross-motions: Plaintiffs' Motion to Enforce the Second Modified Consent Decree, ECF No. 256, and Defendant's Motion to Resolve Dispute Under the Second Modified Consent Decree, ECF No. 258. For the reasons below, the Court **GRANTS IN PART** Plaintiffs' Motion, ECF No. 256, and **DENIES IN PART** Defendant's Motion, ECF No. 258.

### BACKGROUND

These Motions center on whether the Second Modified Consent Decree (Consent Decree) between the parties permits Defendant Special Receiver to transfer permits and execute coal mining subleases at Chestnut Oak Surface Mine (Chestnut Oak). Lodged on October 7, 2016, the Consent Decree prohibits "Surface Mining at any location formerly owned or operated by Patriot Coal or one of [its] subsidiaries, except that Surface Mining which is necessary and incidental to

-1-

reclamation." Second Modified Consent Decree at paragraph 63, ECF No. 105. While the Consent Decree allows Defendant to acquire permits for existing surface mines, acquisitions remain subject to the limitations in paragraph 63. *Id.* ¶ 54. Special Receiver became subject to the Consent Decree as a successor-in-interest to ERP in 2020, pursuant to an appointment by the Kanawha County Circuit Court and the Business Court Division. Complaint, *Ward v. ERP Env't Fund, Inc.*, No. 20-C-282 (Kan. Co. Cir. Ct); Preliminary Injunction and Order Preliminarily Appointing a Special Receiver for Defendant's Property, Assets, and Operations (Dec 22, 2020).

This is the second dispute that has arisen between the parties of late. In the first dispute, Defendant Special Receiver obtained authorization from Kanawha County Circuit Court to enter into a reclamation services agreement—one that would allow a contractor to mine coal at Buck Fork Surface Mine and use excess spoil to reclaim another site, Hewitt Creek Surface Mine. Mem. Op. and Order at 5, ECF No. 253. Defendant argued the reclamation services agreement was permissible under the Consent Decree because it constituted surface mining necessary and incidental to reclamation. Mot. for Referral of Dispute Under Second Modified Consent Decree, ECF No. 243. In support, Defendant noted that not only does state law require reclaiming highwall areas, but also that the reclamation services contract would allow for no-cost reclamation at the site. *Id.* at 5-6. Ultimately, however, the Court agreed with Plaintiffs that mining at Buck Fork was merely convenient for—rather than necessary and incidental to—reclamation at Hewitt Creek. Mem. Op. and Order, ECF No. 253.On October 5, 2022, the Court issued a memorandum opinion and order finding that Defendant had authorized mining at Buck Fork beyond that which was "necessary and incidental to reclamation," in violation of the Consent Decree. *Id.* at 14. While the

Court did not hold Defendant in contempt for this violation, it ordered Defendant to cease any plans to conduct surface mining at Buck Fork Surface Mine. *Id.*

Shortly thereafter, on October 24, 2022, the Special Receiver sought authorization from the Kanawha County Circuit Court to transfer mining permit S503308 and execute coal subleases at Chestnut Oak. Mot. of Receiver for Entry of Order Auth. Receiver to Enter into Permit Transfer Agreement at 1, ECF No. 256-1. Chestnut Oak was mined by a Patriot Coal subsidiary, Hobet Mining LLC, from roughly 2011 until 2016. Mem. in Supp. of Def.'s Mot. to Resolve Dispute Under the Second Modified Consent Decree at 3, ECF No. 259; Mem. in Supp. of Pls.' Mot. to Enforce the Second Modified Consent Decree at 5, ECF No. 257. According to Special Receiver, however, the site is currently unreclaimed, contains thousands of feet of open highwall, and is subject to a notice of violation from the WVDEP for failure to reclaim. Mot. of Receiver for Entry of Order Auth. Receiver to Enter into Permit Transfer Agreement ¶ 1, ECF No. 256-1.

In return for the transfer, Special Receiver seeks no more than $100,000 and an overriding royalty of 2% or greater on any coal mined at the site. *Id.* ¶ 3. Special Receiver argues this transfer would be in the estate's best interest—the estate lacks the resources and ability to reclaim the site, and the transaction would offload reclamation liabilities at Chestnut Oak and offset reclamation costs at other ERP permit sites. *Id.* ¶¶ 5, 7. In its motion in the Kanawha Circuit Court, Special Receiver also requested that a third-party acquiring the permit and subleases not be subject to "any of ERP's preexisting agreements of contracts, nor shall the third-party's property be subject to any of the preexisting liens, encumbrances, or claims against ERP's property." *Id.* ¶ 9.

The Kanawha County Circuit Court granted ERP's motion on November 16, 2022, though it noted that "nothing in this Order should be construed to modify or otherwise affect the terms or

conditions of the Second Modified Consent Decree, or its applicability or enforceability." Order Granting Mot. of Receiver for Entry of Order Auth. Receiver to Enter into Permit Transfer Agreement at 3, ECF No. 256-2. After the parties unsuccessfully attempted to resolve the dispute, the instant Motions followed. Mem. in Supp. of Pls.' Mot. to Enforce the Second Modified Consent Decree at 4, ECF No. 257; Mem. in Supp. of Def.'s Mot. to Resolve Dispute Under the Second Modified Consent Decree at 4, ECF No. 259.

This proposed plan raises two issues under the Consent Decree: 1) whether the prohibition on surface mining in paragraph 63 is binding upon a third-party permit transferees, and 2) whether the proposed mining plan at Chestnut Oak is "necessary and incidental" to reclamation. As to the first issue, Plaintiffs argue that the Consent Decree is binding on any subsequent permit transferees, because the Decree binds "[ERP] and any of its respective successors and/or assigns." Mem. in Supp. of Pls.' Mot. to Enforce the Second Modified Consent Decree at 6, ECF No. 257 (quoting Second Modified Consent Decree ¶ 24, ECF No. 105); *see also* Second Modified Consent Decree ¶ 25, ECF No. 105 ("[A]ll transferees, subsequent owners, and operators shall be bound by the terms of this Second Modified Consent Decree, consistent with applicable law.") They contend that though the Consent Decree does not define "successor and assigns," any contemplated permit transferees would fall under the definition provided in the state and federal Surface Mining Control and Reclamation Act (SMRA) and the West Virginia Surface Coal Mining and Reclamation Act (WVSCMRA). Mem. in Supp. of Pls.' Mot. to Enforce the Second Modified Consent Decree at 6, ECF No. 257. Finally, Plaintiff point to Federal Rule of Civil Procedure 65(d)(2) for the proposition that the injunction is binding on any permit transferee as a person acting in concert with Special Receiver. *Id.* at 7.

Defendant responds that any non-party accepting transfer of the Chestnut Oak permit would not be bound by the Consent Decree—he alleges the permit does not constitute a "Facility" and, even so, the Consent Decree only requires transferees of facilities to abide by a set of provisions that do not include paragraph 63. Mem. in Supp. of Def.'s Mot. to Resolve Dispute Under the Second Modified Consent Decree at 5-10, ECF No. 259. Furthermore, Special Receiver argues that any third-party transferees would not constitute a "successor and/or assign" under contract law or as construed in light of the overall Consent Decree, meaning that the Consent Decree is not binding on them. *Id.* at 11-12.

As to the second issue—whether the proposed surface mining at Chestnut Oak is necessary and incidental to reclamation—Plaintiffs allege that the proposed mining is not permissible under the Consent Decree because it has a primary impetus to generate revenue. Mem. in Supp. of Pls.' Mot. to Enforce the Second Modified Consent Decree at 10, ECF No. 257. Defendant, in turn, responds that even if paragraph 63 did apply to a third-party transferee, there is still no danger of violating the Consent Decree because the proposed surface mining is necessary and incidental to reclamation.  Mem. in Supp. of Def.'s Mot. to Resolve Dispute Under the Second Modified Consent Decree at 13, ECF No. 259. At this stage in proceedings, the Court still has questions of fact as to the contents of permit revisions at the site and, ultimately, whether any proposed surface mining would be constrained to that which is necessary and incidental to reclamation. Because it lacks the information necessary to determine the outcome of this issue, the Court defers disposition on this issue pending an evidentiary hearing.

**LEGAL STANDARD**

The Court has equitable authority to enforce the Consent Decree. "It has long been recognized the courts are vested with inherent power to modify injunctions they have issued." *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825 (4th Cir. 2005). This authority extends to consent decrees, which operate the same as injunctions in that they regulate future conduct. *Id.*; *see also Frew v. Hawkins,* 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced."). It does not matter that the Consent Decree was lodged more than six years ago: "so long as the injunction endures, the district court's enforcement authority can always be reawakened." *Brewster v. Dukakis,* 3 F.3d 488, 491 (1st Cir. 1993) (internal citation and quotation omitted); *Hook v. Arizona Dep't of Corr.,* 972 F.2d 1012, 1014 (9th Cir.1992) (holding that district court had jurisdiction over motion to show cause for violating a consent decree even though the case had been closed for sixteen years). Further, by entering into the Consent Decree, the parties expressly consented to venue and jurisdiction in this Court over any actions to enforce it. Second Modified Consent Decree ¶ 23, ECF No. 105.

There is also sufficient adverseness. Adverseness is present where "a judgment issued by this court [has] some effect in the world, that it will cause real or immediate action or inaction by one of the parties that otherwise would not occur." *Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 403 (4th Cir. 2022) (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196-97 (2020)). Here, similar to the dispute involving Buck Fork, the Court's judgment will bear on the parties' actions, as it will allow Defendant to implement the proposed plan or be forced to abandon it.

## ANALYSIS

As to the first issue, the Court finds that any third-party transferee of the Chestnut Oak surface mining permit and sub-leases will be bound by the terms of the Consent Decree. Based on the plain language of the Consent Decree, the Court finds that the Consent Decree applies to third-party permit transferees as "successor and/or assigns" of Defendant. The Consent Decree provides that "[t]he provisions of this Second Modified Consent Decree apply to and are binding upon . . . [ERP] and any of its respective successors and/or assigns." Second Modified Consent Decree ¶ 24, ECF No. 105. The parties ultimately dispute how broadly "successors and assigns" applies.

When interpreting a consent decree, courts apply the principles of contract interpretation. *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 462-63 (4th Cir. 2020); *Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir. 1993) (citing *Willie M. v. Hunt*, 657 F.2d 55. 59-60 (4th Cir. 1981). While courts can consider factors such as the circumstances surrounding formation of the decree, technical meanings words may have had to the parties, and other documents incorporated into the decree, *Willie M. Hunt*, 657 F.2d at 60 (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 239 n.11 (1974)), their authority is ultimately "constrained by the language of the decree." *Consumer Financial Protection*, 957 F.3d at 463.

The Consent Decree supplies a clear reference for defining any unclear terms: "[t]erms used . . . that are defined in the CWA [Clean Water Act], SMCRA or in regulations issued pursuant thereto shall have the meanings assigned to them therein, unless otherwise provided in this Decree." *Id.* ¶ 27. Therefore, reflective of its subject matter, any terms not explicitly defined in the Consent Decree should be interpreted in accordance with their definitions under relevant statutes, including those related to mining and reclamation. This is in keeping with the principles of contract

interpretation, which refer to the applicable industry to ascertain the meaning of ambiguous terms. *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 443 (2015) ("To determine what the contracting parties intended, a court must examine the entire agreement in light of relevant industry-specific 'customs, practices, usages, and terminology.'").

Because the Consent Decree does not define "successor" or "assigns," the Court turns to the CWA, SMCRA, and regulations issued pursuant to them. Regulations under SMCRA and WVSCMRA define "successor in interest" as "any person who succeeds to rights granted under a permit, by transfer, assignment, or sale of those rights." 30 C.F.R. § 701.5; 38 C.S.R. § 2-2.122. Additionally, WVSCMRA refers to the transferee of a mining permit as a "successor." 38 C.S.R. § 2-3.25.a.6. ("The successor shall immediately notify the Secretary upon consummation of the transfer, assignment, or sale.").

In light of these definitions, SMCRA and WVSCMRA indicate that a third-party permit transferee would constitute at least a "successor." SMCRA, for example, encompasses a prospective third-party transferee of the Chestnut Oak permit, as the third party would be succeeding to the right to mine under a permit. Likewise, WVSCMRA refers to the transferee of a mining permit as a "successor," clearly indicating that a prospective transferee of the Chestnut Oak permit would be subject to the terms of the Consent Decree. While the Court declines to set forth a specific definition for the term "successor and/or assigns," it finds that based on applicable law, the term encompasses a prospective third-party transferee of a mining permit.

Defendant, however, argues that "successor in interest" and "successor and/or assigns" are not interchangeable. He points to the terms as defined by Black's Law Dictionary and by other district and circuit courts for the proposition that the terms have distinct definitions. Resp. by

-8-

Receiver in Opp. to Pls.' Mot. to Enforce the Second Modified Consent Decree at 2-8, ECF No. 260. However, the definitions Defendant proposes are inapposite—they refer to contexts that do not apply to this issue. The Consent Decree instructs the parties, and the Court, to look to relevant sources to define unclear terms: first, the Consent Decree, and then the CWA, SMCRA, and regulations issued pursuant to them. Looking instead to Black's Law Dictionary and unrelated caselaw is, in other words, barking up the wrong tree.

Defendant even refers to caselaw that supports this point. For example, Defendant cites *Miramar Police Officers' Retirement Plan v. Murdoch*, C.A. No. 9860-CB, 2015 WL 1593745 (Del. Ch. Apr. 7, 2015) for the proposition that binding every purchaser of an asset to a settlement decree would lead to absurd results. There, the court found that a settlement agreement was binding on a party when "the rights and obligations under the Settlement Agreement were transferred" to it, not merely when "any assets and liabilities, or rights and obligations" were transferred. *Id.* at *8. The court noted that, in the latter instance, selling assets like film equipment or trucks would bind the buyer to a series of obligations unrelated to the settlement agreement, an absurd result "when viewed in light of the entire contract." *Id.* at *9.

Here, however, the asset being transferred, the permit, is expressly subject to the Consent Decree—that is, to restrictions on surface mining at sites formerly owned and operated by Patriot Coal. Second Modified Consent Decree ¶¶ 2-4, 63, ECF No. 105. Unlike the unrelated assets being transferred in *Murdoch*, Defendant seeks to transfer a permit to mine at a site formerly owned and operated by Patriot Coal, an asset at the heart of the Consent Decree. When this proposed transaction is "viewed in light of the entire contract," the Court finds that the reasonable

interpretation of "successors and/or assigns" would bind any prospective third-party transferees of the Chestnut Oak mining permit.

Even assuming, *arguendo*, that the Consent Decree did not provide clear instructions for defining terms, Defendant's argument would still not hold weight—in contending that "successor in interest" and "successor" are not interchangeable, Defendant draws attention to the fact that "successor-in-interest" generally has a more limited definition, one that is narrower than the mere "successor" status required to bind a third-party permit transferee under the Consent Decree. In other words, a "successor in interest" requires a greater enmeshment between two corporate entities than a "successor," meaning that an entity that is a "successor in interest" would be a "successor," too.

Namely, Defendant points to the finding in *Holland v. New Era Coal Co., Inc.*, 179 F.3d 397 (6th Cir. 1999), that unlike a "successor," a "successor in interest" required a substantial or substantive connection between entities, "as would be evidenced by a transfer of stocks or assets." *Id.* at 403. There, the fact that the mine operators had not contracted with the previous coal operators "for the right to operate the mine or use the coal mining equipment" supported their status as mere "successors" rather than "successors in interest." *Id.* at 402. Here, the opposite is true—any third-party permit transferee will have contracted with Defendant for the right to conduct surface mining at Chestnut Oak, meaning that the third-party would meet both the broader definition of "successor" and the more limited definition of "successor in interest." A transfer of the right to mine would therefore constitute a substantial or substantive connection between the entities, such that the permit transferee would constitute <u>both</u> a "successor" and a "successor-in-interest."

Defendant also cites *United States v. Armour & Co.*, 402 U.S. 673 (1971), for the proposition that a consent decree between parties does not prohibit one party from selling interest to another entity, even when it would allow the acquiring party to engage in activities prohibited by a consent decree. *Id.* at 677. But this case also cuts against Defendant in that it proposes a broad definition for "successors and assigns." In *Armour*, the Supreme Court noted that the language of the decree ran only against "named stockholders and not against their successors and assigns." *Id.* at 680. Had a "successors and assigns" clause been included, the Government could have argued with more persuasiveness that the agreement also ran against the acquiring party. *Id.* Here, the Consent Decree does contain a "successors and assigns" clause, indicating that its terms apply to a broader scope of parties—including permit transferees seeking to mine at applicable sites.

Defendant next argues that the express provision in paragraph 24 is undermined by a provision in paragraph 25, alleging that paragraph 25 suggests that the Consent Decree does not contemplate binding a third-party permit transferee to its terms. Paragraph 25 provides, in part:

> Except for those restrictions on Large Scale Surface Mining set forth in Paragraphs 54 through 58 herein . . . and the restrictions on Surface Mining set forth in Paragraph 63, no transfer of ownership or operation of any Facility shall relieve Substituted Defendant of its obligation to ensure that the terms of this Second Modified Consent Decree are implemented, provided, however that, prior to any transfer, any party desiring to transfer ownership or operation of any Facility shall provide a copy of this Second Modified Consent Decree to the proposed transferee and require the transferee to provide written confirmation to the Court acknowledging the terms of the Second Modified Consent Decree and that the transferee will be bound by those terms. In such event, the transferring party shall no longer be subject to this Decree. . . . In any event, all transferees, subsequent owners, and operators shall be bound by the terms of this Second Modified Consent Decree, consistent with applicable law.

Second Modified Consent Decree ¶ 25, ECF No. 105.

-11-

Defendant argues this paragraph indicates that the terms of the Consent Decree as a whole, but specifically paragraph 63, would not apply to any third-party permit transferee because the permit transfer does not constitute a "Facility." Mem. in Supp. of Def.'s Mot. to Resolve Dispute Under the Second Modified Consent Decree at 5-7, ECF No. 259. They note that paragraph 25 refers to transfer of ownership of any "Facility," which the Consent Decree defines as "[c]overed outfalls and mining operations subject to the Covered Permits." *Id.* at 6 (quoting Second Modified Consent Decree ¶ 27(l), ECF No. 105). "Covered permits" refers to "permits that were the subject of this litigation as those permits are now in effect and as they may be amended, modified, or renewed . . . including: WV/NPDES Permit Nos. WV0099520, WV0093751, WV0096920, WV0096962, WV1014684, WVlOl7225, WV0099392, WV1016776, WV1020889, and WV1021028." Second Modified Consent Decree ¶ 27(g), ECF No. 105. Defendant argues that because the Chestnut Oak permit, WV1019759, is not listed, it is neither a "covered permit" nor a "Facility," and Special Receiver is not subject to any obligation it imposes. *Id.* at 6-7.

Plaintiffs respond that this paragraph does not absolve any permit transferee of obligations under the Consent Decree. They place special emphasis on the paragraph's last sentence—noting it requires that "all transferees" be bound by the terms of the Consent Decree. Mem. in Supp. of Pls.' Mot. to Enforce the Second Modified Consent Decree at 7, ECF No. 257. Moreover, they propose that the function of the paragraph in the Consent Decree's overall scheme is to provide Defendant with a means of transferring selenium compliance obligations for the facilities listed. Pls.' Resp. in Opp. to Receiver's Mot. to Resolve Dispute Under the Second Modified Consent Decree at 2, ECF No. 261. They contend that the first part of the paragraph specifies a transferor's obligations, while the last sentence specifies that transferees, too, are bound by the terms of the

Consent Decree. *Id.* at 2-3. Finally, Plaintiffs state that the provisions of paragraph 25 do not limit the terms of the Consent Decree to binding only transferees of facilities—if that were the case, they argue, the last sentence of paragraph 25 would have couched its application to "such transferees" or "transferees of a facility." *Id.* at 3.

The Court agrees with Plaintiffs. Paragraph 25 does not override the clear instructions of paragraph 24—namely, that the Consent Decree's terms apply to an entity who succeeds to rights granted under a permit. Further, paragraph 25 is interpreted in harmony with the rest of the Consent Decree when read to bind third-party permit transferees. "A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." *Restatement (Second) of Contracts* § 202 (2) (Am. Law Inst. 1981). "Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade." *Id.* § 202(5).

Beside the "successors and/or assigns" language in paragraph 24, the last sentence of paragraph 25 is clear. All transferees, without qualification, are bound by the terms of the Consent Decree so long as it accords with applicable law. Though Defendant argues that such a reading of "all transferees" is rendered surplusage unless it refers only to the transferees of facilities, the Court finds the interpretation presented by Plaintiffs to be correct. That is, the term is not rendered surplusage because the paragraph outlines the obligations of a transferor, whereas the last sentence outlines those of a transferee. Given that, in accordance with the provisions of paragraph 24, the plain language of paragraph 25 binds all transferees to the terms of Consent Decree, the Court finds that paragraph 25 does not limit this imposition to only transferees of a facility.

Finally, Defendant points to the Selenium Settlement Agreement, incorporated by reference into the Consent Decree, for the proposition that "[n]othing in this Settlement Agreement is intended to bind any third party." Second Modified Consent Decree at 92, ECF No. 105. However, this provision can only be read in harmony with the rest of the Consent Decree if it is limited to the terms of the Settlement Agreement, not the Consent Decree as a whole. *Id.* at 85. Again, given that paragraph 24 binds "successors and/or assigns" of Defendant, the Selenium Settlement Agreement cannot absolve all third parties of obligations under the Consent Decree. Rather than read an inconsistency into the Consent Decree, the Court finds that this provision of the Selenium Settlement Agreement only provides that third-parties are not bound by the Selenium Settlement Agreement. It does not remove the obligations of a third-party permit transferee under the entire Consent Decree.

Because the Consent Decree's plain language supports binding a third-party permit transferee, the Court need not reach Plaintiff's argument that such a transferee would be bound pursuant to Federal Rule of Civil Procedure 65(d)(2). The Consent Decree's plain language binds any "successor and/or assigns" of Defendant, and the definition for this term as set forth in SMCRA and WVSCMRA includes the transferee of a mining permit. Second Modified Consent Decree ¶ 24, ECF No. 105. Therefore, the Court finds that the Consent Decree as a whole, and namely paragraph 63, is binding on any prospective third-party permit transferees.

## CONCLUSION

For the reasons listed above, the Court **GRANTS IN PART** Plaintiffs' Motion to Enforce the Second Modified Consent Decree, ECF No. 256, and **DENIES IN PART** Defendant's Motion to Resolve Dispute Under the Second Modified Consent Decree, ECF No. 258.

In so doing, the Court **FINDS** that the Decree's restrictions on surface mining, as laid out in paragraph 63, are binding upon any third-party permit transferee. The Court **DEFERS DISPOSITION** as to the question of whether proposed surface mining at Chestnut Oak is necessary and incidental to reclamation, pending further briefing.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 2, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE